HAWLEY & KING *vs.* W. JAMES and others,

W. & H. JAMES *vs.* HAWLEY and others.

Where the testator, by his will, directed his executors and trustees to sell certain real estate, and to invest the proceeds thereof, and the proceeds of his personal property, in the purchase of real estate, or the building of houses on his real estate, in New-York, Albany and Syracuse, or in loans, annuities, or in any other safe and proper manner, to be conveyed to his devisees, at the termination of the trust term by him created ; and declared it to be his will and intention that the investments should be so made from time to time, that at the time appointed for the termination of the trust and the division of his estate, the property should consist chiefly or altogether of real estate ; *Held*, that this was a direction for the conversion of the testator's personal property into real estate, for the purposes of the will ; and that, in deciding as to the validity of the dispositions made by the testator of his property at the termination of the trust, the whole must be considered as converted into real estate.

A court of equity considers money directed by a testator to be invested in land, and land directed to be sold and turned into money, as of that species of property into which it is directed to be converted, for all the valid purposes of the will. But where the object of the conversion is illegal, or fails either wholly or in part, there is a resulting use or trust, in so much of the property as is not legally or effectually disposed of, in favor of the heirs or distributees, who would have been entitled to the same if the conversion thereof had not been directed by the will of the testator.

The exchange of one piece of land for another, by trustees, under a valid power for that purpose, is not an alienation of the trust property, within the intent and meaning of the provisions of the revised statutes against rendering real estates inalienable for more than two lives in being at the creation of the estate ; and the insertion of such a power in a will devising the testator's estate to trustees, will not render the devise valid, if the rights or interests of the cestuis que trust are inalienable, beyond the period allowed by law.

Where the testator devised certain lands to his widow, and also bequeathed to her an annuity, in lieu of her dower in his real estate, and the widow, within two months after his death, executed a deed of relinquishment of the provisions made by the will, and elected to take her dower, and procured the deed to be recorded, and gave notice of such election to the testator's executors and trustees, who recognized her right to dower, and made payments to her out of the rents and profits of the estate on account of her dower ; *Held*, that this was a valid election by the widow to take her dower, and was equivalent to an actual entry on the land, or the commencement of proceedings for the recovery of her dower, within the provisions of the revised statutes.

If a widow gives notice to the person who is in possession of the lands of which she is endowable, of her election to have her dower instead of the testamentary provision in lieu of dower, and such person thereupon admits her right, and voluntarily pays her a part of the rents and profits of the land, as and for her dower therein, it is in equity a valid election by her, and is equivalent to an entry on the lands, or an assignment of dower, for the purpose of determining such election.

It is not necessary, for the purpose of making a valid election by the widow, that she should make entry upon, or commence proceedings for the recovery of dower in every distinct parcel of the lands in which she is entitled to claim dower. It is sufficient, if she has not accepted of the provision made for her in lieu of dower, that she actually commences proceedings, within the year, for the recovery or assignment of her dower in any part of the lands as to which her right of election exists ; or that she enters upon any part of such lands, claiming her dower therein.

To constitute a case of election under the revised statutes, the jointure, or other provision made for the wife in lieu of dower, must be a provision in which she has a beneficial interest ; a mere power in trust for the sole benefit of others is not sufficient, although such power in trust is declared by the will of the testator to be in lieu of the widow's right of dower. But the testator may make the execution of a power in trust, for the benefit of others, dependant upon the relinquishment by the widow of her right of dower in his real estate.

Where the testator, by his will, devised certain real estate, and bequeathed certain articles of personal estate, to his wife, in lieu of her dower, and then devised and bequeathed all his real and personal estate, not therein before devised and bequeathed to his wife, to his executors, in trust, and the widow afterwards elected to take her dower in the testator's real estate, instead of the provision made for her in the will ; Held, that the property bequeathed to the widow did not pass under the trust clause in the will, and that it must be distributed as in case of intestacy.

Personal property of the testator, which is not legally and effectually disposed of by his will, is the primary fund for the payment of debts, although he has directed the debts to be paid out of the rents and profits of his real estate ; unless it is evident, from the terms of the will, that the testator contemplated the event of his dying intestate as to some of his personal estate, and intended to exempt it from the payment of debts, for the benefit of those who might be entitled to it under the statute of distributions.

The mere charging of a secondary fund with the payment of debts, does not exempt the primary fund, or postpone its application, unless the intention of the testator, to exonerate it, for the benefit of the residuary legatee, or some other person, is manifest. And where an intention is manifested by the testator to exonerate the primary fund, for the benefit of the residuary legatee, a lapse of the residuary bequest restores the residuary fund to its primary liability for the payment of debts.

Whether, under the provisions of the revised statutes, an advancement made by the testator in his lifetime is to be brought into hotchpot, in case of a partial intestacy only ? Quære.

320

Previous to the adoption of the revised statutes, the widow was not entitled to dower in lands, in which the husband was seized of a mere equitable estate, or interest, during coverture, or at the time of his death. But the legislature, in the revised statutes, has adopted the principle of giving to the widow her equitable dower, in the descendible equitable interests of her husband, of which he died seized; and the widow is now entitled, in equity, to dower in this species of real estate, where it has not been aliened by the husband in his lifetime.

Where lands, belonging to several tenants in common, had been divided into lots for the purpose of sale, and the several owners, with their wives, joined in a conveyance of the lands to a trustee, for the purpose of enabling him to give conveyances with more facility, to such persons as might contract for the purchase of lots, from time to time ; Held, that the widow of one of the owners who afterwards died, was entitled to equitable dower in the husband's undivided interest in such of the lots as had not been sold at the time of his death ; but not in the lots which had been contracted to be sold, and which had not been conveyed by the trustee in the lifetime of the husband.

The court of chancery considers that which is legally agreed to be done, as done ; and, upon the principles of equitable conversion, the purchase money of land, contracted to be sold in the lifetime of the owner thereof, is, in equity, considered as a part of his personal estate ; and it is to be distributed as such, to his widow and next of kin, unless it is otherwise disposed of by his will.

Where the testator gave to his widow an annuity of $3000 in lieu of her dower in his real estate, which annuity was stated in the will to be given to her for her own support, and for the education and support of her children, and the widow after his death elected to take the dower in the real estate, instead of the annuity given to her by the will ; Held, that by such election of the widow, the whole legacy failed, and that the annuity could not be apportioned, so as to provide a support for the minor children out of the same.

Although some of the objects for which a trust is created, or some future interests limited upon the trust estate, are illegal or invalid, if any of the purposes for which the trust was created are legal and valid, and would authorize the creation of such an estate, the legal title vests in the trustees, during the continuance of the valid objects of the trust; except in those cases where the legal and valid objects of the trust are so mixed up with those which are illegal and void, that it is impossible to sustain the one without giving effect to the other. And every disposition by the testator of an interest or right in the rents and profits of his real estate, which are to accrue after his death, which disposition, if valid, would have the effect of suspending the power of alienation of the entire fee for a longer period than is allowed by law, and every other future estate or interest limited upon the trust, which would have that effect, must be considered and treated as absolutely void and inoperative, in determining the question as to the validity of the devise of the legal estate to the trustees, or as to the validity of the other trusts of the will.

The devise of a trust term depending upon minorities, which term can in no event continue longer than during the actual minority of two or more in-

fants in being at the creation of such term, and who have a beneficial interest therein, is valid under the provisions of the revised statutes; although such trust term is not made determinable upon the deaths of any two of such infants. But no contingent remainder can be limited upon such a term, unless the nature of the contingency, upon which it is to vest, is such, that the remainder *must* vest in interest, if ever, during the continuance of not more than two lives in being at the death of the testator, or at the termination of such lives.

An annuity is a legacy of several annual sums in gross; and when payable out of the rents and profits of real estate, it is a charge upon the land. And, under the second subdivision of the 55th section of the article of the revised statutes relative to uses and trusts, an express trust may be created to lease lands, and to receive the rents and profits, for the payment of such annuities.

Where an express trust is created to lease lands, and receive the rents and profits thereof, for the payment of annuities and other charges thereon, there is a resulting trust, as to the surplus rents and profits, in favor of the person who is presumptively entitled to the next eventual estate in such lands.

A contingent remainder may be limited upon a term in gross, or upon a remainder which is limited upon such a term, if the contingent remainder itself is so limited that it must necessarily vest in interest, if ever, within the period of two lives in being at the creation of the estate, or at the termination thereof.

Where the testator devised his estate to trustees for a term of years, depending upon the minorities of several infants, with contingent remainders for life in eight and a half twelfths thereof, to seven children and two grandchildren, if they should survive the trust term and become entitled by the happening of the contingency; with a power, in that event, of appointing the ultimate remainder in fee in their respective shares among their descendants; and gave substituted contingent remainders in the shares of such of the seven children and two grand-children as might happen to die during the continuance of the trust term; *Held*, that the remainders to the seven children and two grand-children, in their several shares, were valid as contingent remainders limited on a term of years; and that if such remainders became vested in interest, upon the termination of the trust, the ultimate remainders in fee to their descendants, respectively, were also valid, as they must vest in interest, if ever, at the termination of one life in being at the death of the testator; but that the substituted contingent remainders, in the shares of such of the seven children and two grand-children as might happen to die during the trust term, were not limited in such a manner that they must necessarily vest in interest during the continuance, or at the termination, of any two lives in being at the death of the testator, and were therefore void.

A remainder is vested in interest, where the person is in being and ascertained, who will, if he lives, have an absolute and immediate right to the possession of the land upon the ceasing or failure of all the precedent estates, provided the estate limited to him in remainder continues to exists; that

is, where the remainder-man's right, to an estate in possession, cannot be defeated by third persons, or contingent events, or by the failure of a condition precedent, if he lives, and the estate limited to him by way of remainder continues, until all the precedent estates are determined.

The remainder is contingent, although the remainder-man is in being and ascertained, so long as it remains uncertain whether he will be entitled to the estate, limited to him in remainder, if he lives, and such estate continues, until all the precedent estates have ceased. But the existence of a power to appoint the remainder among a class of persons, who are known and ascertained, which remainder is limited to the whole class in default of such appointment, does not render the remainder to the class contingent; the remainder is vested in the class, subject to be divested, as to some of the class, by the execution of the power of appointment.

Where the testator did not intend to vest the estate in any of the remainder-men until the power of appointment in their favor was executed by his trustees, but made the whole right of the remainder-men absolutely dependant upon the decision of his trustees, in their favor, as to their moral characters and merits, at the time appointed by the testator for the vesting of the remainders in possession; *Held*, that the remainders were contingent during the continuance of the precedent estate.

From a principle of convenience, the court of chancery has adopted the rule, that the personal representatives of the testator or intestate shall have one year, after his death, to get in the assets, and to liquidate and pay off the debts and prepare for a distribution of the estate, or to invest the same in the manner directed by the will; except in those cases where other directions are given by the testator. The interest or income of the estate, for that year, may therefore be applied in the payment of debts, under a direction contained in the will, and in exoneration of the principal of the estate, without violating either the letter or the spirit of the statutory provisions against accumulations.

Where the testator has a large estate left, after the payment of his debts, he may devise or bequeath it as a future estate, undiminished in amount, if he does not violate any of the rules of law against purpetuities. And he may carve such intermediate estates, interests, legacies, or portions out of the income, in the mean time, as he may think proper, provided it can be done without an actual accumulation of rents and income for that purpose. But an accumulation of rents and profits, for the purpose of raising a legacy or portion at a future day, is illegal; except where such legacy or portion is for the sole benefit of a minor, who is in existence when such accumulation is directed to commence.

Where the testator, by his will, authorized his executors and trustees, upon the marriage of either of his daughters, to bestow a marriage portion upon her, if they should then think it discreet and proper; and one of the daughters afterwards married in the lifetime of the testator, who was then in health, and lived more than a month afterwards; *Held*, that the executors and trustees were not authorized to give her a marriage portion out of the estate.

To render a trust for an accumulation of the rents and profits, or income, of an estate valid, the accumulation must be for the sole benefit of an infant, and must be payable to him absolutely if he survives his minority.

Where the testator directed certain advances to be made to his children, out of the rents and profits and income of his estate, and that the amount of such advances should be charged to them with compound interest, and deducted from their shares of the estate, upon a division thereof, for the purpose of increasing the amount which was to be distributed to others; *Held*, that this was a direction for accumulation, which was void, under the provisions of the revised statutes.

Where the testator devised his real and personal estate to trustees for a term, to receive the rents, profits and income thereof in the mean time, for the payment of annuities and other legacies, and to raise portions for grandchildren, with a contingent remainder in eight and a half twelfths of the estate to seven of his children and two of his grand-children, and no valid direction for accumulation was given; *Held*, that eight twelfths of the surplus income of the estate, belonged to the seven children and two grandchildren of the testator, as being the persons presumptively entitled to the next eventual estate, pro tanto; and, as the contingent remainder as to the other three and a half twelfths of the estate was void, that the heirs at law were entitled to the surplus rents and profits of the real estate, and the widow and next of kin to the surplus income of the personal estate, included in the three and a half twelfths.

A trustee, who has only a delegated discretionary power, cannot give a general authority to another to execute such power, unless he is specially authorized to do so by the deed or will creating the trust. And where an estate is devised to trustees, with power to sell, a general authority to an agent to sell and convey lands belonging to the estate, or to contract absolutely for the sale of such lands, cannot be legally given by the trustees.

THE original bill in this cause was filed in September, 1833, by Gideon Hawley and James King, two of the executors and trustees of William James, deceased, against Augustus James, their co-executor and trustee, Catharine James the widow, and the children and grand-children of the testator, and against the other persons who had either vested or contingent interests under his will; for the purpose of settling the construction of such will, and to have the trusts thereof carried into effect, under the direction of the court of chancery. William James and Henry James, two of the heirs at law of the testator, and defendants in the original suit, subsequently filed their cross bill, against the complainants and against their co-defendants in such original suit, to set aside the will of the testator, or such of the devises and trusts contained therein as should be adjudged illegal and void; and to have so much of the property as was not legally disposed of by the will, distributed among the several persons entitled to the same under the provisions of the revised statutes relative to

July 21.

the descent and distribution of intestates' estates. Several persons having, by birth or marriage, become interested, under the provisions of the will, subsequent to the commencement of the suit, they were brought before the court as parties, by a supplemental bill and cross bill ; so that their several rights and interests in the estate of the testator might be ascertained and settled, and that they might be bound by the decree. The cause was heard on the bills and answers, and upon the reports of a master to whom it was referred to ascertain the rights of the infant defendants.

The testator died in December, 1832, having about five months before that time made and published his last will and testament, in due form of law to pass real estate ; as follows :

1. " I, WILLIAM JAMES, in contemplation of the uncertainty of human life, and being desirous of making a just disposition of my property, do make and publish this my last will and testament, in manner following—that is to say :

2. " I give and devise to my wife Catharine James the Mansion-House, now occupied as such by me, in the city of Albany, together with all the appurtenances thereunto belonging, during the period of her natural life, and with power to dispose of the same by will, to our lineal descendants, in such manner as she may think proper.

3. " I also give and bequeath to my said wife all my household furniture and utensils, including plate, pictures and other ornamental articles in the house, her personal ornaments and wearing apparel ; also my horses, harness, carriages and sleighs, and my library.

4. " Desiring that my family after my decease should live respectably, but at the same time prudently and circumspectly, I further give, devise and bequeath unto my said wife, for her own support and for the education and support of our children, an annuity of three thousand dollars, to be paid in equal quarterly payments, or oftener should she have occasion therefor, during the period of her natural life.

5. " I also give and bequeath unto my said wife the sum of three thousand dollars, to be applied by her towards the maintenance, education and advancement of the children of

her deceased sister, Jannette B. Gourley, in such proportions and at such times as she may deem proper.

6. "The foregoing devise and bequests to my said wife are intended to be, and I hereby declare them to be, in lieu and full satisfaction of her dower in my estate.

7. "To my son William James, I give and bequeath an annuity of two thousand dollars, during his natural life.

8. "To my son Henry, I give and bequeath an annuity of twelve hundred and fifty dollars, during his natural life.

9. "To Catharine Tillman, sister of my former wife Elizabeth deceased, I give and bequeath an annuity of one hundred and twenty-five dollars, during her natural life.

10. "To Charlotte James, daughter of my deceased brother John James, I give and bequeath an annuity of one hundred dollars, during her natural life.

11. "To Susan Duffy, widow of John Duffy, late of the city of New-York, deceased, I give and bequeath an annuity of two hundred dollars during her natural life.

12. "To my nephew John James, son of my deceased brother John James, I give and bequeath the sum of one thousand dollars.

13. "I give and bequeath to the Society for the relief of Orphan and Destitute Children in the City of Albany, an annuity of one hundred and fifty dollars, to be paid by my trustees, hereinafter named, to the managers of the said society, for the use thereof, annually, until my said trustees shall find it convenient, out of the rents and profits of my estate, to invest the sum of two thousand five hundred dollars in some public stock, which I require them to do at some period of the trust hereinafter created; and the stock so purchased shall thereupon be assigned in perpetuity to the said managers, subject however to such limitations and conditions, not inconsistent with the object of this bequest, as my said trustees shall prescribe.

14. "The foregoing legacy to my nephew John James shall be paid by my said trustees within the period of fifteen months after my decease; and the legacy of three thousand dollars to my wife, for the bnefit of the children of her deceased sister Mrs. Gourley, shall be paid in such proportions and at

1835.

Hawley
v.
James.

such times as she may desire ; and in the event of her death before the whole is paid, then I order and direct that so much as shall remain unpaid shall be faithfully applied by my said trustees to the purposes for which it is designed, according to their discretion.

15. " The said specific legacies and foregoing annuities are not to be considered as charges upon my real estate, but are to be paid by my trustees hereinafter named, out of the rents and profits of my estate, so far as the same may from time be sufficient therefor ; and all my just debts, also all sums advanced to my children and grand-children as hereinafter authorized, before the final division of my estate, and all the expenses incident to the execution of the trusts hereinafter declared, are to be paid in like manner. But if at any time the rents and profits, then already accrued and in the hands of my said trustees, shall be insufficient for these objects, the deficiency shall be supplied out of other funds belonging to my estate, or by temporary loans of money ; and all sums thus drawn from the capital or principal of the trust fund, or borrowed, shall be charged against future rents and profits, and be reimbursed therefrom as soon as may conveniently be done.

16. " And in the final partition of my estate in the manner hereinafter directed, such of the said annuities as shall not then have ceased shall be effectually secured to the respective legatees.

17. " In order to preserve my estate from being wasted, and to insure its more judicious management, so that out of the rents and profits thereof ample means may be afforded for the purposes above mentioned, and for the support and education of my numerous offspring, and with an exclusive view to the true interest of all for whom it is my duty to provide, I have determined to confide the care and management of my estate temporarily to trustees. In pursuance of these designs, and in view also of the lamentable consequences which so frequently result to young persons brought up in affluence from coming at once into the possession of property, I have also determined that this trust shall continue, and that the final division of my estate shall not take place until the youngest of my children and grand-children, living at the date of this my

will, and attaining the age of twenty-one years, shall have attained that age.  And in order moreover to provide against accidental inequalities and diversities of condition, which at the expiration of the trust may exist among the cestuis que trust, but more especially with a view to discourage prodigality and vice, and to furnish an incentive to economy and usefulness, I have further determined to invest my trustees with extensive discretionary powers in regard to the disposition of my property, to be exercised by them with a just regard to circumstances, and especially to the respective merits of the several cestuis que trust hereinafter mentioned.

18.  " I therefore appoint Gideon Hawley and James King, Esquires, and my son Augustus James, of the city of Albany, my said TRUSTEES :  and I give, devise and bequeath to them, the said Gideon Hawley, James King and Augustus James, all my estate, both real and personal, of which I shall be possessed and entitled to devise and bequeath at the time of my death, and not herein before devised and bequeathed to my wife ; IN TRUST, to manage and dispose of the same, and to receive and apply the rents, issues and profits, proceeds, interest and income thereof, in the manner hereinafter directed and expressed.

19.  " As soon as it may be deemed proper, and within one month after my decease, my said trustees shall proceed to make a full and particular inventory of the trust estate, arranging the different descriptions of property under different appropriate heads ; and shall immediately file a true copy thereof, attested by their oaths to be a just and true inventory of all my estate, both real and personal, as far as the same shall have come to their knowledge, and they have been able upon diligent examination to ascertain, in the office of the surrogate of the county of Albany ; and in case any other property belonging to the trust fund shall afterwards come to their knowledge, they shall in like manner make and file an inventory thereof.

20.  " And with a view to the more prompt, systematic and easy performance of the various duties connected with the trust, it will be proper that they allot and distribute among themselves the details of the business arising therefrom.

21. " It is however my wish, and I accordingly direct, that my son Augustus shall succeed me as a partner with Moses De Witt Burnet, of the village of Syracuse, in his lease of the salt works and flouring mills in that village, and that he shall attend particularly to the business of the firm, as an active partner in the city of Albany, in the manner now done by him and me. So long as he does this, he shall be entitled to receive, to his own use, the whole share of the profits of the partnership to which I am now entitled ; he paying the proportion of the rent that may accrue upon the said lease, which, by the agreement between the said Burnet, Isaiah Townsend, John Townsend and myself, I am obligated to pay.

. 22. " It is my wish also that my son Augustus shall be charged with and take upon himself the collection of all rents accruing to the trust estate, as well elsewhere as in the city of Albany, and that he shall continue to perform this duty so long as in the opinion of my other trustees he shall execute the same properly. And for the performance of this service I authorize him annually to retain to his own use, such reasonable per centage upon the amount collected, by way of commission, as the other trustees shall deem it proper to allow.

23. " It is also my will, and I accordingly order and direct, that, in addition to the particular and exact accounts which must necessarily be kept by each of my trustees in regard to all matters of which they shall severally have the special charge, a full and accurate general account shall always be kept, by one of my said trustees, of the whole business of the trust : whose duty it shall also be, at the expiration of each year, to furnish each of the other trustees with an accurate transcript of such account, or of so much thereof as shall exhibit in a satisfactory manner the transactions relative to the trust during such year. And it is my wish that this duty shall be undertaken by my trustee Gideon Hawley, and performed by him so long as he shall continue to reside in Albany and to act as one of my trustees. To this end I order and direct that full and exact reports shall be made to him while he shall continue so to reside and act, and afterwards to such other discreet person as may be appointed to succeed him in the performance of this duty, by each of my other trustees respec-

1835.

Hawley
v.
James.

tively, at least as often as once in each year, of all their pro-ceedings, receipts and expenditures, in the exercise of their respective functions during such year. And I further order and direct that he shall have the immedite custody of all deeds, mortgages, bonds, notes, and other evidences of title and of debt, and that all monies belonging to my estate shall be paid to him, either directly or by my other trustees respectively, from time to time, without unnecessary delay, as often as such monies shall have been received by them.

24. " It is also my will, that so long as my trustee James King, shall continue to reside in Albany, and to act as one of my trustees, he shall be charged with and take upon himself the collection and securing of debts and demands belonging to my estate, for the collection or securing of which professional services may be required.

25. " It is however my express will and intention, that no one of my trustees shall, severally, have the power to perform any acts or duties whatsoever in relation to my estate, or concerning the execution of the trust hereby created, excepting what pertains to the final distribution of my estate as hereinafter expressly provided, and excepting such subordinate acts as a trustee may lawfully perform by an agent, and which a majority of the other trustees shall have duly authorized him to perform as such agent ; and I do further declare and direct that no sale or transfer shall be made of any part of my estate real or personal, and no investment be made of any of the funds of my estate in the purchase of any property real or personal, without the consent of a majority of the trustees ; and I do hereby authorize and empower the majority of the trustees consenting to such sale, transfer or investment, to make and execute the necessary conveyances, instruments and contracts to carry the same into effect, without the concurrence of the other trustee, or by an instrument under their hands and seals to appoint and authorize one or more of their own number to execute the same.

26. " I further order and direct that my trustees shall proceed as expeditiously as is consistent with a just lenity to my debtors, to collect all debts due to me at the time of my decease, or to see that such debts are made secure.

1835.

Hawley
v.
James.

27. "They shall also sell all my real property in all places' other than the cities of New-York and Albany, and the village of Syracuse, as fast as fair prices can be obtained therefor ; and I hereby authorize them also, at their discretion, from time to time, to sell or exchange portions of my real estate in the said cities and village. I also empower them to invest so much of the proceeds of all sales, and of all other monies which shall come to their hands, as may not be wanted to enable them to fulfil the other purposes of the trust, and to pay legacies and debts, in the purchase of real estate, or in the erection of houses in either of said cities, or in the village of Syracuse, or in loans, annuities, or in any other safe and proper manner : but they are nevertheless to bear in mind and keep steadily in view that my will and intention is, that investments shall from time to time be so made, as that at the time appointed for the ultimate division of my estate, the same shall consist chiefly or altogether in real estate.

28. "For the doing and executing of all which, and for the doing and executing of all other acts and things necessary to the prudent management of my estate, and consistent with the declared objects of their trust, I hereby invest them with full power and authority.

29. "For the better education of my children who may be minors at the time of my decease, I give and dispose of the tuition and custody of them and each of them to my said wife, for such time as they or any of them respectively continue unmarried and under the age of twenty-one years ; but if my said wife shall die during the non-age of my said children, then I give the tuition and custody of those so being under the age of twenty-one years at the death of my wife, to my trustees for the time being, who are to make suitable provision out of the rents and profits of my estate for their education and support, according to their several ages and exigencies.

30. "In the event of the death, during the continuance of the trust, of any one of my sons now living, leaving a widow and a child or children, or a child or children only ; and in the event of the death of any one of my daughters leaving a child or children, my trustees are authorized and required, if

necessary, to make suitable provision out of my estate for the support of every such widow and for the education and support of every such child, according to circumstances and to their respective exigencies : provided, however, that such provision shall not exceed in any case the allowance of fifteen hundred dollars a year to the widow and children of any such deceased son, or to the children of any such deceased daughter.

31. "If, during the continuance of the trust, either of my sons, or of my grandsons whose parent being my son or daughter, is deceased, having attained the age of manhood, shall desire to establish himself in any reputable profession or trade, and shall have need on that account of money for the purchase of professional books, implements, or the like, or if he shall desire to purchase real property in the city or town where he may reside or intend to reside, for his own accommodation and use, or, to a moderate amount, with a view to speculation, in every such case I authorize my trustees, with the approbation of my wife, if she shall be living, at their discretion, to advance to such son or grandson such sum or sums for either of these purposes as they may think fit ; but such advance to any one individual shall not in the whole exceed the fourth part of the probable amount to which such individual will be entitled upon the ultimate division of my estate.

32. "If, during the continuance of the trust, either of my sons, or of my grandsons whose parent being my son or daughter is deceased, having attained the age of manhood, shall desire to engage in any honorable occupation requiring the employment of capital, and if, in the opinion of my trustees for the time being, and of my wife, if she shall be living, it shall be expedient that he should do so, I authorize my said trustees at their discretion to advance to such son or grandson a sum or sums not exceeding in the whole the fourth part of the probable amount to which such son or grandson will be entitled upon the ultimate division of my estate.

33. "And if, during the continuance of the trust, either of my daughters, or my grand-daughter Mary Ann King, shall choose to marry, and provided she shall have at all times pre-

1835.

Hawley
v.
James.

viously behaved dutifully and affectionately towards my wife and her other relatives, and if on account of her marriage it shall, in the opinion of my trustees and of my wife, should she be living, be in all respects fit and proper that such daughter or grand-daughter should then receive a portion of my estate, I authorize and require my trustees to pay to her a sum not exceeding three thousand dollars; and I further authorize them, if it shall satisfactorily appear to them to be necessary, to advance to her from time to time such further sums, not exceeding two thousand dollars in any one year, for her support and the promotion of her welfare, according as the exigencies of her case may in their opinion require. And in like manner, upon the marriage of either of my grand-daughters, Anna M'Bride James, daughter of my son William, or Lydia James, daughter of my deceased son Robert, I authorize and require my said trustees under the like circumstances and upon the like conditions to pay to her a sum not exceeding two thousand dollars.

34. "In order to entitle my several sons, John, Edward, and Howard, and my grandson Robert, son of my deceased son Robert, to the full benefit of the provisions hereinafter made for them, they must severally learn some one of the professions, trades or occupations usually pursued in this country as a livelihood, and must assiduously pursue and practice the same.

35. "For the purpose of inculcating habits of industry and economy, I order and direct that all sums of money advanced by my trustees during the continuance of the trust, to or on account of any one of my sons and daughters, grand-sons and grand-daughters, shall be charged against them respectively as debts due to my estate; and that upon the final division of the residue of my estate as hereinafter directed, the sums so advanced to each, together with compound interest thereon at the rate of five per cent. per annum, shall be deducted from the respective shares of those to whom such advances shall have been made.

36. "I give, devise and bequeath to the children of my son Augustus and his present wife Elizabeth; to my grand-daughter Anna M'Bride James, daughter of my son William;

and to my grand-daughter Lydia James, daughter of my deceased son Robert, in manner following, that is to say : At some period during the continuance of the trust, and as near the termination thereof as may be found convenient, my trustees shall, out of the rents and profits which shall have accrued out of my estate, purchase productive real property to the amount as nearly as may be of fifty thousand dollars, and shall, at the expiration of the period herein limited for the continuance of the trust, convey the same to such of the said children of my said son and his present wife then living, and in such proportion as my said son Augustus and his said present wife, or the survivor of them if only one shall be living, shall direct ; and if neither of them shall be living, then to such of their said children and in such proportions as my said trustees, together with my wife, should she be living and choose to act, may think proper. And to each of my grand-daughters, Anna M'Bride and Lydia above named, my trustees shall set off and convey so much other productive real property belonging to my estate as shall in their opinion be worth twenty thousand dollars.

37. " I further order and direct, that at the expiration of the period herein prescribed for the continuance of the trust, my trustee Gideon Hawley, or such other person as may be appointed in his place in the manner hereinafter directed, together with such other trustees or trustee, if any, as may be appointed in the place of my son Augustus and James King, or either of them, and who shall not be interested in the division of my estate, shall, together with my wife, should she be living and choose to act, immediately proceed to divide the residue of my estate remaining in their hands, not herein before devised or bequeathed, as nearly as may be, into twelve equal parts, and shall allot and distribute, and my trustees shall thereupon convey the same to the persons, and in the proportions following, that is to say: to my sons Augustus, John, Edward and Howard—to my daughters Jannette, Catharine and Ellen—and to my grand-daughter Mary Ann King, each, one part ; and to my grandson Robert, son of my deceased son Robert, one half of one part ; subject, howev-

1835.

Hawley
v.
James.

er, to the conditions, limitations and retributive purposes here-inafter expressed.

38. "Out of the share to be allotted to my grand-daughter Mary Ann King, or to her heirs, as hereinafter provided, my trustees shall pay to her father James King, for his own use, the sum of ten thousand dollars, or, at their election, shall convey to him in fee so much of the real estate comprised in such share' as shall by them be estimated to be worth that sum.

39. "In the event of the death of either of my said sons or daughters, or of my said grandson Robert, or of my said grand-daughters Mary Ann King, Anna M'Bride and Lydia, or of the said James King, before or after my own decease, within the period above limited for the continuance of the trust, I order and direct that the share or portion of my estate to which such deceased person would, if living, have been entitled, so far as relates to the personal estate, if any, comprised in such share, shall be allotted and conveyed in such manner as if such deceased person had died intestate lawfully possessed thereof the same would have been bestowed by force of the statutes of this state regulating the distribution of the personal estates of deceased persons who have died intestate; and so far as relates to the real estate comprised in such share, the same shall be allotted and conveyed in such manner as if such deceased person, having derived such estate from me, or, if a grand-child, from his deceased parent, had died intestate lawfully seized thereof in fee, the same would have descended by force of the statutes of this state regulating the descent of the real estate of persons who die intestate; subject, however, to the conditions, limitations and retributive purposes hereinafter expressed.

40. "If either of my said sons John, Edward and Howard, or my grandson Robert, shall fail to observe and faithfully to follow the directions herein before given concerning them; or, if at the expiration of the period limited for the continuance of the trust, it shall satifactorily appear to my trustee or trustees authorized to make the final partition of my estate, that any one of those who would otherwise have been entitled to share in such partition, leads a grossly immoral, idle, or dis-

honorable life, such delinquent shall not be entitled to the share of my estate herein before provided for such person, but shall be considered as having forfeited the same either wholly or in part; and I do hereby order and direct my trustee or trustees authorized to make partition of my estate, to withhold from such delinquent such share, either wholly or in part, according to the degree of demerit by which such forfeiture shall be incurred; of which, and of the existence of the facts rendering such forfeiture proper, my said trustee or trustees shall be exclusively authorized to judge: and the portions of my estate so withheld shall be added to the residuary parts.

41. "As it regards the remaining three and a half parts of my estate, together with such additions, if any, as shall be made thereto in the manner above mentioned, I authorize and require my said trustee or trustees authorized to make partition of my estate, together with my wife, if she shall be living, to apportion the same according to their discretion *among all or any number of those herein designated as in any event entitled to share in the ultimate disposition of my estate;* but with a just regard to circumstances and a scrupulous attention especially to the personal merits and demerits of each individual. And my trustees shall execute conveyances, in pursuance of such apportionment.

42. "And although the extensive and extraordinary power herein conferred of punishing idleness and vice and of rewarding virtue, must from its nature be in a considerable degree discretionary, and although its faithful exercise may prove to be a task at once responsible and painful, yet it is my full intention and earnest wish that it shall be carried into execution with rigid impartiality, sternness and inflexibility.

43. "In order to provide for the decent maintenance of those (if unhappily there should be any such) whose portions shall be wholly withheld, I order and direct that to every such individual an annuity for life shall be given, of such amount only as shall be sufficient to supply the probable actual wants of such individual.

44. "Having herein before provided for the division and apportionment of my estate among the several cestuis que trust, but without particularly designating the QUANTITY OF

1835.

Hawley
v.
James.

INTEREST to be conveyed to them, I now declare it to be my will, and I accordingly order and direct, that every conveyance of any portion of my real estate, to be executed by my trustees upon the expiration of the trust herein created, in pursuance of the foregoing directions, shall be to the grantee for life, with power to devise the same in fee to his or her lineal descendant or descendants, in such manner or proportions as he or she may think proper ; and in the event of such grantee either leaving no such descendant, or omitting to make a valid disposition of the same in execution of such power, then with remainder in fee to such person or persons as, by the statutes of this state regulating the descent of real property, would have been entitled to inherit the estate, had the grantee, having derived the same from me, died intestate lawfully seized thereof in fee : excepting however the conveyance, if any, to James King or his heirs, which shall be in fee ; and the conveyances, to such of my descendants, if any, entitled to share in the division of my estate, as, by reason of their having been born subsequently to my decease, may be incapable of taking less than an estate of inheritance, which conveyances shall also be in fee.

45. " It being my intention that there shall always be three acting trustees of my estate during the continuance of the trust, all of whom shall reside in the city of Albany; I do hereby direct that in case any one or more of the trustees shall refuse to act or become incapable of acting as such, or shall resign, remove from the city of Albany, or die, it shall be the duty of the remaining trustees to apply by petition to the Chancellor for the appointment of a suitable person or persons to supply the vacancy or vacancies so created, and to name in such petition the person or persons whom they desire to be appointed. And every person so appointed shall succeed to and be fully invested with all the rights and powers, and be subject to all the duties and responsibilities pertaining to the office or place which he is appointed to fill, in like manner as he would have been had he been herein expressly named and appointed such trustee.

46. " And my will is, and I accordingly hereby declare, that my said trustees shall not be charged or chargeable with,

or accountable for, any loss which may happen to my estate, unless such loss shall happen through their wilful default or neglect; and that they shall not respectively be held accountable for the separate acts of each other: but they shall in all things discharge the duties of the trust with care and fidelity according to the best of their skill and understanding.

47. "Foreseeing that the duties imposed upon my trustees may require a considerable portion of their attention, I deem it proper to declare my views and intentions relative to the subject of their compensation. I consider the liberal and extraordinary provisions which I have made in favor of my son Augustus and his family as justly entitling me to expect that he will cheerfully take upon himself the burthen of the trust without other compensation; and in like manner I expect that the liberal provisions herein contained in favor of Mr. King and his daughter, together with the emoluments likely to arise to him from being employed professionally in the management of my estate as herein provided, will be deemed by him an adequate compensation for his services. To my trustee Gideon Hawley, Esquire, in full compensation for the performance of all the duties required of him, I allow the sum of five hundred dollars a year, so long as he shall continue to perform such duties. And should it at any time become necessary, as herein before provided, to procure the appointment of another person in the place of either of my said trustees, he shall be entitled to such compensation for his services as my trustees upon whose petition he shall be appointed shall think proper to allow.

48. "AND LASTLY, I hereby constitute and appoint my trustees above named, and their successors appointed in the manner herein before directed, Executors of this my last Will and Testament."

At the death of the testator, he was seized of real estate and chattels real of the value of about eight hundred thousand dollars, including forty thousand acres of wild land in the state of Illinois; the whole of which, except the Illinois lands, was situate in this state. He was also possessed of

bonds and mortgages, stocks and other personal property, worth about half a million of dollars. And he was indebted to the amount of one hundred and twelve thousand dollars ; of which amount, upwards of forty thousand dollars was due to joint stock companies, on account of the stock held by him in those companies. The will was duly proved by the executors and trustees, before the surrogate of the county of Albany, as a will both of real and personal estate. And letters testamentary were issued to the complainants in the original suit, and to Augustus James, who declined becoming a party complainant because there were several of the provisions of the will, in relation to which doubts had arisen, in which his individual interests were involved. The testator, at the time of the making of the will, and at his death, had nine children living, one grand-daughter, the only child of a deceased daughter, and a grand son and grand-daughter, the children of a deceased son, who were his heirs at law ; and who, together with the widow, were entitled to his personal estate which was not legally disposed of by the will. His son William was married and had one child at the date of the will. Augustus was also married and had three children. And no alteration took place in the testator's family between the making of the will and his death, except the marriage of his eldest daughter, Jannette, to W. II. Barker. But after the testator's death, and before the hearing, William, the son, had another daughter, Elizabeth Tillman James. Mrs. Barker also had a child, Wm. J. Barker. And John B. James, another of the sons of the testator, married. All the children and grand-children of the testator, except William, Augustus, and Henry, were minors at the time of his death, and also at the hearing of the cause. Mrs. Gourley had seven children, five of whom were infants at the time of filing the original bill.

About two months after the testator's death, his widow, Catharine James, by a deed or written instrument, elected to take her dower in the estate of the testator, instead of the provisions made for her in the will ; which deed was proved, and recorded in the office of the clerk of the county of Albany, and notice of such election was given to the executors and trus-

1835.

Hawley
v.
James.

tees. Shortly after making the deed and the giving of notice of such election, a bill for a partition of the real estate devised to her in lieu of dower, was filed in this court by one of the heirs of the testator, against the other heirs, together with the widow. And the premises were also sold under a decree in that suit, and the proceeds of the sale were distributed, as un-devised property. (*See James and wife v. James and others*, 4 *Paige's Rep.* 115 ) The executors and trustees recognized the right of the widow to dower in the real estate of the testator, except a small portion thereof in which her right to dower was questioned on account of the peculiar situation of the testator's title ; and they made payments to her from time to time on account of her dower, out of the rents and profits of the estate which they received. The testator's youngest child, at the date of the will, was Howard James, who was born in November, 1828. And his youngest grand-child, William Augustus James, was born the 29th of December, 1831 ; and would not, therefore, arrive at full age until more than twenty years after the testator's death.

The complainants, in their bill, referred to several para-graphs in the will upon which doubts had arisen as to their legal construction. They also stated some questions which had arisen as to the widow's right of dower in particular parcels of property, and as to other matters not arising out of the will itself ; most of which questions arose upon undispu-ted facts. As to all which questions the complainants ask-ed for the decision and direction of the court, to enable them to execute their trust with safety, and to prevent future litiga-tion in respect to such questions. They also asked that the widow's dower might be assigned to her, or that they might be authorized, under the sanction of the court, to agree with her upon an annuity or gross sum to be paid to her out of the income of the estate in which she was entitled to dower, in lieu of her dower in such estate. Several other questions were raised by the complainants in the cross bill, and many others by the different defendants in their answers, as well as by the counsel upon the argument, as to the construction and validity of various provisions of the will, as well as to the

main objects of the trust; most of which questions are ex-
amined and disposed of in the opinion of the court.

*J. King,* for the complainants in the original bill.   The be-
quest of $3000 to the testator's widow, Catharine James, for
the maintenance, education and advancement of the chil-
dren of her deceased sister, Jannette B. Gourley, is not avoid-
ed nor affected by the election of the widow to take her
dower.   If the widow, after having elected to take her dower,
cannot execute the trust in favor of the children of Mrs. Gour-
lay, the court will appoint a trustee.   No trust will be per-
mitted to fail for want of a trustee.   It is the sixth section of
the will alone which throws any doubt on the question wheth-
er the legacy to the children of Mrs. Gourley can take effect.
It was the intent of the testator that this legacy should not
depend on the widow's acceptance of the provisions made in
her favor in the will.   The grammatical construction of a
will must yield to the intention of the testator.   (*Thellusson*
v. *Woodford,* 4 *Ves.* 311.   11 *Idem,* 148, *S. C.   Rathbone* v.
*Dyckman,* 3 *Paige's Rep.* 10.)

By the election of the widow to take her dower, the items
of personal estate, specifically bequeathed to her in the third
section of the will, are left undisposed of by the will ; and the
proper disposition thereof, is submitted by the executors to the
decision of the court.   The personal estate specifically be-
queathed to the widow in the third section of the will being
left undisposed of, by her election to take her dower, it must be
distributed to the widow and next of kin, as directed by the
revised statutes.   (2 *R. S.* 96, § 75.)   By the fifteenth sec-
tion of the will, the debts and legacies are charged on the rents
and profits of the estate.   This charge exempts the general
residue of the personal estate which is left undisposed of by
the will, from the payment of debts and legacies as the prima-
ry fund.   Whenever the testator designates a special fund for
the payment of debts, the general residue left undisposed of
by the will, although consisting in whole or in part of per-
sonal estate, is not to be resorted to until the special fund is
exhausted.   And the rule is the same, whether the personal
property is left undisposed of by accident or by intention,

(*Livingston* v. *Newkirk*, 3 *John. Ch. Rep.* 312. *Davies* v. *Trapp*, 1 *Bro. C. C.* 524. 2 *Idem*, 258. *James* v. *James*, 4 *Paige's Rep.* 115.)

It is submitted to the court to decide, whether the 33d section of the will, which directs a sum, not exceeding $3000, to be paid to each of the testator's daughters on their marriage, does or does not embrace the case of Jeanette Barker, who was married to the defendant William H. Barker, on the 14th of November, 1832, and prior to the testator's death; and also whether it is necessary that the trustees, in making sales of real estate under the will, should sell the same by public auction. The marriage portion of $3000, given to Mrs. Barker, by the 33d section of the will, ought to be paid to her, although she was married previous to the death of the testator. The court will raise an equity in her favor, as to this provision, in analogy to the provisions of the revised statutes relative to post-testamentary children. (2 *R. S.* 65, § 49.) The statute (2 *R. S.* 109, § 56) requiring sales by executors to be at public auction, does not apply to sales of real estate to be made by a trustee. (*M'Dermut* v. *Lorrillard*, 1 *Edw. Ch. Rep.* 273.)

The trustees are not authorized to advance, to any one of the testator's sons or grandsons, under the 31st and 32d sections of the will, more than the value of a life estate in the one fourth part of the probable share of such son or grandson.

The allowance of five per cent. to their co-trustee, Augustus James, as a proper compensation for collecting the rents of the real estate, having been made by the complainants in good faith, should be confirmed by the court; and as he claims a greater allowance, by his answer, directions as to future allowances should be given by the court. As the employment of a clerk by the trustees was a legitimate exercise of their power, their doings in this respect should also be confirmed by the court. We also ask that the accounts of the trustees may be annually settled, under the decree to be made in this cause, to avoid the mischief which may be occasioned by death, the destruction of vouchers, and other casualties.

1835.

Hawley
v.
James.

As the testator was entitled to various parcels of real estate situated in various counties in this state, and to a large quantity of real estate in Illinois, it is reasonable and necessary that the trustees have liberty to sell such real estate, through the instrumentality of an agent or attorney, and with the sanction of this court.

Such a reference as is prayed for in the bill should be decreed, for the purpose of taking testimony in relation to the lots alleged to have been given by the testator, in his lifetime, to his son, Augustus James; unless the court shall be of opinion that a conveyance to Augustus can lawfully be decreed upon the pleadings, and without any such testimony. And the trustees submit that their proceedings, in relation to the funds in the firm of M. D. Burnet & Co. belonging to the estate were authorized by the will, and by the facts stated.

The trust will not, by a true construction of the seventeenth section of the will, terminate until the testator's youngest grandson, William Augustus James, or in case of his death, until the next youngest child or grand-child, living at the time of the date of the will, shall have attained the age of twenty-one years.

The trustees are authorized to pay the annuities mentioned in the will, in quarter yearly payments, after deducting the interest on the respective payments for the residue of the year; as the annuities were intended for the support and maintenance of the annuitants. And the provision intended for the children of Augustus James, Anna M'Bride James, and Lydia James, ought to be raised out of the rents and profits of the real estate and the interest and profits of his personal estate; and it will not become the duty of the trustees, to purchase the real estate contemplated by the thirty-sixth section of the will, until the time prescribed in the will, for the termination of the trust; or, until the trust shall be declared and adjudged to be closed, by this or some other court of competent jurisdiction. The meaning of the term rents and profits depends upon the circumstances of the case. The term profits *ex vi termini* includes the whole interest in the land. A devise thereof carries the whole. But here the testator directs the provision in favor of the children of Augustus.

and Anna M'Bride and Lydia James, to be raised out of the rents and profits only. (*Albemarle* v. *Rogers*, 2 *Ves. jun.*, 477, 281, *n. a. Allen* v. *Backhouse*, 2 *Ves. & Bea.* 65. *Johnson* v. *Arnold*, 1 *Ves. sen.*, 171.)

Catharine James, the widow and relic of the testator, is not entitled to dower in any part of the testator's real estate, except such as to which he died seised of an estate of inheritance; and in the cases mentioned in the bill of complaint, where the legal estate was not vested in the testator at the time of his death, Catharine James has no legal claim to dower. A widow is entitled to dower in all lands whereof her husband was seized of an estate of inheritance at any time during the marriage. (1 *R. S.* 740, § 1.) Chancellor Kent says, that the widow is entitled to dower only in the lands of which her husband was seized of an estate of inheritance. (4 *Kent's Comm.* 35.) Estates of inheritance at common law are where a man hath the actual possession of the land, to hold to him and his heirs forever. (2 *Black. Comm.* 104, 105. 3 *Jac. Law Dict.* 446.) The seisin in the husband, to entitle the wife to dower, must be a legal seisin. As to the Albany city lots, the corporation held the title as naked trustees. (*Claiborne* v. *Henderson,* 3 *Hen. & Munf.* 322.) Dower cannot be claimed in the lands included in the deed to Burnet. That deed declares that it was executed to bar dower. The estate remaining in the grantors being an equitable estate only, the widow is not entitled to dower therein. The 48th section of the statute, (1 *R. S.* 727,) excepts such active trusts from the operation of the 47th section. The legal estate therefore of the grantors continued in Burnet as a trust estate, after the adoption of the revised statutes. (*Attorney General* v. *Scott, Cas. Temp. Talbot,* 139. *Godwin* v. *Winsmore,* 2 *Atk.* 528.) The death of the testator did not revoke the deed to Burnet, such deed conveying to him more than a mere power. (*Chaplin* v. *Chaplin,* 3 *P. Wms,* 229. *Burgess* v. *Wheate,* 1 *W. Black. Rep.* 138, 161.) The deed operates as an estoppel to the claim of dower. The revised statutes, make one exception in favor of the widow, in case of a purchase under an execution, and the death of the purchaser before the expiration of the fifteen months allowed for redemption. (2

*R. S.* 374, § 64.)   In the case of the deed from Safford to Bur-
net, there was a resulting trust created in favor of William
James & Co. by the payment of the purchase money.

The trusts of the will, in respect to the management and dis-
position of the testator's estate, real and personal, and as to the
receipt and application of the rents and profits thereof, and the
ultimate division of the residue, are not repugnant to the pro-
visions of the revised states respecting accumulations, but are
valid, and should be decreed to be carried into effect.   No ac-
cumulation is directed in express terms, and it is not certain
that any will occur.   The testator's debts ; the legacies given
in his will ; the advances authorized to be made to his chil-
dren and grand-children ; the provisions for the children of
Augustus James, and for Anna M'Bride James and Lydia
James ; and the expenses of the trust ; being all chargeable, in
the first instance, on the rents and profits of the estate, real and
personal, such rents and profits may be annually exhausted by
those charges.   But even if an accumulation was intended
and shall actually occur, it is valid ; because directed to be
made for the benefit of minors in being at the testator's death,
and to terminate at the expiration of their minority.   A ma-
jority of the cestuis que trust were minors ; and the statute
does not require, on its true construction, that all should be
minors—one minor is enough.   That adults are to participate
in the benefits of the accumulation is no objection to it.   The
interests of the nominated cestuis que trust, who are adults,
are as yet only contingent, and may possibly be divested by
death or misconduct ; by which means the accumulation may
prove to have been directed, even to the end of the trust, for
the benefit of minors in existence at testator's death, or com-
ing into existence during the continuance of the trust.

But if any part of these trusts, or of the provisions in relation to
them, should be deemed invalid, such invalidity will not affect
the remaining trusts ; and the same, so far as they are agreea-
ble to the law of the land, should be sustained and enforced.
In case it shall be held that the trusts of the will are invalid, in
respect to any portion of the rents and profits, it is submitted,
by the complainants, to the court to decide and direct how,

and to whom, such portion is to be paid by the trustees ; and annual accountings will be necessary in order to ascertain the same. The question as to the trust of accumulation is prematurely raised. The debts, legacies and annuities will exhaust the rents and profits for at least six years. No direction for an accumulation appears on the face of the will. The trust may terminate before the expiration of the six years ; and it is not certain that any accumulation will occur. But if an accumulation was intended, and will occur, it is valid. Under the first subdivision of section 37, (1 *R. S.* 726,) an accumulation directed to be made for the benefit of the minors in existence, to continue until the youngest arrives at the age of twenty-one, is valid. Such a direction does not violate the policy of the law prohibiting perpetuities, as the accumulation could not continue beyond twenty-one years ; and section thirty-seven applies equally to a class hereafter created, as to a class already in existence and ascertained. If the court can so construe the will as to effectuate the intention of the testator, without violating the law against perpetuities, the court will do it. The intention of the testator, that the rents and profits should accumulate until the youngest child arrived at the age of twenty-one, is manifest.

The power conferred on the trustees by the 40th section of the will is a valid power ; and all the express trusts created by the will are good. An express trust may be created to receive rents and profits. (1 *R. S.* 728, § 55.) All the directions in the will may also be executed under the provisions of the statutes relative to powers in trust. (1 *R. S.* 729, § 58. *Idem*, 732.)

The revised statutes have recognized the *cy pres* doctrine, (1 *R. S.* 748, § 2,) which does not authorize the will to be so construed as to make the devise wholly void ; but requires it to be so expounded as to carry the testator's intention into effect, so far as the rule respecting perpetuities will allow.

If the directions to accumulate are void, the estate will go to the devisees now in being ; the statute having provided for a case of intermediate rents and profits, where the direction for accumulation is void. (1 *R. S.* 726, § 40.) That is a recog-

nition of the *cy pres* doctrine ; as to which doctrine see 6 *Cruise's* *Dig. tit. Devise*, 161, *ch.* 9, § 18 ; *Pitt* v. *Jackson*, 2 *Bro. Ch.* 51 ; *Lade* v. *Halford*, *Ambler's R.* 479 ; *Jer. Eq. Jur.* 243 ; *Attorney General* v. *Whitechurch*, 3 *Ves.* 141.)    Where the direction to accumulate shall be for a longer term than during the minority of the persons intended to be benefitted thereby, the direction is void only as to the time beyond such minority. 1 *R. S.* 726, § 38.)    And as the personal property is directed to be turned into land, the doctrine will extend to that also. (12 *Ves.* 295.)

The validity of the will having been impeached by the answers of Augustus James and W. H. Barker, and of the guardian ad litem of Lydia James, these parties should, after the true construction of the will has been settled, and the rights of the parties under it ascertained, be compelled to elect, whether to take under the provisions of the will, or to claim as heirs at law and next of kin ; and in case any of them shall elect to take as such heirs at law and next of kin, provision should be made for compelling the party so electing to refund all moneys received under the will.    A reference should be made to a master, to report whether it will be most beneficial for the infants to take under the will, or as heirs at law and next of kin.    As to election, see *Thellusson* v. *Woodford*, 3 *Ves.* 209, 220 ; 2 *Sim. & Stu.* 174 ; *Blake* v. *Bunbury*, 1 *Ves. jun.* 514, 523 ; *Whistler* v. *Webster*, 2 *Ves. sen.* 360, 372 ; 3 *Ves.* 191 ; *Jer. Eq. Jur.* 536 ; *Frank* v. *Standish*, 15 *Ves.* 391 ; *Welby* v. *Welby*, 2 *Ves. & B.* 188 ; *Dillon* v. *Parker*, 1 *Swan.* 370 ; *Cavan* v. *Pulteney*, 2 *Ves. jun.* 544, 560 ; *Idem*, 372.

*S. A. Talcott*, for Henry James.    The legal estate of the complainants, as trustees under the will, is void by reason of the uncertainty of its duration, and its violation of the provisions of the Revised Statutes against perpetuities ; and because none of the trusts of the will are good as express trusts under the Revised Statutes, and it is impracticable to execute them according to the intent of the testator.    Neither can the court so remodel the will as to obviate the objections to it, as it is impossible to foretel when the trust will end ; and it may be impossible for the trustees themselves to tell when it shall have ended.

The limitation of the estate is a violation of the Revised Statutes, in their provisions against perpetuities ; and the trust requires the sale of lands for other purposes than those enumerated among the express trusts permitted by the statute. It also requires the performance of various other things not mentioned among the objects of express trusts. The trust for accumulation is void, because it violates the provisions of the statute, in the selection of persons to be benefitted, as well as in the extent of the duration of the trust. The trust for division, &c. is also void, it not being for a division of the original estate of the testator, but of the accumulated fund ; and as that fund cannot be legally raised, there is no subject matter on which this part of the trust can properly operate. And the trust for the payment of debts, legacies, &c. being also for payment out of, or by means of the use of the accumulation of the accumulating fund, and not by direct charge upon the personal estate, or upon the land, or upon the rents or profits of either real or personal estate of which the testator should die possessed, is also void, and for the like reason.

It is impracticable to execute the most important trusts ; for the time of the performance of some depends upon anticipating the period at which the trust estate must terminate— a time which cannot be ascertained ; and the amount of the trust fund to be appropriated, in other cases, can only be calculated by reference to the same unascertainable period, and then is to consist of a proportionate share of a fund which, on account of its illegality, can never be raised. The trust as to the three and a half shares is void, not only for the reasons stated, but for the additional reason that if it should be upheld, the trustees will have the power to dispose of the whole of those shares and their accumulations, not for the benefit of minors, but for the sole benefit of an adult, and one who was an adult at the time of making the will, viz. Augustus James.

This is not a case in which the court can remodel the will, apply the doctrine of *cy pres*, or carry the intent of the testator partly into effect, in regard to the accumulation or any thing depending upon it. (*Rosseau* v. *Reid*, 2 *Eden's Rep.* 6. *Harrison* v. *Naylor*, 2 *Cox's C. C.* 247. *Sugden on Powers*, 414,

*note.*) And if the trusts are void, then, upon the general prin- ciples of the Revised Statutes, that when the trust ceases, the estate of the trustee shall ipso facto cease, no legal estate passed to the trustees.

As to raising a power in trust, in the persons named as trustees, for the purpose of effectuating, by such means, the *objects of the testator's will*—this cannot be done, because it would subvert the object of the statutory provision against ac- cumulations, and is not only against the spirit, but against the very language of the acts, which declare, both as to real and personal property, that all directions for accumulations, except such as are therein allowed, shall be void. The stat- ute as to powers in trust, (1 *R. S.* 729, § 58,) applies only to cases where the trust directs or authorizes the performance of an act, which may be lawfully performed under an express power. The acts required by the will in this case could not be lawfully performed under an express power ; for the stat- ute declares all directions for accumulation, otherwise than as specified, void ; including, in that general declaration, as well express powers as express trusts. And all the objections be- fore stated are valid objections against raising powers in trust for purposes referred to in those objections.

If the foregoing doctrines are correct, then the real es- tate, as neither debts nor legacies are charged upon it, de- scends unencumbered to the heirs ; and the personal estate goes to the complainants in their capacity of executors, to be administered in the ordinary way. But if they are in- correct in regard to the existence of a valid trust or power in trust to pay debts, legacies, &c. then, as the debts, lega- cies, &c. are not charged upon the land, but upon the pro- ceeds only of an amalgamated general fund which cannot be raised, the court will throw the charge where the law would throw it, without any special provision for it in the will, upon the personal estate alone ; which the complainants ad- mit to be sufficient for the payment. Or, if the real estate is to be held in any manner subservient to the provision for pay- ment of debts and legacies, and the trust is held to subsist as such, the court will require the trustees to exhaust the per- sonal property in the first place ; and the heirs will be entitled,

by a resulting trust, to all the rents and profits not necessary to supply a deficiency of the personal property ; and the court should direct a conveyance to them, by the trustees, of all the real estate not required to supply such deficiency. And if a power in trust is to be raised, to enable the donees of the power to pay debts, legacies, &c. then the court will not permit any sale of the real estate, or an application of the rents and profits of it, for such purpose, until an ascertained deficiency of the personal assets ; and then only to the extent necessary to supply such deficiency. In the mean time, the lands descend to the heirs at law ; who are entitled to their occupation, and to the receipt of the rents and profits as in ordinary cases. In order to ascertain whether, under this view of the case, the land, or any part of it, or of its rents and profits, can be taken, the trustees or donees of the power in trust should actually exhaust the personal estate ; or the chancellor can direct a master to take an account of the personal estate, and report whether any and what amount is necessary to be raised from the realty. And, upon the coming in of the report, if the will creates a power in trust, and it is necessary to raise any thing from the real estate, the court will direct the donees of the power, within reasonable time, to exercise it to that extent, and no farther. Or if the trust itself is supposed to continue as such, then to set apart what will be sufficient, out of the rents and profits of it, to supply any deficiency of the personal estate, or to proceed to sell as much as may be necessary, if a sale should be requisite, and release the residue to the heirs ; and, if it should appear that nothing is required from the realty, then so to release the whole.

Trusts for accumulation are only authorized for minors. Adults must not be included. Here the trust is directed to continue beyond the minority of the children under age, as to all except the youngest. All directions for the accumulation of the interest, income or profit of personal property, not expressly authorized by the statute, are declared to be void. (1 R. S. 774, § 4.) The court cannot enlarge the intent of the testator. Here there is no general intent, as distinguished from the particular intent. The intent as to the accumulation is one and indivisible. The court, in order to apply the

doctrine of *cy pres* to this case, must make a will for the testa-
tor. If the court should direct that the rents be annually di-
vided, it would defeat the whole intent of the testator, which
was that they should accumulate ; and where the directions
for accumulation are invalid, the surplus of the rents and prof-
its are liable to the claims of the creditors of the person for
whose benefit the trust is created. (1 *R. S.* 729, § 57.)

*J. I. Roosevelt*, for the minor children of Augustus James.
The devise of the fifty thousand dollars to be laid out in land
was intended by the testator for the benefit solely of the three
children of his son Augustus, who were in being at the date
of the will, and not of such as might be born after that period ;
and the interest intended to be given to them in the land so
to be purchased was an estate not for life, but in fee. When-
ever an estate can be relieved from uncertainty and become
vested and certain, courts will so decree. Here, if after-born
children are to be included in the devise for the benefit of the
children of Augustus, there will be an uncertainty. The in-
terest in the children of Augustus James is a vested estate in
remainder, subject to the power of appointment given to their
father and mother, or the trustees. (1 *R. S.* 723, § 13. *Doe*
*v. Provost*, 4 *Johns. Rep.* 61. *Ves. sen.* 143. 9 *Ves.* 445.) The
devise to these children may be deemed as a devise of so
much real estate as amounts in value to $50,000, or of rents
to the amount of $50,000, to be applied in purchase of real
estate. The nature of the estate is a term for years in the
trustees, with a vested remainder in fee to these children.

In the direction to make the purchase in question out of
the rents and profits of his estate, the testator meant to in-
clude the income as well of personal as of real estate ; and in-
asmuch as the duration of the trust is uncertain, the purchase
ought to be made out of the first income that may be receiv-
ed by the trustees.

Should any of the directions of the will affecting the rights
of these infant defendants appear to be ambiguous, they ought
to receive that interpretation, if any, which the law sanctions,
and not that which it prohibits ; and the devises in favor of
these children being not direct, but executory, it is competent

1835.

Hawley
v.
James.

for the court, should there be any difficulty in a strict interpretation, to direct a settlement in such manner as will carry into effect so much of the intention of the testator as may be warranted by law. These devises, so far as respects the substance and leading object thereof, are not, nor is either of them, contrary to law and void.

The widow of the testator, not having made an entry or commenced proceedings for the recovery or assignment of her dower, must be deemed, according to the revised statutes, to have elected to take in lieu thereof the provision made for her by the will of her husband. If, however, she is entitled to claim her dower, and does claim it, she forfeits not only the devise and bequests given to her for her own benefit, but also that given to her for the support of her sisters' children. She can only be endowed, if at all, of the third part of the lands of which her husband was seized of an estate of inheritance at some time during the marriage ; and if her election to take her dower was valid, then the provision made for her by the will, being undisposed of, ought first to be resorted to as assets for the payment of debts.

The trusts created by the will, although they may terminate sooner, cannot continue longer than the lives of the two youngest descendants of the testator in being at the time of his death ; and therefore the power of alienation is not suspended beyond two lives in being at the death of the testator.

*D. D. Barnard,* for William James, and for Anna M'Bride James and Lydia James. The will purports to give to the trustees authority to receive and apply the rents and income of the estate of the testator, and power to manage and dispose of the estate. The trustees have no legal authority to receive the rents and profits of the testator's real estate. A trust to receive the rents of lands cannot be executed, unless it be either for the purpose of accumulating them, or for the purpose of applying them to the use of some person. (1 *R. S.* 728, § 55.)

The authority to receive the rents of the testator's lands, for the purpose of accumulating them, is wholly void, on account of the application which the trustees are required or authoriz-

ed to make of the fund of accumulation, or a part of it, to certain specified objects, before the close of the trust; for either the accumulation will then certainly be for the benefit of wrong persons, or it will not certainly be for the benefit of right ones. And also with reference to the objects of the bounty at the close of the trust, the directions for accumulation are void. The accumulation will not certainly be for any minor. It will not certainly be for a minor now in being, if for a minor at all. And if for minors, it will not terminate with their minority. Neither is this one of the cases in which directions may be void in part, and good in part. A present division of the fund directed to be accumulated into shares, cannot be made, so as out of the twelve to take one or more shares, and allow the residue to accumulate. Nor can a share be taken from that fund, and given to any person, as being presumptively entitled to the next eventual estate.

The authority to receive the rents of the testator's lands, with a view to the direct application of the rents to the various purposes specified in the will, is wholly void. The trust to receive rents for the payment of debts, legacies and annuities, is void, because the statute does not allow such a trust; or if it does, the personal estate must first be applied. (1 *Peer Wms.* 294, 579.) As to the other purposes specified in the will, as in sections 29, 30, 31, 32, 33, &c. the trust to receive rents for those objects is void. It being contingent in each case whether the application would ever be made, if the rents were allowed to be received until the contingency should happen, an illegal accumulation would take place. And as the rents must be distributed in the mean time, the contingencies never will or can happen.

The trustees have no legal authority to receive the income of the personal property of the testator. The income cannot be received to be accumulated, for the same reasons which have been applied to the trust to receive the rents of lands. Neither can it be received to pay debts and legacies, because the property itself must be applied to these purposes; nor for the other purposes of the trust, for the reasons before given as to receiving rents for those purposes. As to the annuities;

they are provided for, whenever the trust ends, by security on the property; and the trust was never intended to be continued for these alone. It follows, from these premises that the trustees do not take the legal estate in the lands, though they are devised to them; and that they take the personal property as executors merely, and not as trustees.

The trustees have no legal power to manage and dispose of the testator's estate. This is, at most, a power in trust. The power to manage the lands, (as to sell under the 27th section of the will,) is void, as a power in trust; for it was given with a view to an accumulation, which cannot legally be made; and with a view to an eventual disposition which cannot take effect. The 27th section of the will, requiring sales and exchanges, prescribes no duty which may lawfully be done under a power. The power to dispose of the estate is void as a trust power, because it confers on the donees of the power an illegal and dangerous discretion; and no such estate as that contemplated by the testator to be disposed of by them can ever exist. The exercise of the intermediate power of sale and exchange is essential to the proper execution of the power of final disposition, and the first power cannot be exercised; if it could be, then the last power would be illegal, as such a power, by gift of the testator, could not attach to any lands not owned by him at the time of his death. The power of disposition is void; because by it the statutes relating to perpetuities are violated, inasmuch as the power of alienation and absolute ownership are suspended for more than two lives in being. This would be so, considering the whole estate as lands, (and the same rules apply to personal property,) if the trustees take the estate or a term in it, either distinctly by the will or by implication. (1 R. S. 723, § 14, 15.)

This is an express trust, created for purposes not enumerated in the statute; it is therefore void as a trust, and it is void as a power, because it does not authorize the performance of acts which may lawfully be performed under a power. (1 R. S. 729, § 58.) The statute prohibits suspension of the power of alienation, beyond the prescribed time, by any limi-

tation or condition whatever. And if the power can be exe-cuted, then persons will take estates which they would not be capable of taking under the will or instrument creating the power. (1 *R. S.* 737, § 129.) If this mode of suspend-ing the power of alienation is allowed, perpetuities may be ef-fected as if no statute against them had ever passed.

The authority to sell or mortgage lands is not now a trust, but a power. In cases of powers, the legal estate does not pass to the donee of the power. The authority to receive the rents and profits, for the purposes of accumulation, is confin-ed to receiving and accumulating rents for the use of a minor who is known and ascertained. There is a material distinc-tion between accumulating rents, and applying rents as ac-cumulated. A trust to accumulate and apply the accumu-lated fund is void, unless it is to apply them to the use of some particular minor; then it will be good. A trust to ac-cumulate and apply the accumulations in payment of debts and legacies, would be void, unless it was for the benefit of one or more minors then in being; so it would be void, if it was for the purpose of raising a portion in money or land, for any per-son not a minor. In this case, within three years at least, an accumulation must take place; and after that period, every payment made by the trustees will be out of an accumulated fund. The whole of an accumulated fund, to be valid, must be for the benefit of minors; if part is for adults, the whole is void. An accumulated fund for a minor cannot be devised over; and the direction in relation to the accumulation must be di-rect and absolute. If the payment to the minor rests in the discretion of trustees, the direction to accumulate will be void. The court must be able to see that the accumulation is abso-lutely and exclusively for the benefit of minors, and not de-pendant on any contingency. Here are directions to make advances of marriage portions to daughters; but they may not marry until after they are twenty-one.

In a devise of property to a class, to be divided after the death of the testator, after-born children are included. (*Heath* v. *Heath*, 2 *Atk.* 122. *Ex'rs of Sinclair* v. *Legatees, &c.* 2 *Desau.* 127.) This being the rule, there would, under this

will, be an accumulation for the benefit of children not in being at the death of the testator. Suppose all the nominees, except Augustus the adult, should forfeit their shares. He, in that case, would receive the whole; at all events, he must receive one twelfth. Here is then a direction to accumulate for the benefit of an adult, to whom the whole estate may go. James King, also an adult, is to receive his $10,000 legacy out of the accumulated fund. We must then pronounce the whole direction to accumulate void, it not being for the benefit of minors only and minors in being; and the accumulation directed will not end until the youngest grandchild arrives at the age of twenty-one; which will be several years after the expiration of the minority of the others. Here, then, is a direction to accumulate beyond the minority of the nominees; and these directions cannot be remodelled so as to bring them within the statute.

The testator devised the rents of his real estate for the payment of debts and legacies, which is creating a term of years, to continue until the debts and legacies are paid. Interest in lands, devised to executors for a term of years for payment of debts, are assets in their hands, and deemed a part of the personal estate. (2 R. S. 83, § 6, sub. 3.) The object of the legislature was, as far as possible, to dispense with active trusts. But here there is no case, other than that of debts and legacies, in which the trustees are directed to make any direct and certain application of the rents for any specific object. The whole is contingent. There must be no contingency in the application of accumulated rents; the application must be certain and absolute. There can be no accumulation on a contingency.

All powers are abolished except those which are expressly authorized by the revised statutes. (1 R. S. 732, § 73.) Every power whether, general or special, must be beneficial or in trust. The power, in this case, if any thing, is a power in trust. In all cases of a power in trust, the benefit must be absolutely and directly for the persons for whose benefit it was created. A special power in trust, is where the disposition which it authorizes is limited to be made to any person or class

of persons other than the grantee of the power, or where such person, or class of persons, is designated as entitled to the benefit from such disposition. (1 *R. S.* 734, § 95.) The authority given to the trustees to sell and exchange lands is not embraced within this definition. Suppose the trustees take the legal estate, then the power of alienation is suspended for a longer period than is allowed by law. An estate must certainly vest within the time required by the law relating to perpetuities; that it may so vest is not sufficient. (9 *Ves.* 130.) By the 15th section of the statute, the limit of absolute suspension is for two lives in being at the creation of the estate. No limitation which by possibility may suspend the absolute power of alienation for a longer period than this can be good. Neither can a contingent remainder be created on a term of years, unless the contingency on which it is limited must happen within that period. (1 *R. S.* 724, § 20.) And the suspension of the power of alienation must be determinable on lives, and cannot continue beyond two lives. Here there were twelve minors at the death of the testator; and if eleven of them should have died under twenty-one, the power of alienation will have been suspended during the continuance of more than eleven lives in being at the testator's death. The estates here are future estates; and the estates given to the children and grand children are all contingent estates. (1 *R. S.* 723, § 13.) A conveyance by one of them would be a nullity. The limitations must therefore be held to be void. The provisions of the revised statutes as to perpetuities are remedial; they are to be liberally construed, in order to attain the object the legislature had in view.

William James is entitled under the will in any event to an annuity of two thousand dollars for life, out of the testator's estate. And he is entitled to share in so much of the testator's estate as has not been legally disposed of by the will. He is also within the provisions of the 41st section of the will, if the same has any validity.

Anna M'Bride James is entitled in any event to the benefit of the devise to her in the 36th section of the will, and to have an immediate conveyance of the property.

*T. W. Tucker,* for the guardian ad litem of Mrs. Barker. Mrs. Barker is entitled to the $3000 devised by the 33d section of the will, and the trustees would be justified in paying that sum to her. They are also authorized, by the 33d clause, to advance to her $2000 per annum, if they should deem it necessary for her support, and the promotion of her welfare. But should it be decided that the above payments and advances cannot be made to her, under the will, and if the directions for accumulation are held valid, so that she cannot enter upon the enjoyment of the share given to her by the will, until the youngest child and grand-child of the testator arrives at twenty-one, then, under the provisions of the revised statutes, such an advance of the rents and profits and income of her share should be made to her as will provide for the support of herself and family. In that case it should be referred to a master to report upon the pecuniary circumstances of W. H. Barker, her husband, and as to her means of support independent of the provisions of the will, to determine the amount of the advance that should be made to her.

In case the directions for accumulation are held to be void, there will then be no valid disposition of the rents and profits and income of the share given to Mrs. Barker; and she being presumptively entitled to the next eventual estate, those rents and profits and that income should be paid to her during her life. Or if the general trusts of the will are declared void, wholly or in part, and Mrs. Barker becomes immediately entitled, as an heir at law and one of the next of kin to the testator, to any portion of his real and personal estate, an adequate provision for the support of herself and her children should be made to their separate use, under the direction of the court; and a reference to a master should be made, to ascertain the amount of such provision, and how and at what times the same should be paid.

Not being advised what her true interests require her to claim in respect to the validity or invalidity of all the directions for accumulation contained in the testator's will; or in respect to those directions regarding the three and a half shares; or respecting the validity or invalidity of the whole trust created by the will, or any part thereof; or respecting

the validity of the power in trust contained in the will, or any other question raised in this cause, her counsel submits her rights to the decision of the court; and he claims the benefit of any construction of the will which the court may make upon any points presented by any of the other parties to this suit, which may be for her benefit. She cannot, however, be called upon to make an election, whether she will take as devisee or legatee under the will, or as an heir at law and one of the next of kin of the testator.

*H. Bleecker. & J. V. L. Pruyn*, for John B. James and the other infant children of the testator, and for Mary Ann King and Robert James. We submit, for the decision of the court, the question whether the devise in the fifth section of the testator's will, to his wife, of the sum of three thousand dollars, to be applied by her to the maintenance, education and advancement of the children of her deceased sister Jeanette B. Gourley, has not failed by reason of her election to take her dower in the estate, in lieu of the provisions made for her benefit in the will.

If it should be decreed that any part of the testator's personal estate passes to the executors or trustees, to be distributed among the next of kin as intestate property, such estate should be held liable in the first place to pay the testator's debts, and such of the legacies and bequests given by his will as are held to be good; and such personal estate must be so applied, whether it was intentionally left undisposed of, or was left undisposed of in consequence of an illegal disposition thereof by the testator. Charging the real estate with the debts, does not make it the primary fund for their payment, in exoneration of the personal estate. The same rule holds as to a charge on rents and profits of lands. Where a testator charges both the real and personal estate with payment of the debts, the personal estate must first be applied to that object. (2 *Powell on Dev.* 236, 667. *Davies* v. *Trapp*, 1 *Bro. C. C.* 524. 2 *Id.* 258, *note.* 8 *Ves.* 295.) The debts now due ought to be paid by the trustees at once. (*Livingston* v. *Newkirk*, 3 *John. Ch. Rep.* 324. 2 *Brown's C. C.* 257. *Galton* v. *Hancock*, 2 *Atk.* 439, 424.) Where legacies are directed to

be paid out of rents and profits, a sale to raise money for their payment will not be permitted. (1 *Ves. sen.* 42, 552.)

If the trust created by the will is good, then the trustees of the estate of the testator, or a majority of them, are authorized, under the thirty-first and thirty-second sections of his will, with the approbation of his widow if living, to advance under each of these sections to either of his sons or grandsons, who are entitled to an advance for the purposes therein mentioned, one entire fourth part of the probable amount to which such individual will be entitled, or which is to be assigned to him upon the ultimate division of the testator's estate ; absolutely, and without reference to the quantity of interest directed to be conveyed to such individual at the time of the termina-. tion of the trust estate. By these sections the advance is directed to be made without any qualification as to the extent of interest to be taken by the person receiving the same ; it was therefore intended to be an absolute and unconditional gift. And the forty-fourth section of the will was not intended to diminish or reduce the same, inasmuch as the quantity of interest directed to be conveyed to the testator's devisees by that section, refers only to such portions of his real estate as are to be conveyed at the expiration of the trust, and not to the advances previously directed to be made.

If, in the opinion of the court, the complainants were not authorized to allow to the defendant Augustus James five per cent. commission for collecting the rents due to the estate, when other persons would collect them for a smaller commission, then the amount paid to him should be reduced accordingly ; but if the court should be of opinion that, under the circumstances of the case, the complainants were authorized to make a more liberal allowance to him than to any other person, then the court will also declare whether the allowance made to him is or is not more than a fair and liberal allowance. And notwithstanding the report of the master that the employment of a clerk is indispensably necessary to the interests of the testator's estate, it is a question to be decided by the court, whether the complainants and their co-trustee are authorized by law, on a fair construction of the will, to employ a clerk ; and whether the employment of such clerk

is necessary and conducive to the interests of the estate, and what would be a proper salary for such clerk if employed.

From the facts and testimony adduced on the subject, the court is also to decide whether sufficient has been shown to authorize a decree to be entered, directing the complainants to convey to Augustus James the lots in Syracuse, which he claims were given to him by his father William James ; and if a conveyance should be directed, whether Augustus James should not be charged with the amount which these lots cost his father, and the interest on such cost since he took possession of the lots.   But we submit that sufficient is not shown to authorize the trustees to convey to him the Syracuse lots claimed by him ; and if a conveyance is directed, he must pay the cost of these lots, with interest.  (*Bride* v. *Brown*, 9 *Ves.* 1. *Hooper* v. *Goodwin*, 1 *Swans. R.* 485.   *Cotteen* v. *Missing*, 1 *Mad. Rep.* 107, 176.)   Augustus James claims these lots under a mere parol agreement, which is void by the statute of frauds.  (2 *R. S*, 134, § 6.)

It is also a question for the court to decide, whether, under the 36th section of the will, the testator intended that the provisions for the children of his son Augustus, and for Anna M'Bride James and Lydia James, should be raised out of the rents and profits of his real estate only, or out of the rents and profits of his real estate and the interest and income of his personal property.   But we insist that the conveyances of real property, to be made to the children of Augustus, and to Anna M'Bride James and Lydia James, as directed by the thirty-sixth section of the will, are not to be made until the termination of the trust estate, as created by the will.

Catharine James, the widow of the testator, is not entied to dower in any part of his real estate, except such as to which he died seized of an estate of inheritance ; and in the cases mentioned in the bill of complaint, where the legal estate was not vested in the testator at the time of his death, she has no legal claim to dower.   It is also submitted to the court to decide the question whether the accumulation of the rents and profits of the testator's real and personal estate, as directed by his will, is or is not valid under the provisions of the revised statutes on that subject.   If the court should be of opinion that the accumulation as directed by the will is not

1835.

Hawley
v.
James.

good, still it may be void only for the time beyond the respective minorities of the persons for whose benefit it is directed, and be good up to that time. In that event, as it would apparently be for the interest of some of the younger infants, that the excess of the accumulation should descend to and be distributed among the heirs at law and next of kin of the testator, and the interest of the elder infants, whose minorities will shortly expire, that such excess on the several shares should go to the devisees and legatees entitled to such shares respectively, the question as to whom the said excess of accumulation will belong, is submitted to the decision of the court. (*Jer. Eq. Jur.* 77.) And if, by the decree of this court, any part of the testator's estate, or of the income thereof, should be directed to be paid to any of the devisees, legatees, or heirs at law, before the period fixed for that purpose by the will, then the portion so to be paid must contribute rateably with the remainder of the estate to the payment of such of the several annuities, legacies and bequests given by the will, as may be decreed to be valid. To accomplish this object, it is suggested that, before any payments are made to the devisees and legatees, except such advances as may be made under the thirty-first and thirty-second sections of the will, and the sums, if any, necessarily advanced for the education and maintenance of the infants, a fund should be raised as soon as may be, out of the income and profits of the testator's estate, or out of such part thereof as the court may think is chargeable with the legacies and bequests, to secure and pay the annuities, legacies and bequests given by the will ; and to furnish means to purchase the real estate to be conveyed to the children of Augustus James and to Anna M'Bride James and Lydia James, as directed by the thirty-sixth section of the will, so far as the said legacies and bequests, or any of them, may be held good. And the fund so raised to pay such legacies and to purchase such real estate, should be properly invested, and the income thereof paid to the persons entitled to the income of the testator's estate, until the time directed by the will for the payment of the legacies, and for the purchase of the real estate.

All the annuitants, devisees and legatees, who claim in hostility to the will, must relinquish the provisions made for their benefit in the will, in case their claims are established. If a devisee claims in opposition to a will, he must relinquish the provisions contained in it in his favor. (1 *Powell on Dev.* 443. *Jer. Eq. Jur.* 536.) This doctrine will embrace the annuitants as well as the cestuis que trust. (5 *Ves.* 218, 515. *Hume* v. *Rundell,* 2 *Sim. & Stu.* 177. 3 *Ves. jun.* 191. *Welby* v. *Welby,* 2 *Ves. & Bea.* 188. *Churchman* v. *Ireland,* 4 *Sim.* 420 ; 1 *Russ. & Myl.* 250, *S. C.*)

The three and one-half shares of the testator's estate, referred to in the forty-first section of his will, are to be divided and apportioned, by the trustee or trustees who shall make the division, among the persons who shall receive the eight and one-half shares of the estate, under the thirty-seventh and thirty-ninth sections of the will, and no others.

As it may be questionable whether the power of alienation is not, by the provisions of the will, suspended beyond the period allowed by law, and as the infants for whom we appear might take a more beneficial interest as heirs at law and next of kin of the testator than they would acquire by the will, it is deemed to be the duty of their guardian to concur with other defendants in submitting to the court the validity of such provisions of the will as may be thus questionable. And it is contended, on his part, that the devises to the children of Augustus James, and to Anna M'Bride James and Lydia James, are among the provisious of the will so questionable.

*John Duer,* for Augustus James. 1. The devise to the trustees is valid as an express trust, because it is made for purposes expressly authorized by the statute, and as it does not violate any of the rules prescribed by the statute in respect to the quality and duration of estates.

2. The powers to be exercised by the trustees, either during the continuance or at the termination of the trust, and not embraced in any class of express trusts, are valid as powers in trust.

The devise to the trustees is valid as an express trust, because it is made for purposes expressly authorized by the stat-

ute.   It was not the intention of the legislature, by enumerating and defining express trusts, to prevent the creation or execution of any trust before authorized by law.   It appears, from the notes of the revisers to the article " Of Powers," that they were fully aware of the impracticability of defining and limiting powers in trust.   It is certain, therefore, that no such limitation was intended by them.   It is hardly necessary to say that the term trust embraces powers in trust.   Every trust is a power; an authority to do some act for the benefit of others, although an *express* trust under the statute, is something more—namely, an authority coupled with an estate. (*Rev. Rep. p.* 58.)   The object of section 55, (1 *R. S.* 728,) was merely to define the cases in which the creation of a trust shall have the effect not merely of imposing a duty, but of passing the estate, in order effectually to abolish passive trusts. It was intended, however, to include in this enumeration every case in which the purposes of the trust require that an estate should vest in the trustees ; or, in other words, where the possession of the *lands* to which the trust relates is essential or important to the performance of the *duty* which the trust imposes.   In their note on this section, (*Rev. Rep. p.* 42, § 56,) the revisers have in effect declared that they meant to include every case in which to secure the execution of the trust, it is necessary that the title or possession should vest in the trustees.   As a general rule, it is fair to presume, that a section enacted in the form proposed, was adopted for the reasons suggested.   Either such was the intention of the legislature, or they meant to deny to certain trusts, lawful as to the duty imposed and the interest created, the necessary means of protection and security :  a supposition too unreasonable to be adopted.   To effectuate, therefore, the plain intent of the legislature, the terms of the enactment ought to be understood in their most comprehensive sense, so that no *trust* requiring to its due execution the possession of the land may be excluded. To the due execution of every trust directing the receipt and application by the trustees of annual rents and profits, the possession of the lands out of which the rents and profits are to arise is necessary.   It may be said, that if the devise be void as an express trust, it would still be valid as a power, and

authorize the trustees to charge the sums to be raised on the rents and profits of the land in the possession of the heir or devisee, against whom the trustees or cestui que trust might enforce the payment at law or in equity. It is true the trust would be valid as a power, but by construing it as such the cestui que trust would lose that security for the faithful application of the accruing rents which the testator intended he should have, and which may be essential to his protection. Where the moneys charged are to be raised within a limited period, the rights of the cestui que trust might be wholly defeated, by the neglect, waste or fraud of the tenant in possession. To prevent this, it may be urged that chancery would appoint a receiver. True ; and the very reply admits the propriety of giving the possession to the trustee, to secure the due execution of the trust ; for every· receiver is a trustee in possession, and by this construction the creation of an express trust is not prevented, but the testator is merely denied the choice of his trustee. Is it reasonable to believe that the legislature intended this? Applying, therefore, the principles of a sound interpretation to the provisions of section 55, it will appear that the will contains not one, but many distinct objects or purposes, each of which is sufficient under that section to sustain the devise as an express trust—namely, the payment of legacies, the payment of annuities, the satisfaction of charges, and the support of minors.

The testator directs, by paragraph 15 of his will, that certain legacies of sums in gross, some absolute and some contingent, shall be paid by his trustees out of the rents and profits of his estate, and this direction creates an express trust under the 2d subdivision of section 55, in the article " Of Uses and Trusts," which authorizes a trust to sell, mortgage or lease lands for the benefit of legatees. The words " my estate" are plainly used by the testator in sec. 15, and indeed throughout the will, in their most general sense, as embracing all his property, personal as well as real. By rents and profits, he therefore means the whole income of the capital or principal of the trust fund, whatever may be the description of property in which such capital or principal is at the time invested. It is deemed useless, however, to discuss separately the effect

1835.

Hawley
v.
James.

of the trusts on the personal estate, for if valid as to the real, *a fortiori* are they so as to the personal, the possession of which passes to the executors *virtute officii.* The sum of $1000 bequeathed to John James, of $2000 to the Orphan Asylum, and of $3000 to the children of Mrs. Gourley, are present and absolute legacies, and the advances to be made to the testator's daughters and grand-daughters under sec. 33 of the will, and the advances authorized to be made to sons and grandsons under sec. 31 and 32, are future and contingent. These advances are pecuniary legacies in the proper sense of the term, for they are to be paid in money, and when paid will be retained by the parties to their own use, and become part of their personal estate. Both classes of legatees are therefore proper objects of a trust, for the term legatees in the statute must be construed to embrace all who answer the description unless it can be shown that it is used in a more restricted sense. That a legacy may be made contingent on the happening of a future event, or the exercise of a discretion by trustees, is too familiar law to be denied; and it is equally certain that such legacies may be made payable out of rents and profits. The right of a testator to make a separate disposition of future rents and profits during the period in which the suspense of ownership may be continued, is well settled at common law, and is distinctly recognized in sec. 36 of the article "Of the Creation and Division of Estates," (1 *R. S.* 725.) Every charge upon rents and profits is a partial disposition—a disposition to the extent of the sums to be raised. To deny that an express trust may be created for the payment of legacies so charged, is to impute to the legislature the intention of allowing a trust, and yet prohibiting the creation of an estate necessary to support it. If a devise were made to trustees only for future and contingent purposes, perhaps no estate would pass until the happening of the contingencies, and in the interval the freehold would descend to the heirs; but this is a question which it is unnecessary to consider in the present case, as it is believed that there are permanent trusts sufficient to support the devise in its whole extent, and certainly many that will not be satisfied until the happening of the events on which the contingent trusts depend.

The direction to pay future legacies out of rents and profits, no more authorizes or implies accumulation, than the direction to pay, in the same manner, those which are present and immediate. It is a general rule, that a charge on accruing rents and profits, is to be satisfied by their application as they arise; that is, during or at the termination of each year. The direction in section 15 of the will, that if the rents and profits accrued in the hands of the trustees shall at any time be insufficient for the payment of the charges, the deficiency shall be supplied out of other funds belonging to the estate, or by temporary loans; and all sums thus drawn from the capital or borrowed shall be reimbursed out of future rents and profits, is not a provision for accumulation, but for anticipation merely. The term accumulation has a fixed and definite meaning in law, and in that sense it must be presumed that it is used in the statute. It means the periodical conversion of income into capital, and there can be no accumulation where no rents or profits are added to the estate or capital as it existed at the death of the testator. Whether sums to be raised out of rents or profits are satisfied by the appropriation for a term of years of the income as it accrues, or whether they are fully paid in the first instance, and the debt or deficit thus created be reimbursed out of the future rents as they accrue, the result is the same. In both cases there is no accumulation, but an annual application of the rents and profits to the very purposes intended by the testator. In both cases the capital is not increased, but preserved. The direction in sec. 35 of the will, that all advances to any of the descendants of the testator, together with compound interest thereon, at the rate of five per cent. per annum, shall be deducted from the share of the person advanced, on the ultimate division of the estate, provides, it is admitted, for an accumulation; not, however, for the benefit of the estate, but against the person advanced. The intent of the testator, in sec. 35 of the will, was not to convert an advance into a debt due to the estate, for the payment of which the person advanced was to be personally liable, but merely to provide a rule for ascertaining the extent of reduction to which the share of such person should be liable. The effect of recharging the sums advanced, with compound inter-

est, is not to increase the estate or capital in the hands of the trustees, but solely to diminish the proportional share of such estate or capital to which the person advanced would otherwise be entitled. Advances made, as authorized, so far from producing, tend to prevent the mischiefs which the statutory restraints on accumulation were designed to exclude. Instead of locking up rents and profits as received, from the purposes of commerce, and swelling by their addition an existing mass of wealth, they tend directly to expenditure, active employment, and consumption.

All the legacies being thus lawful in their character—lawful as a charge on rents and profits, and free from the vice of accumulation—the trust for their payment must be valid, if the trustees are authorized to sell, mortgage, or lease the lands for that purpose. An authority to sell or mortgage, (except, perhaps, with the view of anticipation,) it is admitted, is not given ; but the power to lease is involved in the direction to receive and apply the rents and profits. It passes as a necessary means of attaining the end. In the case of *Ivy* v. *Gilbert*, (2 *P. Wms.* 14,) a term of years was vested in trustees, to raise certain sums as portions, out of the rents and profits, by leasing. It was held that the trustees could not sell or mortgage, but by force of the term leasing, were confined to raise the portions out of the annual and accruing rents and profits ; and it was thus in effect decided that a direction to lease and a direction to raise out of the annual rents, are in truth of equivalent import, and imply each other. The position that, under the second subdivision of express trusts, trustees cannot be authorized to receive and apply rents and profits to the payment of charges, but can only satisfy them out of the immediate proceeds of a sale, mortgage, or the conveyance and sale of a term of years, is wholly denied. This position is so far from being true, that where a trust to sell or mortgage is created by devise, the trustees must also be empowered to receive the rents and profits, or the legal estate will not pass. The section which creates this necessity, (1 *R. S.* 729, § 56,) is silent as to the application of the rents and profits, and consequently the testator

may direct their application to the payment of any sums which by law may be charged thereon.

That the terms to lease were not used by the legislature, as conferring merely an authority to sell a term of years, is evident, from many reasons: if used in this sense, they were unnecessary; for a general power to sell, which authorizes a conveyance in fee, implies an authority to convey any less estate. The term "lease" is not applicable at all to a conveyance of a term of years, for a consideration in gross, but means such a conveyance with a reservation of annual rent, and creating the relation of landlord and tenant. And had it not been considered by the legislature, that a trust to lease *ex vi termini*, empowered the trustees to receive the rents and profits, a devise of lands to be leased, as well as of lands to be sold or mortgaged, would have been included in the provisions of the 56th section, before referred to. The conclusion is that a trust to pay legacies by leasing, and a trust to pay them out of accruing rents, are identical, and therefore a valid trust is created as to the legacies by the will.

The testator, by the 7th, 8th, 9th, 10th and 11th sections of the will, directs that certain annuities shall be paid absolutely, out of the rents and profits of his estate, during the term; and by section 33, he authorizes his trustees to pay, in the same manner, other contingent annuities. These directions sustain the devise of the legal estate to the trustees, under the third subdivision of express trusts, which authorizes a trust, to receive the rents and profits of lands, and apply them to the use of a person during life, or for a shorter term. If these annuities are to be regarded as pecuniary legacies, their separate discussion is unnecessary; but it is believed more proper to rank them under the third statutory class of express trusts, which was meant to embrace all cases of the periodical application of rents and profits, during a longer or shorter term; trusts for the payment of sums in gross being sufficiently provided for in the 1st and 2d classes of express trusts. By this arrangement annuities are made subject, as they ought to be, to the provisions of section 63, in the article " Of Uses and Trusts." (1 *R. S.* 730.)

The objections that the legacies and annuities are properly payable out of the personalty, and that the provisions of the will do not amount to an exemption of the personalty, are unfounded. That the personal estate is the primary fund for the payment of all pecuniary bequests is certain; and it is equally so that a testator, exempting the personalty, may charge their payment .on any other property or fund which he has a right to devise. Such is the effect of the provision in the present will, as every charge on annual rents or income is in its nature an exemption of the estate or capital. The object of every such charge is to exonerate the capital, for the benefit of those to whom it is ultimately devised or bequeath- ed. By a different construction, the bounty intended for them would wholly or partially fail. It is therefore certain that in every such case, by applying the capital to the payment of pecuniary bequests, (unless the deficit were made good out of future income,) the intention of the testator, though manifest, and lawful, would be defeated.

It is doubtful whether any part of the testator's property, so far as the legatees and annuitants are concerned, is to be regarded as personalty; since, by the latter clause of the 27th section of the will, the testator, it may be reasonably argued, has impressed upon the whole the character of real estate. In the case of *Cowley* v. *Hartsonge*, (1 *Dow's P. C.* 361,) this construction was adopted, although a discretionary power as to the mode of investment, either in real or personal property, was given to the trustees.

The positions that the charges on the rents and profits in the present case, according to the established practice of chan- cery, may and ought to be finally satisfied by a sale or mort- gage of the lands themselves, and that a decree to that effect can now be made, are denied. By "finally satisfied," the testator meant, without a provision for making good the defi- cit out of the future income of the trust fund remaining in the hands of the trustees. Whether a sum sufficient for the payment of present debts and legacies may not be raised by sale or mortgage, but reimbursable out of future rents, is a dif- ferent question, and not at all affecting the merits. It is very

1835.

Hawley
v.
James.

doubtful, however, whether the testator intended that even this should be done. It depends on the construction to be given to a clause in section 27 of the will. If the words "as may not be wanted to enable them," &c. refer, as seems to be the fair construction, to other moneys coming to the hands of the trustees, exclusive of the proceeds of sales, then the trustees have not the right to sell for these purposes; and it would be difficult to contend that the right to mortgage is implied in the general authority to make temporary loans. That such decrees have in numerous cases been made by courts of equity in England is admitted; but in every such case, the decision proceeds on the ground that the testator intended, construing his words in their legal sense, that the charges should attach on the lands themselves, not merely on the yearly rents and profits. In the cases referred to, (the principal of which are quoted on the opposite side,) the word profits is construed to mean, not the annual income, but any profits which the land will yield by sale, mortgage, or otherwise, as equivalent in effect to *proceeds*. As a devise of rents and profits is a devise of the lands, it is held by analogy that a charge on the rents and profits generally, is a charge on the lands. But where the intention is manifest that the sums charged shall be raised out of the yearly or accruing rents and profits, that intention must prevail; and chancery, so far from authorizing, will not permit the trustees to satisfy the charges in any other mode, or by any other means, than those prescribed by the testator. (*Ivy* v. *Gilbert*, 2 P. *Wms.* 8, 19. *Evelyn* v. *Evelyn, Idem,* 666. *Mills* v. *Banks,* 3 P. *Wms.* 1, 8. *Okeden* v. *Okeden,* 1 *Atk.* 551, *note.*) The provisions of the 15th section, as well as other clauses of the will, demonstrate the intention of the testator, that the legacies, annuities, and other charges, should be paid out of the yearly, or accruing rents and profits, and not otherwise. The testator declares that the legacies, &c. shall not be a charge on his real estate; and then proceeds to make them payable out of the rents and profits. His meaning can only be that they shall not be a charge, i. e. lien or encumbrance on the lands themselves, so as to render them liable to sale, but shall be paid out of the rents as they arise. The latter clause, in which he speaks of

the possible insufficiency of the rents accrued, authorizes temporary loans, and provides for making them good out of future rents, is equally decisive. If there is a plain intent in any clause of the will, it is here—that the charges were to fall exclusively on the income, i. e. the accruing rents and profits, and not on the capital, which was to be preserved unimpaired.

The court cannot set apart such a portion of the estate or capital as in their judgment will yield a sufficient income for the satisfaction of the charges in question, and take the residue of the estate from the hands of the trustees; such a decree, without the consent of all the parties interested, would be a violation of vested rights, and no precedent for the exercise of such a power is to be found. The case of *Carteret* v. *Carteret*, (2 *P. Wms.* 133,) was upon a bill filed by an equitable tenant in in tail against the trustees, to compel a conveyance, so that she might be enabled to bar the entail by suffering a recovery. Lord Chancellor Macclesfield admitted her general title to relief; but it appearing that some annuities had been charged on the estate, he directed an inquiry to ascertain whether any of them were still subsisting, expressing in strong terms his opinion that, if such should prove to be the fact, he could not, without the consent of the annuitants, force the estate out of the hands of the trustees. In the present case no consent could be given; for all the parties interested in the trust are not before the court, and some of them probably not in being. The case of *Vail* v. *Vail*, (4 *Paige*, 328,) is also a direct authority to show that the estate of the trustees is not to be diminished or apportioned because the rents and profits may or will exceed the charges. If there is a surplus, there is a resulting trust, for the persons by law entitled.

The testator has directed that all his debts amounting to a very large sum, the $50,000 to be invested in real estate for the benefit of the children of Augustus James, and the $40,000 to be invested in like manner and conveyed to Lydia James and Anna M'Bride James, shall be paid by his trustees out of the rents and profits. By this direction the sums in question are charged upon the lands, and the devise is valid, as an express trust, to lease lands for the purpose of satisfying

1835.

Hawley
v.
James.

any charge thereon. The words of the statute, for the reasons already given, are to be understood in their broadest sense, and therefore include charges imposed by the party creating the trust, as well as those previously subsisting. For the same reason, a charge upon the annual rents and profits should be considered a charge upon the lands. It is such in effect, for the lands, although not liable to be sold, are the ultimate security for the payment. That the land is the ultimate security is evident : should the title fail or the estate sink in value, the security is gone or diminished ; should the trustees violate their trust, the court would give the possession to a receiver, to secure the interest of the cestuis que trust. That such is the true construction, is necessarily implied in the terms of the statute. Were a trust created in the very words of the law, to satisfy a charge by leasing, it is only from the yearly rents and profits, as already proved, that it could be satisfied. It is no objection to this construction, that the testator has declared that the sums to be raised shall not be a charge on his real estate, since it has already appeared that he used these words for a special purpose, in a particular and limited sense. There is therefore no contradiction in saying that the sums in question are a charge on the lands, under the statute, and yet not a charge on the real estate, under the will.

The objection that a trust for the payment of debts out of rents and profits cannot now be created, because the only trust for the benefit of creditors authorized by the revised statutes is to sell lands, is unfounded. It is true that the only authorized trust of which creditors are the direct and primary object, is a trust to sell lands : and for this plain reason, that the legislature did not intend that by the creation of a trust the rights or remedies of creditors should be changed or affected. But this provision should not be construed as taking away the right of a testator, as it existed previous to the revised statutes, of charging his debts upon his lands generally, or upon the accruing rents and profits ; for, by such a charge, the rights and remedies of the creditors never were or could be impaired. Whether the debts are charged on the lands generally in exoneration of the personalty, or upon the rents and profits in exoneration of the estate itself, or capital, the creditors are not

in either case the persons for whose benefit the charge is imposed; but, in the first instance, the legatees or next of kin; and in the last, the persons in whom the estate or capital is ultimately intended to vest. The present trust is not therefore for the benefit of creditors; nor is the fact that by its creation the rights of the creditors are not varied, any more an objection to its validity than it would be were the revised statutes not in force. Whether a testator, by incurring debts in his lifetime, payable at a future period, and providing by his will for their extinction out of the income of his estate in the hands of trustees, may not secure to the objects of his bounty all the benefits of accumulation, is a question which it is deemed unnecessary to consider. It is sufficient to say this is not prohibited; and if any evils are likely to arise from this source, a new law is necessary for their suppression. It is not believed that the court, with the view of reaching a supposed mischief, will or can pervert the terms of the existing law from the only meaning which they have ever received, or of which they are in truth susceptible, so as to decree that rents and profits are accumulated which are in fact expended. In other words, that accumulation and consumption, in a particular case, have the same meaning.

The provision for the children of Augustus James in the 36th section of the will, embraces all who shall be living when the fund shall be invested and appointed; but the children now living have a vested interest, liable to be opened for the admission of those hereafter born, and to be divested by an execution of the power of appointment, excluding them. This construction does not affect the validity of the charge; it only renders it necessary that an appointment to unborn children should be in fee.

It is submitted that the fair and reasonable interpretation of the 36th section of the will requires that the real property to be set off and conveyed to Anna M'Bride James and Lydia James, shall be purchased in the same manner with that intended for the children of Augustus, out of future rents and profits. In both cases the devise is of a fund to be invested, not of a portion of the real estate of a testator as it existed at his death.

The testator directs his trustees to provide, out of the rents and profits, for the education and support of his descendants; the direction as to some of whom is immediate, as to others future and contingent. The contingent direction in section 30 of the will embraces widows; but as this circumstance does not vary the argument, and requires no especial consideration, it has been deemed unnecessary to notice it particularly. The 17th section of the will may fairly be construed as imposing a general duty on the trustees, of providing from the income of the trust fund for the education or support of any of the testator's descendants, whose situation or circumstance, at any time during the trust, may render such provision necessary. If the general terms of this section are held to be limited by the subsequent provisions of the will, it still remains certain that the testator's children who were minors at his death, are entitled to education and support during their minority. The general intent of the testator, that they should be thus educated and supported is manifest, and ought not to be defeated by the failure of the particular means which he had appointed, and on which he relied. This intent is manifest, from the annuity given to the widow for the benefit of herself and children; and from the direction to the trustees, to provide for them, in the event of the death of the widow. He makes no provision for their support during her life, because he relied on the annuity; but that he meant they should be educated and supported out of his estate, during her life, as well as after her death, the annuity itself renders certain. As to the intentions of the testator in the 29th section of the will, no doubt can be stated; and under that section, the children of every son or daughter of the testator, dying during the trust term, will be entitled to education and support. Whether a trust for the application of rents and profits to the support and education of minors, be valid as an express trust of the third statutory class, is deemed a question too plain for argument. It is emphatically a case for which the legislature intended to provide. (See note of revisers on the section, as originally proposed, *Rev. Rep. p.* 42, *sec.* 56, *note.*)

If the court has in any case the power (which is denied) of apportioning a devise to trustees, so as to confine their estate

1835.

Hawley
v.
James.

to such lands as may be deemed sufficient for the purposes of the trust, there are reasons existing in this case that would render the exercise of such a power peculiarly improper. This point is intended to meet the suggestion that the court may reduce the estate of the trustees to so much of the lands or capital as may be sufficient to answer the immediate trusts of the will; overlooking altogether the future trusts, or giving to the trustees a new estate as the future trusts arise. The contingency of the death, during the trust term, of one or more of the sons or daughters, leaving children, is highly probable; and with respect to three of the children, William, Augustus, and Mrs. Barker, such an event is already possible. When such a contingency will happen, it is impossible to foresee or predict. Will the court take the lands from the trustees to-day, at the hazard of being compelled to-morrow to restore them? Must the trustees institute new proceedings in law or equity for the recovery? During the litigation, are the children, entitled, to be left uneducated and unsupported? Is there any rule or principle that can guide the court in making an apportionment? If the lands assigned to the trustees sink in value so as to be insufficient for the purposes intended, can it be said how the deficiency is to be supplied?—whether the heirs to whom the lands excluded from the devise may have passed shall all contribute, or whether the trustees may recover from one or more of such heirs, at their election? In view of these and other numerous difficulties, there is no hazard in affirming that in this case the due execution of the trusts, including the future trusts, imperatively requires that the possession of the lands should remain in the trustees. Perhaps the least exceptionable and safest construction of the statute, in all cases, is to hold that the devise to the trustees passes all the lands which it embraces, where the trust is authorized by the statute, with a resulting trust as to the whole or any portion of the income not immediately applicable under the will. There seems but one necessary exception : where there is a manifest intent to evade the law by making the trusts depend on a very improbable contingency, or by authorizing a sum to be raised merely nominal, as compared with the whole income. In such a case, the devise should be adjudged wholly void.

Whether the will does or does not contain a direction for accumulation, and whether such direction is valid or otherwise, are questions wholly unconnected with the validity of the trusts that have been hitherto considered. These trusts are distinct and substantive, chargable not on an accumulated fund, but on the income of the estate as it existed at the testator's death; and accumulation, so far from being a condition precedent to their fulfilment, cannot even commence until they are satisfied. The only direction for accumulation is that which is contained in the 27th section of the will, where the testator empowers his trustees to invest so much of the proceeds of all sales, and of all other moneys which shall come to their hands, as may not be wanted to enable them to fulfil the other purposes of the trust, and to pay legacies and debts, in the purchase of real estate, or loans, annuities, or any other safe and proper manner. If the words " other monies which shall come to their hands" are held to include the annual rents and profits, (and it is not meant to be denied that such is the reasonable construction,) this is a direction to accumulate, but it is a direction confined in terms to the surplus income, after all the charges created by the will on the rents and profits shall have been satisfied. The direction is not, therefore, present and absolute, but future and contingent. It is future, because the trustees have no right to invest for accumulation at all, until the debts, legacies, and other certain and immediate charges shall have been paid; and because the testator must have known that these charges would exhaust the income for some years after his death. It is contingent, because the period of its actual commencement must depend on the exercise by the trustees of their discretionary power of making advances; and because the estate of the trustees may be determined by contingent events, viz. the death of the minor children and grand-children, before any surplus income shall have been received. It appears, by the master's report on the original bill, that the testator's debts exceeded one hundred thousand dollars; and if to this be added the legacies and annuities immediately payable, it will appear that the charges (exclusive of contingent advances) will be sufficient to exhaust the income for nearly three years after the testa-

for's death. The nett income is stated in the answer of the trustees to the cross bill, at $47,805,72. It may be said, that ten thousand dollars are now deducted for the widow's dower, and that this was not anticipated by the testator. This is true; but if the widow had not elected to take her dower, she would have been entitled to the annuity of $3000; and the annual difference of $7000 will not greatly vary the result. The income of more than two years will still be absorbed by the charges. The argument, therefore, remains good, that the direction is not merely future, in the events that have occurred, but was according to the intention of the testator. He did not mean that accumulation should commence at his death; when we add that the testator, in all probability, expected that an advance to his son Augustus would also be made within a short perior after his death, the conclusion as to his actual intent seems irresistible. As to the contingency of the direction, it appears from the statement delivered to the court, that if the trustees should exercise their discretionary power of making advances, in its full extent, (not including, however, advances that may be rendered necessary by the death of sons or daughters leaving issue,) the period of accumulation may be postponed for eight or ten years; and within that time it is possible, though not probable, that the estate of the trustees may cease. It would be determined by the death within ten years of the five youngest children and grand-children; for all others born at the testator's death, if then living, would have attained their age.

The direction, as for a future accumulation, falls under the second subdivision of section 37, in the article "Of the Creation and Division of Estates;" and it is upon the true construction of that subdivision that its validity depends. Under that subdivision, an accumulation may be made for the benefit of minors unborn at the testator's death, provided it commence during their minority, and within the period allowed by law for the suspense of absolute ownership. It is not necessary that accumulation, whether present or future, should be directed in terms for the benefit of minors, but the words and the intent of the law will both be satisfied, if the accumu-

lation is in fact made for their benefit. If these positions are correct, it seems a necessary consequence that the question whether the trust of accumulation under the present will is valid, cannot with propriety be now considered or determined. It is not certain that all the persons whose rights are to be affected by the decision are now before the court; but in all probability the greater number are not even in esse. The court can have no knowledge of the facts on which the validity of this trust exclusively depends; namely, the facts as they will exist when the accumulation shall commence. It may possibly happen, that when the accumulation commences, all the persons for whose benefit it is made will be minors, and perhaps with a single exception minors absolutely entitled, and then the objections now chiefly relied on would no longer be applicable. And as the estate of the trustees may cease before the accumulation can commence, a decision now pronounced, so far as the interests of the parties are concerned, may be wholly useless.

If the direction or authority to accumulate, is to be considered as commencing at the death of the testator, so that its validity must be determined in reference to the characters and interests of the parties now before the court, it is submitted that it is not wholly and absolutely void, but is capable of being partially supported within the limits allowed by the statute. In this view of the case, the argument in behalf of Augustus James will be confined to the eight and a half shares, which, under the 37th section of the will, are to be allowed and conveyed to him and others, at the expiration of the trust. For the purposes of this argument, (but with no intention of committing the trustees,) it is also admitted, that an accumulation can only be made for the benefit of minors, and must cease with their respective minorities; and that consequently, the direction as to the share of Augustus is wholly void—and that, as to each of the remaining seven and a half shares, the accumulation must cease, as the parties respectively entitled attain their age. It is denied, however, that the direction is entire and inseparable, so that its invalidity as to Augustus will render it wholly void; but, on the contrary, as the rights of the parties in the shares to be

1853.

Hawley
v.
James.

allotted at the expiration of the trust are several and distinct, they are equally so in the rents and profits to be received during the interval, and which, if added to the capital, would form a portion of the shares as distributed. As there can be no accumulation on the share of Augustus, he will be entitled to one twelfth of the surplus income, whenever a surplus shall arise—either as having a vested legal estate or interest in that proportion of the whole estate or capital, or as the person presumptively entitled, in the same proportion, to the next eventual estate.

The direction to the trustees to allot and convey the eight and a half shares of the twelve into which the estate is to be divided to the persons named, is equivalent to an express devise; since both the persons who are to take and their proportional shares are fixed by the will of the testator, and do not depend on the mere discretion of the trustees. The power, therefore, which is given to the trustees is not a power of appointment, upon the execution of which the estates may depend, but a power of division or partition merely; and it is so considered and described by the testator himself. Even were it admitted that at common law the legal estate would remain in the trustees until conveyed, the persons entitled to the eight and a half shares would still have the whole equitable interest as tenants in common, upon the completion of the other trusts of the will, and this equitable would be converted into a legal estate, by force of the statutory provisions—sections 47, of the article "Of Uses and Trusts." Unless this construction be adopted, the legal estate, at the expiration of the trust term, would descend to the heirs at law who, as such, would be entitled to the possession, and the rents and profits, until the final partition, which would be contrary to the plain intention of the testator. The devise is plainly embraced by the terms of section 61, in the article "Of Uses and Trusts;" for, as to the eight and a half shares, the persons entitled are those to whom it is declared the lands shall belong on the termination of the trust; and the shares are in effect devised to them, subject to the execution of the trust. The remainders in these shares are vested, because neither the persons to whom, nor the event upon which, they are limited to take effect remain

uncertain; but they are limited to persons in being, who, upon the ceasing of the precedent estate, the trust term, would have an immediate right to the possession. (1 *R. S.* 723, § 13.) The definitions of vested and contingent future estates, in this section, are believed to be entirely accurate, and as such have been adopted and approved by Chancellor Kent. (4 *Kent's Comm.* 1 *ed.* 194, 199.) A remainder is always vested where there is a person in being having a present right to the future possession, and where the event of the termination of the precedent estate is certain, and is alone necessary to give effect to the remainder in possession. It is this which distinguishes the case of the devisees of the eight and a half shares from that of J. King and of William and Henry James, who, under some circumstances, may possibly be entitled at the expiration of the trust term. Augustus and the other devisees, if living, will be entitled, whenever, and from whatever cause, the trust term shall cease. This event is certain to happen, and is alone necessary to vest their title in possession. Their rights are therefore present and fixed; but the rights of Mr. King and of William and Henry depend upon contingent events, which may or may not be connected with the expiration of the trust, and which may not happen during the term, or indeed at all. That of Mr. King depends upon the death of his daughter during his life, and during the term, without issue; and those of William and Henry upon the death, in like manner, of a brother or sister. Their interests are therefore contingent, for the events upon which they depend remain uncertain. (4 *Kent's Comm.* 1 *ed.* 194. *Fearne on Con. Rem.* 6 *ed.* 217.) The remainders are not contingent, because it is uncertain when the trust term will cease, or whether the devisees will survive the term. If this objection were allowed, there could be no vested remainder on a life estate, for in every such limitation the same uncertainties are involved. No principle of law is better established than that the mere uncertainty of a remainder's taking effect in possession, is not sufficient to render it contingent; yet the distinction, as Mr. Fearne remarks, is not always attended to; and there are even cases to be found in the books in which it has been wholly overlooked. On this subject the lucid and con-

1835.

Hawley
v.
James.

elusive observations of Mr. Fearne supersede the necessity of any further reference. (*Fearne on Con. Rem.*, *Buller's ed.* 215, 216.)

Were the power of the trustees to allot and convey the eight and a half shares to be construed as a power of appointment, and did it even involve the discretion of apportioning to such of the persons named, and in such shares as the trustees might think fit, still, as the law is now settled, the remainders would be vested in the devisees, as objects of the power, though liable as to each to be divested by its actual execution. This doctrine was first established by Lord Hardwicke, in the case of *Cunningham* v. *Moody*, (1 *Ves. sen.* 174.) By marriage articles, a sum of money agreed to be laid out in land was limited to the use of the husband for life, remainder to the wife for life, remainder to their children for *such estates and in such proportions* as the husband and wife or the survivor of them should appoint, and in default of appointment, to the children equally, and if but one, to such one, with a remainder in fee to the husband. Lord Hardwicke, upon full consideration, and overruling a former decision of his own, in *Walpole* v. *Lord Conway*, (*Barna. Ch. Rep.* 153,) held that all the remainders were vested, though subject to be divested in whole or in part by an appointment under the power. That such is the true construction in all cases where there are persons *in esse*, who are the objects of a discretionary power of appointment, has since been most solemnly declared by the court of king's bench, in the case of *Doe* v. *Martin*, (4 *T. R.* 39, 70,) which was argued at three successive terms by the most eminent counsel then at the bar. In that case, by a marriage settlement, lands were conveyed to trustees, to the use of the wife for life, remainder to the husband for life, remainder to such of the children and in such shares or proportions as the husband and wife jointly or the survivor should appoint, and in default of such appointment, to the children equally in fee. The principal question in the cause, as stated by Lord Kenyon, was whether the remainders to the children were vested or contingent; for if contingent, it was admitted that they had been destroyed by the destruction of the particular estate, the life estate of the parents, on which they depended. The

judges delivered their opinions *seriatim*, Ashurst, Buller, Grose, all concurring in the decision of Lord Kenyon, that the remainders to the children were vested, subject nevertheless to be divested by the parents executing the power of appointment; and no appointment having been made, the lessors of the plaintiff were held to be entitled. (*See also Bradish* v. *Bradish*, 2 *Ball & Beat.* 479.)

There is no weight in the objection, that each devisee may forfeit his share by his own misconduct, if such forfeiture shall be declared by the trustees; for this proves, not that the remainders are not vested, but that they are liable on a contingency to be divested. It is familiar law, that a remainder may be vested, though liable to be defeated by a limitation over, or indeed by any other contingency; and from the cases cited under the last point, it has appeared that the rule applies even when the estates of the persons entitled in remainder are intended in the first instance to arise under a power. There is another class of cases which illustrates, perhaps still more strikingly, the extent and application of the rule. I refer to the cases in which a second remainder is limited to a person in being, on a prior contingent remainder, and in which it is held that, until the contingency happen on which the prior remainder depends, the ultimate remainder is vested. Thus, to select a case which may happen even under the restrictions introduced by the revised statutes, an estate is devised to A. for life, remainder to his children in fee; in case of his death without children, to B. for life, with a similar remainder to his children. Here, whilst A. and B. both remain without children, the remainder for life is vested in B., and the reversion in fee is either in abeyance, or descends to the heirs of the testator. If B. has then a son, the remainder in fee is vested in him; and if a child is then born to A., the remainders before vested become at once contingent, and in the event of such child, or any other subsequently born, surviving A., are wholly defeated. (2 *Cruise's Dig.* 249, *tit. Rem. ch.* 1, § 39, 40, 41, 42.)

It is now established, that the person to whom the first remainder is limited on the expiration of a trust for the payment of debts and legacies, has a present vested interest sub-

ject to the trust; and if the trusts fail, has an immediate right to the rents and profits, to the extent of such failure. The leading case is that of *Carter* v. *Barnardiston*, (1 *P. Wms.* 505,) where the testator devised his estate to his executors for the payment of debts, and after such payment, to his uncle Evers Armins for life, with various limitations over; and in which case it was finally decided by the house of lords, that the executors had only a chattel interest, and that the freehold was vested in Evers Armins. (1 *P. Wms.* 509. *Hutchins* v. *Hutchins*, 2 *Ver.* 404.) And the same rule has since been extended even to cases in which the estate is limited to trustees and their heirs. In the case of *Marshall* v. *Holloway*, (2 *Swanst. Rep.* 460,) the testator devised all his estate, real and personal, to trustees and their heirs, in trust to pay debts and legacies, and after such payment, upon trust to accumulate the rents and profits and income, from time to time, so often as any of the persons beneficially entitled under the trusts afterwards declared should be under the age of twenty-one, and upon the further trust for the eldest son then living, of his daughter Catharine, then a minor of the age of five years, for life, with various limitations over for life and in tail; and from the argument of Mr. Preston in reply, it appears that the limitation to the grandson was in terms, "from and after the performance of the trust," and therefore a plain remainder. It was decided by Lord Eldon that the trust for accumulation was void, as too remote; and that the eldest grandson, the first tenant for life, and not the heirs at law, or next of kin, was entitled to the surplus rents and income. So also in *Lord Southampton* v. *Marquis of Hertford*, (2 *Vesey & Beame*, 54,) where the trust of accumulation was also declared void, the rents and profits, after the payment of charges and encumbrances, were decreed to the first tenant in tail. In *Bacon* v. *Proctor*, (*Turn. & Russ. Rep.* 40,) where the trust for accumulation was supported, the general rule is not merely recognized by Baron Graham, but it is stated in the broadest terms, as embracing every case of a future limitation on a similar trust. Upon a comparison of these with other cases in the English books, on trusts of accumulation, it will clearly appear, that where the trust is invalid, the rents and profits nev-

or belong to the heirs at law, except where there is no person in being to whom an estate is limited, either subject to the trusts, and upon their termination ; or unless such limitation be contingent, that is, depend upon some other event than the mere termination of the trust term.

If there is, in this case, a suspense of ownership during the trust term, and the trust of accumulation on the share of Augustus is invalid, and if the remainder to him is not vested, then one twelfth of the surplus rents and profits must be decreed to him, as the person presumptively entitled, in that proportion, to the next eventual estate. This depends on the construction to be given to section forty, of the article " Of the Creation and Division of Estates," as to the meaning of which it was not supposed, until this argument, that a doubt could be raised. The object of this section was to extend the rule of the common law, in relation to vested estates, to all future limitations, so as to entitle the next remainder-man, then living, to the rents and profits, in all cases where, during the suspension of the power of alienation, they were undisposed of, or the direction for their accumulation was void ; and for this reason, that such a disposition was believed to be more agreeable to the actual intentions of a testator, than to permit them to pass to the heirs at law. The note of the revisers on the section, and the passage there quoted from the work of Mr. Humphreys, renders it very evident that this is the true explanation ; and, as the law now stands, it is believed that the rents and profits, or income, where the trust for accumulation is void, in no case belongs to the heirs, or next of kin, unless there is no person in being to whom the next remainder is limited, or the limitation is invalid. (Rep. of Rev. 29, § 41, note.) By persons presumptively entitled, are meant persons having a probable, though not vested interest—those whom the law presumes will take, should no event occur to prevent their rights from vesting ; and by "next eventual estate," is meant the next which, in the events contemplated or provided for by the grantor or testator, may take effect. Were it possible, by any train of legal reasoning, to arrive at the conclusion that the remainder to Augustus is not vested, it is not perceived on what grounds it can be denied that the law

presumes that he will outlive the term, and presumes that he will not by mal-conduct forfeit his share. In brief, all future limitations, whether dependant on the execution of a power, or created in terms by the grantor or testator, are vested or contingent; if vested, the rule of the common law applies; if contingent, the statutory. Unless, therefore, it can be shown that the limitation to Augustus is neither—in other words, that it is wholly void—he must be entitled to his proportional share of the rents and profits, whenever a surplus shall arise.

As to the remaining seven and a half shares, it is submitted that the accumulation of the rents and profits of each may be supported during the minority of the person entitled, notwithstanding it may be held that such person can take only a life interest in the accumulated fund, or by his death during the term, or the forfeiture of his share, may be prevented from taking at all. The fair and reasonable construction of the statute is, that an accumulation may be directed in every case, where, if not directed, it would be ordered by the chancellor, or the law would impose it as a duty on trustees or guardians during a minority. The statute certainly does not limit the discretion of the chancellor, or of trustees or guardians, in respect to accumulation, but leaves that discretion to be exercised in the same cases, and subject to the same rules, as if the law had never passed. It would be absurd to prohibit a party from directing an act to be done, which the law itself, in the absence of a direction, would authorize or sanction; and such an intention ought not to be imputed to the legislature, if the terms employed are susceptible of a different construction. Suppose a devise of lands to trustees, in trust, to apply the rents and profits to the education and support of A. during his minority, and, upon his attaining his age, to convey and assign to him the lands, and all the rents and profits received and not expended during his minority, for and during the term of his life, with a contingent limitation to B., in the event of the death of A., during his minority, of the lands and of the unexpended rents, &c. then in the hands of the trustees. Here is no direction to accumulate, or even to invest the surplus rents and

1835.

Hawley
v.
James.

profits beyond the sums required for the education and support of the minor; yet, can it be doubted that such would be the duty of the trustees? or, upon application, the order of the chancellor? In the case supposed, it is submitted, the limitations would all be valid; for where there is no perpetuity, the same estates or interests may be created in the rents and profits, as in the lands themselves; so that a life interest may be given in rents and profits, accruing during a valid suspension of the power of alienation, to any person in being at the death of a testator. If a pecuniary legacy, given to a person for life with remainders over, vested or contingent, were charged upon the rents and profits of land, and a trust created for its payment, by leasing, probably no court would doubt its validity; yet, what is this but a disposition for life of the rents and profits, to the extent of the charge? It is obvious, that if the first taker in such a case were a minor, and the interest of the legacy more than sufficient for his support, it would be the duty of his trustees or guardians to accumulate. It is true that the words of the law require that the accumulation shall be for the benefit of minors; but the words are satisfied, if a minor be the direct and primary object of the accumulation. It does not cease to be for his benefit because others will be entitled when his interest terminates, or because, by his death under age, the accumulated fund will pass, not to his representatives, but to persons designated by the testator. It is enough, if the effect of the accumulation will be to augment the estate, which it is intended the minor shall receive on attaining his age. Nor do there seem to be any reasons of general policy that demand the construction, that the interest of the minor shall be absolute and indefeasible. The main object of the legislature was to reduce the term of accumulation; and if this does not exceed an actual minority, the policy of the statute is not violated.

If the surplus rents and profits shall not be invested in the purchase of lands, the devisees will be entitled to them absolutely; for the direction that they shall take only for life is confined in terms to the real estate. The discretion given to the trustees, as to the mode of investment, should therefore

be so exercised as that the surplus income may retain the character of personalty, until the termination of the trust, if that is necessary to render its accumulation valid. The general rule, that money directed to be laid out in lands is considered in equity as real estate, is undoubted; and we have already seen that the rule has been adhered to, even where a discretionary power as to the mode of investment was given to the trustees. (*Cowley* v. *Hartstonge*, 1 *Dow. P. C.* 361.) But, in that case, the very ground of the decision was, that the discretion of the trustees was not absolute, but temporary, and that the testator intended that, in all events, the money should finally be laid out in lands, as was evident from the fact that the whole property, real and personal, was limited in the same manner; and that the limitations were such as could only be applied to the fund as land, and not as money. That case would have been analogous to the present, if Mr. James had directed that the whole share of each devisee should be conveyed to him for life, and in the event of his death, before the final division of the estate, should go to his heirs at law; but the terms of the will are directly the reverse; for not only is the conveyance for life confined to the real estate, but the will expressly declares, that in the event of the death of any devisee during the trust term, so much of his share as consists of personal estate shall go to his next of kin, and so much as is real to his heirs at law. It is therefore certain that the intention of the testator was, that all monies received by his trustees, and not actually invested by them in lands during the continuance of the trust, should, at its termination, be considered as personal estate. Under these circumstances, it seems impossible that the court should now determine that the trust for accumulation is void, on the ground that the devisees are to take only a partial or qualified interest, since, whether they are to take for life, or absolutely, cannot now be known, but must depend on the character of the fund at the termination of the trust, or more properly when the accumulation as to each share shall cease. Can the court say that shall be real estate which the testator has said may be personal? that the trustees shall invest in the purchase of lands, when the testator has said they may

1835.

Hawley .
v.
James.

do otherwise ?   On the contrary, *ut res magis valeat quam pe-reat*, is it not more proper to say that the trustees ought so to exercise their discretion as to support, instead of defeating the trusts of the will ?   But if it should be decreed that the direction to accumulate is void, even in respect to the seven and a half shares, the respective devisees will still be entitled to their proportionate shares of the surplus income, as presumptively entitled to the next eventual estate, for the reasons that have already been assigned in support of the rights of Augustus James.

As to the surplus income of the three and a half shares, it must be distributed among the heirs at law and next of kin, unless the court shall be able to decide that there are persons in being presumptively entitled to the next eventual estate in these shares also.   Whether there are any persons so presumptively entitled, must depend on the construction that shall be given to the 41st section of the will; the questions arising under which, the counsel of Augustus James is instructed to submit, without argument to the decision of the court.   The counsel is also instructed to express the wishes and consent of his client, that this clause may be so construed as to embrace all the descendants of the testator, so as to enable the trustees, as far as possible, and as the circumstances then existing may warrant, to place each branch of the family on an equality, in the final division of the estate.   It must be confessed that the actual intentions of the testator are more doubtful in the 41st section, than in any other part, of the will.   The words, " those herein designated as in any event entitled to share in the ultimate disposition of my estate," are not only susceptible of various interpretations, but each interpretation is attended with its own peculiar difficulties.   The trustees have a discretionary power of appointment as to the three and a half shares, and the additions made by forfeiture ; but it seems very difficult to say at present who are the objects of the power.   If an appointment can only be made to or among those who shall, in fact, share in the ultimate division of the rest of the estate, then, until a division, the persons who, even as a class, are the objects of the power, remain uncertain ; and of this construction, it is

perhaps a necessary consequence, that it cannot be said that there are any persons now before the court who are even presumptively entitled.

The devise to the trustees does not violate any rule of law, in respect to the quality or duration of estates.

Under this head, I propose to show, 1. The character and duration of the estate of the trustees; 2. That it is not void for uncertainty; 3. That it is not void as tending to a perpetuity; 4. That, at any rate, it is not wholly void, but is capable of being executed within the limits allowed by law.

The estate of the trustees is defined in the 17th section of the will, in which the testator declares, that the trust shall continue until the youngest of his children and grand-children living at the date of his will, and attaining the age of twenty-one years, shall have attained that age. Adopting, for the present, the construction of the opposing counsel, that the testator intended the estate of the trustees should last, not merely until the youngest of all, or the youngest of each class of his descendants, should attain his age, but during the minority of all, so long as any of those continuing to live should be under age; this estate, according to all the authorities, is an estate for years; and the probable construction is, that it is not for a term certain, but is determinable on lives. It cannot last beyond twenty years, the minority of the youngest grand-child, and by the death of one or more of the children or grand-children, may cease at any time within that period. This is stated as the probable construction; yet it must be confessed, if the English cases are to be followed, it is not the construction which the court can adopt. There is no question as to the general rule, that an estate for years, depending on a minority, is determined by the death of the minor within his age, although not in terms dependant on his life. (*Bishop of Bath's case*, 6 *Coke's R.* 35; 3 *Idem*, 20; *Plowd. Rep.* 273.) But this rule, as the law in England is well settled, does not embrace a devise to trustees or executors, for the payment of debts and legacies; or even, according to the later cases, such a devise for any purpose whatever. The leading case is that of *Boraston*, (3 *Coke*, 19,) where the testator devised certain lands to his executors until his grandson, Hugh Boraston,

should accomplish his full age of twenty-one years; directing them to employ the mesne profits towards the performance of his will; and when his grandson, H. B., should come to his full age, then the estate was to go to him in fee. The counsel for the plaintiffs insisted that the estate of the executors ceased on the death of Hugh Boraston, (who died at an early age,) and that the devise to him was conditional, not being intended to vest unless he should attain his full age; and consequently, the devise to him having failed by his death, that the general heirs of the testator were entitled. But the court (adopting the reasoning of the defendants' counsel, of whom Lord Coke was one,) held, *first*, that the executors had a good term for twelve years, (the possible minority of Hugh Boraston,) which was not determined by his death, and that this was necessary to effect the intentions of the testator, since otherwise the will might be unperformed, and the debts and other trusts remain unsatisfied; and *secondly*, that the fee vested in the grandson at the death of the testator, so that his heirs, and not those of the ancestor, were entitled; for that the adverbs, when and then, merely indicated the time when the remainder was to take effect in possession, not when it should vest in interest. In the case of *Taylor* v. *Biddall*, (2 *Mod.* 289,) the devise was to the testator's sister (who was also executrix) for so long a time, and until her son B. should attain his age of twenty-one years, then to him in fee; with other limitations over in case of his death. The same questions, substantially, were made as in *Boraston's case;* and in giving the opinion of the court, the chief justice (North) said, "a devise to A. till he be of age, then to B. and his heirs, is an estate for years in A., with a remainder in fee to B.; and if such a devise be made to A., who is also made an executor, it shall be for a certain term of years, viz. for so long as, according to computation, he might have attained that age, had he lived." And in conclusion, it was held that the sister took an estate for years, till her son should or might be of age. These authorities have since been uniformly followed; and I shall only cite, in addition, a recent case, (*Stanley* v. *Stanley*, 16 *Ves.* 491,) which seems to have carried the doctrine to the extent of including every devise to trustees. The

1835.

Hawley
v.
James.

testator devised certain estates to trustees and their heirs up-
on trust, that they should receive the rents and profits until
Thomas Massey, his grand-nephew, should attain his age of
twenty-one years ; and upon further trust, that when he
should attain his age, they should convey and assign to him
the said estates for and during his natural life, with certain
powers to him as tenant for life, with various limitations over ;
among others, a contingent limitation, subjecting the life es-
tate to forfeiture.    And by a subsequent clause in the will, it
was declared that the trustees should invest the rents and prof-
its received by them in the purchase of other lands, which were
to be settled on the same trusts.    One of the questions raised
in the cause, and elaborately discussed by the counsel, was,
whether the remainder to Thomas Massey was vested or con-
tingent—whether it should be so construed as to prevent an
estate ever arising to him, or to determine an estate previous-
ly vested in him ; and on this, the master of the rolls declared
his opinion, that he took a vested remainder for life, after an
estate in the trustees for so many years as his minority might
last.    The perfect analogy between *Stanley* v. *Stanley* and
the present case, on the great question, whether the remain-
ders for life in the eight and a half shares are vested or con-
tingent, will not certainly escape the attention of the court.
On this point, it would puzzle the ingenuity even of a second
Fearne to distinguish them.    Were the revised statutes not
in force, these authorities would doubtless be conclusive on
the question of duration of the estate of the trustees; but at
present there is only one rule which courts are bound to fol-
low in the interpretation of wills, namely, the actual inten-
tion of the testator.    Looking to the terms employed, and
comparing the provisions of the will, the most probable con-
struction seems to be that which has been already stated, that
the testator did not mean that the trust should continue after
all the children and grand-children referred to in the will,
and who might continue to live, should have attained their
full age ; and yet the consideration, that if the estate of the
trustees should be determined within the period to which the
testator computed it would last, some of the most important
trusts of the will, and particularly the contingent trusts for

the support of children and widows, may be defeated, is entitled to great weight.

The estate of the trustees, if dependant on lives, is not an estate for the life of any other person than the devisees; and is not therefore subject to the provisions of the revised statutes in relation to such estates. The 18th and 19th sections of the article " Of the Creation and Division of Estates," refer to estates *per auter vie*, properly so called; that is, estates which, either in terms or by manifest intention, are created to last during the whole lives of the nominees. It is not denied that an estate for years, determinable on lives, may in some cases be properly deemed an estate *per auter vie*, and therefore subject to the provisions of the above sections. It is so where the intent is apparent that it should last during the life of the nominee. Thus, if a term for one hundred years be devised to A., provided B. and C. so long live, it is an estate during their lives; for the law presumes that they will die within the term : but a term for twenty-one years, provided *B*. shall live so long, is not an estate during the life of B., although determined by his death ; for the law presumes that he will outlive the term. In the first case the estate is meant to continue during the lives of B. and C.; in the second, not to last during the life of B., but merely to be defeated by his death. The distinction between long and short terms, as compared with the value of life, and as affecting the validity of limitations over, will fully appear in the progress of the argument.

The objection that the estate of the trustees is void for uncertainty, because it is impossible to foretell when the trust will end, and that it may be impossible for the trustees themselves to tell when it shall have ended, is unfounded. This objection, it is obvious, is wholly inapplicable, if the construction shall be adopted that the estate of the trustees is for a term certain ; namely, the possible minority of the youngest descendant living at the date of the testator's will. The uncertainty of the period when an estate will end, is no objection to its validity ; for this uncertainty exists in every case of an estate for life, or determinable on lives, or upon any other contingency. The uncertainty of the event on which an estate is

limited to cease, rendering it impossible to say when it shall have terminated, it is admitted, would be a fatal objection, especially where the limitation is to trustees. But no such uncertainty exists in the present case ; for what may seem doubtful, on the terms of the will, is rendered certain by a positive rule of law. A term during the minority of a single person, although not expressed to be dependant on his life, the law says, is determined by his death within his age ; for, as his death renders it impossible that the event on which the estate, as created, is limited to cease should ever happen, it must then be determined or last forever. This can only be avoided by holding that the possible continuance of the term, if the minor should live, shall be its actual duration ; but the argument proceeds on the supposition that this construction is not that which the intent of the testator in the present case requires. Where the the limitation is during the minority of two, if the eldest attain his age, the estate must continue during the minority of the second, by the terms of its creation, and must cease on his death within his age, by operation of law, as if originally limited during his minority alone. This rule applies, whatever may be the number of those during whose minorities the estate is to continue ; for if all but one die or attain their age, his arrival at age becomes the event on which the estate, as created, is limited to cease, and his death renders the happening of that event impossible.

The devise to the trustees does not create an undue suspense of the absolute power of alienation of the real and of the absolute ownership of the personal estate. The statute prohibits such suspense, by any limitation or condition whatever, for a longer period than during the continuance of two lives in being at the creation of the estate. (1 *R. S.* 723, § 15.) It is on the meaning and extent of this prohibition, that the questions arising under this head chiefly depend. The words of the statute are, "not more than two lives," &c. ; but the words "not more than" are certainly unnecessary, and obscure the sense.

For the purposes of this argument, it will be admitted ; 1. That the terms "limitation and condition" are to be under-

stood in their most extensive sense, as applicable to immedi-ate as well as future estates; 2. That in all cases the trusts to be performed are an implied limitation of the estate of the trustees, and that in the present case, the clause in the will fixing the duration of their estate is an express limitation; 3. That during the trust term thus limited, the power of alienating the estate or capital will be suspended, not only by force of the statutory provisions, (1 *R. S.* 730, § 63, 65,) but according to the intentions of the testator, and this notwith-standing the powers of sale and exchange vested in the trus-tees; and 4. That where, in order to render the suspense of alienation valid, it is necessary that lives should be assum-ed, the lives must be certain and designated. From these admissions, however, it by no means follows that the power of alienation cannot be suspended, by means of a trust or other-wise, for any period of time, however short, unless the term of suspense be made dependant on one or two certain lives. This is in effect the position of the opposite counsel; and, according to the argument of our learned adversaries, where the trust involves a suspense of ownership, an estate cannot be limited to trustees, even for a single day, unless it be add-ed, "if A, or A and B, should so long live." The article " Of the Creation and Division of Estates" does not profess to contain the whole law on the subjects of which it treats; nor does it, in terms, repeal any existing rules of law in relation to estates in possession or expectancy. It is a necessary con-sequence that all those rules are still in force, except such as are plainly inconsistent with the new provisions of the statute.

By the rules of the common law, the absolute power of alienation may be suspended : 1. For a reasonable or moder-ate term of years, without reference to lives; that is, a term, as will appear hereafter, not exceeding the probable duration of life; or, 2. For a life or any number of lives, in being, and twenty-one years thereafter. These rules are distinct and in-dependent, so that the abrogation of the one by no means re-quires or implies the repeal of the other. Experience had shown that the second rule was subject to great abuse, since, by assuming a great number of lives, it was possible to pro-

tract the suspense of alienation to the utmost term of life, and twenty-one years thereafter—a period far exceeding the limits which, from reasons of public policy, ought to be allowed. The new provisions of the statute were designed to correct this abuse, by altering, or more properly restoring to its original spirit the rule of law under which it had arisen; and this is effected, 1. By reducing the number of lives to two, and 2. By abolishing the twenty-one years as an absolute term, after the expiration of the lives, and confining the additional suspense to an actual minority. The note of the revisers on the sections under consideration is very explicit, and leaves no doubt as to their motives in proposing the change. (*Rep. of Rev. p.* 22.) It is very possible that the rule permitting the suspense of alienation, during a moderate term, was not present to the minds of the revisers; but, judging from the spirit of their remarks, it is very certain that, had the rule occurred to them, they would not have proposed its abolition; although, to guard against the possible inference of its repeal, they might have deemed it prudent to declare the rule, and perhaps to render it more certain, by defining the number of years which the term should not be allowed to exceed. It is not surprising that the rule in question (although its existence is undoubted) should have escaped the recollection of the revisers. The cases are few in which it has been applied, and it is rarely stated by the elementary writers. It is not stated in terms by *Fearne, Cruise, Preston,* or *Sugden;* although there are passages in the writings of each which imply its existence. But the admission that the rule was not at the time in the contemplation of the revisers, does not weaken the argument. If the second rule was alone in their minds, it is that alone which they intended to alter. The statutory rule is therefore confined in its application to the same cases as the rule which it was meant to supersede, namely, to cases in which, to render the suspense of alienation valid, it is necessary that lives should be assumed. Consequently, the rule of the common law, permitting a suspense during a moderate term, without reference to lives, remains unchanged; nor are there any reasons of general policy that should induce the court to include such terms in the statutory prohibition,

A suspense of ownership during such a term is not within the mischiefs of a perpetuity, as understood and defined by the legislature, as its utmost duration falls short of the actual period which the statute authorizes. The doctrine that a trust term must in all cases be limited by the continuance of two certain lives, would lead, there is reason to apprehend, to much practical inconvenience, as by the early and unexpected termination of the selected lives, it might frequently happen that meritorious trusts, such as the party had a right to create and the court would desire to sustain, would be wholly defeated. But even if it be held that the statutory rule in relation to perpetuities is that which is alone in force, its terms, properly understood, do not prohibit the suspense of alienation for a moderate term of years, inasmuch as such a limitation is not for a longer period, in judgment of law, than the continuance of two lives in being.

The result is, that the suspense of alienation and of ownership during the trust term, under the provisions of the present will, is valid : 1. Because it is for a moderate term within the rules of the common law ; 2. Because those rules are not repealed expressly, or by reasonable implication ; and 3. Because the limitation is protected, even by the terms of the statute.

It will now be proper to state somewhat *in extenso* the authorities on which we rely in support of our views on this branch of the case, since the questions which it involves, whether we look to the rights of the parties or the interests of the public, are of high and vital importance. It is not meant to be asserted, that at common law the absolute power of alienation may be suspended by the creation of a term of years, for an indefinite period ; on the contrary, as a general rule, the term must be made dependant on lives in being, or the limitations over will be void. An executory devise, so limited as not to be capable of vesting at all until the expiration of a term, say of five hundred years, or an estate *in futuro*, created by will, not to commence until the lapse of five hundred years from the death of the testator, would be clearly void ; both species of limitations, if valid, would have the effect of suspending, for the whole period, the alienation of the

fee ; and if they were allowed, the whole law in respect to per-petuities would become a dead letter, since by the introduc-tion of a long term it could always be evaded.    The distinc-tion, as already intimated, is between long and short terms, such as exceed and such as fall short of the ordinary and probable limits of life.  If the term be of the first class, it must be made dependant on lives ; or the subsequent estates, if the term is allowed to subsist, must be so limited as that the free-hold shall vest within a life or lives in being, and the lawful period thereafter ; but if the term be of the second class, as it does not involve the mischiefs of a perpetuity, it may be abso-lute, and the subsequent estates may be so limited as not to vest even in interest, until its expiration.

I shall first show that the distinction between long and short terms, as compared with the probable duration of life, is well established ; and I shall next refer to cases in which lim-itations, creating a suspense of ownership during an absolute term, have been adjudged to be valid ; and it is remarkable that some of the decisions were made at that early period of the law, when it was yet doubtful whether the absolute pow-er of alienation could be suspended by means of lives, for more than one or two lives in being, and when the allowance of any term, after the expiration of the lives, was yet unknown. It is indeed a singular fact, that the judges, during the reigns of the Tudors and the Stewarts, anticipating the opinions of a more enlightened age, were more alive to the evils and dan-gers of perpetuities, and more anxious to resist their introduc-tion, than their successors in England have shown themselves to be in modern times.    The fact that a remainder, as an executory devise, may be created in a term of years upon a precedent estate for life in the same term, is of itself conclu-sive to show that, in judgment of law, a term may exceed the value or probable duration of life.    The old rule of the common law was directly the reverse ; for anciently, when terms were usually for a short period, a life was presumed to have a longer continuance than any term, and therefore a de-vise of a term after a life was void.  (*Per Ld. Ch. Parker, in Wind* v. *Jekyl,* 1 *P. Wms.* 574.)  After the introduction of long terms, the rule was very reasonably altered, and the

1835.

Hawley
v.
James,

modern rule is recognized and adopted in the revised statutes. (1 *R. S.* 714, § 24.)

There is a class of cases in which the distinction between long and short terms, as compared with the probable duration of life, is the very ground of the decision. A contingent remainder cannot, at common law, be limited on a term of years, for it is essential to a remainder that the freehold should pass at the time of its creation. It is also a rule that every remainder must vest in possession, either during the continuance of the precedent estates, or *eo instanti*, that it determines; and therefore every remainder which is limited on an event that may not happen, during the continuance or at the termination of the particular estate, is contingent. (2 *Black. Com.* 167. *Fearne on Con. Rem.* 6th ed. 19.) Thus, if an estate be limited to A. for ten years, and after his death to B., as A. may not die within the ten years, and the remainder to B. consequently never take effect, the remainder is contingent, and therefore void; but if the same remainder be created on a long term, exceeding the probable duration of life, it is vested and good; for the law presumes that the first taker will die within the term. It is, therefore, in effect a remainder on the life of A. In the case of *Weale* v. *Lower*, (*Pollexf.* 67,) in which the doctrine of remainders was very much discussed, the distinction is stated by Lord Hale in express terms. He there says, if a feoffment be made to the use of A. for 99 years, if he shall live so long, and after his death to the use of B. in fee, this shall not be contingent, but it shall be presumed that his life (A.'s) will not exceed 99 years; but it would have been otherwise, if it had been but for 21 years : evidently meaning that, in the latter case, the opposite presumption would prevail. The report says that Lord Hale added, that the point had been ruled; and he named the case. (*See* 3 *Coke*, 20 ; *Corbet* v. *Stone, T. Ray.* 144.) In the cases of *Lord Derby*, (*Litt. Rep.* 390,) and *Napper* v. *Saunders*, (*Hutt.* 117,) the question directly arose, and in each a remainder on a long term of years, limited to take effect not at the expiration of the term, but on the death of a person in being, was held to be valid. And to close this discussion, (for no higher authority can be named,) these cases are all cited with approbation

1835.

Hawley
v.
James.

by Fearne, as evidence of the existing law. (*Fearne on Con. Rem.* 6th ed. 21, 22.) The authorities are therefore conclusive to show, that the trust term in the present case is not for a longer period than the continuance of two lives in being, since it even falls within the limits which the law assigns to a single life.

I shall now call the attention of the court to the cases in which limitations creating a suspense of the absolute power of alienation, for a moderate term of years, without reference to lives, have been held to be valid.

As every contingent estate created by will, to commence at a future day, without the intervention of a precedent estate, is an executory devise suspending the alienation of the fee during the interval, cases of this description (of which some will be cited) are as directly applicable to the question under consideration, as future limitations on terms for years. The case of *Gore* v. *Gore*, (2 *P. Wms.* 28,) may be referred to as the leading case; for the argument of the learned reporter, who was counsel in the cause, contains a more full and elaborate discussion of the whole law on the subject of future limitations on terms, than is elsewhere to be found. The testator in this case devised a term for five hundred years to trustees, and after the determination of the term to the first son of his eldest son Thomas, in tail, with various limitations over, and the principal question was whether this devise to the first son, &c. was valid, for as he was unborn at the death of the testator, if good at all, it could only be as an executory devise. The reporter argued against the validity of the limitation, and his main objection was, that it was too remote, as it was not to take effect until after the determination of the term ; (2 *P. Wms.* 37, 38 ;) but in the course of his argument, he repeatedly admits, that if the trust term had been for five, or even for thirty years, the remainder to the unborn son would have been good as an executory devise ; and he refers to several cases in which executory limitations, suspending alienation for a reasonable term of years, had been adjudged to be valid. It was finally decided, after contradictory opinions had been certified by the judges of the king's bench, where it was twice argued, that the remainder to the unborn son was a good executory devise,

because the limitations were so framed, that in any event the freehold must vest, either during life, or on the death of the father, Thomas Gore. In *Scatterwood* v. *Edge*, (1 *Salk.* 229, 12 *Mod.* 278, *S. C.*,) the testator devised an estate to trustees for eleven years, then to the first son of A. in tail, with various limitations over: A. had no son living at the death of the testator, and the great question in the cause was, whether an after-born son could take. The judges all agreed that if the devise to the son of A. had been future, to such son as A. should thereafter have, it would have been clearly good as an executory devise; and the reporter says, it was resolved that an executory devise to rise within a reasonable time is good, and that twenty, nay thirty years has been thought a reasonable time. So also, it is added, is the compass of a life or lives. These latter words plainly show that, in the judgment of the court, the rules were distinct and independent, and that by twenty or thirty years, they meant a term, as in the case before them, unconnected with lives. It was finally held that the devise was void, upon the ground, not that it was too remote, but that it was expressed, *per verba de presenti*, so that no other than a son living at the testator's death could take. It deserves attention, that in one report of this case, (12 *Mod.* 288,) Chief Justice Treby is represented as saying, that the contingency on which an executory devise is limited ought not to exceed one or two lives. The distinction between *verba de presenti* and *de futuro*, as applied to future devises, has since been overruled; but the authority of the case, in other respects, has never been questioned. In *Pay's case*, (*Cro. Eliz.* 878,) the lands were devised to A. for five years, from Michaelmas following the testator's death; and with a limitation over in fee after the term. Both estates, though they would have been void, if created by deed, were held to be good as executory devises. This is one of the earliest cases relative to estates *in futuro*, and is quoted as authority by all the elementary writers. (*See also Hainsworth* v. *Pretty*, *Cro. Eliz.* 833, 919.) In the case of *Cotton* v. *Heath*, (1 *Eq. Cas. Ab.* 191, 1 *Rol. Ab.* 612,) the testator devised a term to his wife for eighteen years, then to his son for life, and then to the eldest issue male of such son. The son had no issue male, at

the death of the testator, but the limitation to such unborn issue was held to be good as an executory devise. On this case it is observable, 1. That the term to the wife for eighteen years was absolute, not depending on her life, or that of any other person ; and 2d. That the executory devise to the unborn issue had the necessary effect of suspending alienation during the precedent estates. In *Bale* v. *Norton*, (*T. Ray. Rep.* 82,) the testator devised certain lands to N. Amherst for 15 years, and with a contingent limitation of the fee to such daughter of N. Amhert, as should marry a Norton, within the term ; one of his daughters married a Norton within the term, and the limitation to her was held to be good as an executory devise. Here also the term was absolute, so that if the father had died within the term, his executors would have been entitled to the residue. It is therefore a plain case of a limitation on an absolute term, rendering the fee inalienable during the whole term, or certainly until the marriage of a daughter, as required by the will. And in *Taylor* v. *Biddall*, (2 *Mod.* 289,) the limitations were to the testator's sister, until her son should attain the age of twenty-one years ; next to the son in fee, and next, in case of the death of the son before twenty-one, to the heirs of the body of C. in fee. In this case it was held that the sister took an absolute term, during the possible minority of the son, and that the limitation to the heirs of the body of C. was a good executory devise. That its necessary effect was to suspend the alienation of the fee during the precedent term is obvious. (*See also* 1 *Eq. Cas. Ab.* 186, *and Bullock* v. *Stones*, 2 *Ves. sen.* 521.) To cite any more cases on this point (and many more are to be found in the early reports) would be an abuse of the patience of the court. Those already quoted render it certain, that the common law sanctions the suspense of alienation ; for a moderate term of years, without reference to lives, and that such has been the rule, from the first introduction of executory devises, and at a time when all restraints on alienation were regarded with peculiar jealousy.

It may at first appear strange, that few, if any cases, having a direct bearing on this question, are to be found in the

1835.

Hawley
v.
James.

modern reports; but on consideration the reason is sufficiently obvious. Terms were used before the rule as to the number of lives that could be taken had been finally settled. Since that period, it has been found that the general object of testators, which is to suspend the alienation of the fee as long as possible, can be far more effectually accomplished by inserting a number of lives, than by the introduction of a term; and thus terms, as fixing the period of suspense, have fallen into disuse, and it is this practical disuse which also explains the general silence of elementary writers. It is a striking proof, however, of the superior accuracy of Blackstone, that the rule, on which we insist, is distinctly recognized by him, in that masterly chapter, which his American rival has so truly and generously and eloquently praised. (4 *Kent's Comm.* 1 *ed.* 200, *note.*) After describing, in that chapter, the two first species of executory devises, an estate *in futuro*, and the limitation of a fee upon a fee, he adds : " but in both these species of executory devises the contingencies ought to be such as may happen within a reasonable time, as within one or more life or lives in being, or within a moderate term of years." (2 *Black. Comm.* 174.)

. It may be objected that the rule, as it is left by the cases, is too vague to be now followed ; that its admission would destroy the certainty which the legislature have sought to establish, and would, in effect, commit the whole subject once more to the arbitrary discretion of judges. But this objection, when considered, has little weight. A reasonable or moderate term of years is susceptible of an easy definition, which is stated in some of the cases, and in all is implied. It is such a term as does not tend to create a perpetuity ; in other words, as does not exceed the usual period, which the law allows for the suspense of alienation, in other cases, and by other means. A moderate term, therefore, since the revised statutes, is such as will certainly not exceed the period which, in a vast majority of cases, will be reached by the use of those limitations which the statute authorizes. The probable duration, or, to speak with more precision, the actual value of a single good life, is such a term. This is capable of being ascertained with scientific certainty ; and it is believed, excluding the

very young and the very old, will be found to be somewhat more than twenty-one years. That this is a shorter period, than will usually be gained by the statutory limitations, cannot be doubted; it is less than will be generally reached by two selected lives, without taking into consideration the added term of minority. To condemn a term, restricted to these limits, as a perpetuity, violating the policy of the statute, would be most unreasonable.

But even should it be held, that the power of alienation cannot be suspended during an absolute term, however brief in its duration, still, a suspense during the minority of persons in being ought to be allowed as within the equity and spirit of the statutory provisions. The statute expressly allows such a suspense during the minority of persons unborn, at a testator's death, after the expiration of two lives; and where its necessary effect is to enlarge the whole period of suspense, by adding the term of minority to the life estates. (1 R. S. 723, § 16.) And it seems a most reasonable inference, that the legislature could never have intended to prohibit a similar suspense, by means of an immediate estate, during the minority of persons in being at its creation; and where it cannot have the effect of enlarging the period of suspense which the statute directly allows. The fair and just construction, therefore, is, that what the statute expressly authorizes as a future estate, it permits, by implication, as a present and immediate estate; for the maxim, *omne majus in se continet minus,* applies as truly to legislative acts as to individual grants. The objection, that upon this construction, there may be two terms of minority, one preceding and one following the life estates, and that the statutory limits will thus be exceeded, by the addition of a term, is unfounded. No life estates can be limited on the first term, except to persons in being. If they survive the term, the effect of the limitation will be precisely the same as if the estate had been originally devised to them, without the intervention of the term; and if they do not survive, the ultimate remainder in fee will take effect immediately on the expiration of the term. (1 R. S. 724, § 21.) And the difficulties that might exist, if two terms of minority were in fact created, cannot with propriety be urged, where there is but one;

for in such case the argument remains, that if this would be valid as a future, it is so, *a fortiori*, as a precedent estate.

Upon the supposition that the estate of the trustees cannot be supported, during the minority of all the descendants, it is certainly valid, during the minority, or until the death, under age, of the youngest descendant living at the testator's death. The statute declares that every future estate, which shall suspend the power of alienation beyond the allowed period, shall be void in its creation; but it does not declare, nor could the legislature have intended, that where a limitation or condition, creating an undue suspense, is annexed to a present estate, the estate itself shall be void. (1 *R. S.* 723, § 14.) In this latter case the limitation, or condition, which violates the statute, is doubtless void, to the extent of such violation; and this is all that the terms, or policy of the law, require to give full effect to the statutory prohibition. Where a limitation is entire, its invalidity may have the effect of destroying the estate; but where it is capable of separation, by rejecting that part which is illegal and retaining that which is sound, the estate may and ought to be preserved. This would be the case on general principles of law, but is emphatically true, since the revised statutes, which have made it the duty of the court, in the construction of every instrument creating or conveying an estate in lands, to carry into effect the intent of the party, so far as it is consistent with the rules of law. (1 *R. S.* 748, § 2.) The effect of the present law is to invest the courts of justice in this state with the same power, in the construction of every instrument in relation to lands, that has long been exercised by courts of equity in England in relation to marriage articles and executory trusts. In other words, the wise and salutary doctrine of a *cy pres* execution is now made the universal rule, although it must be admitted to be a rule, the application of which will require great discretion. Many of the *cy pres* cases relate to perpetuities; that is, they are cases in which, if the terms of the instrument were exactly followed, a perpetuity would be created; but in which, by confining the estate to vest within the proper limits, the intent is carried into effect, so far as it is consistent with law. And in one of the earlier cases, the power thus exercised by the court is expressed nearly in

1835.

Hawley
v.
James.

the very terms that the statute has adopted. (*Humberston* v. *Humberston*, 1 *P. Wm.* 332. *See also Nicholl* v. *Nicholl*, 2 *Wm. Black.* 1159; *Hopkins* v. *Hopkins*, 1 *Atk.* 565; *Robinson* v. *Hardcastle*, 2 *Bro. C. C.* 22, 346.)

The objection, that if the estate is confined to the minority of the youngest grand-child, his death, during the minority, will defeat the ultimate intentions of the testator, by introducing a class of persons different from those whom he intended should take on the termination of the trust, is unfounded. The only possible consequence of the cessation of the term, by such death of the youngest grand-child, would be to exclude some, who, had he lived to attain his age, would be entitled ; but the same consequence—the possible exclusion of some who might otherwise be entitled—would result, were the term, as created by the testator, to cease at any period short of its utmost possible limits. It cannot be said, that those who will take, on the death of the minor, are not the persons intended by the testator; for they are the same persons who would take, were the term, as created by him, to cease, as it is possible it should, at the same period. Were it even true, that a *cy pres* execution of the term will not support the limitations over, it ought still to be decreed, for the benefit of those interested in the trust, during its continuance, legatees, annuitants, widows, and minors. The terms of the will, it may be reasonably argued, admit the construction, that the testator intended that the trust should continue, only during the minority of the youngest of his children and grand-children living at his death. If there is such an ambiguity as to create in the mind of the court a reasonable doubt as to the actual intentions of the testator, that construction ought to be adopted, which may be necessary to support his will, and to secure, as far as possible, to the objects of his bounty, the benefits intended. In concluding this head of the argument, I owe it to my clients and to myself to say, that the points have been framed to meet a possible contingency, and not at all in the belief, that in this case the court can or will find it necessary to resort to a *cy pres* execution, in order to sustain the devise to the trustees, or to enable them to perform any of the trusts of the will.

1835.

Hawley
v.
James.

The power to be exercised by the trustees, either during the continuance of the trust, or at its termination, and not embraced in any class of express trusts, are valid, as powers in trust.

It is objected, that the powers of sale and exchange, vested in the trustees by the 27th section of the will, are void, because they embrace lands to be purchased after the testator's death, and therefore authorize the performance of acts, which the testator could not himself lawfully perform, and because they relate to lands, in which the testator was never capable of aliening any estate or interest. It is perhaps doubtful whether these powers, as expressed, are not confined to lands belonging to the testator at the time of his death ; but if they are as extensive as is supposed, the objection is deemed, immaterial. It is formed on a narrow and mistaken construction of sections 74 and 75, in the article " Of Powers." That construction is erroneous ; 1. Because, in the latter clause of section 74, the words *if living* must of necessity be understood, since otherwise no power could be granted by deed or will, to be exercised after the death of the grantor ; and the authority given by the statute to create a power by devise would be nugatory ; and 2. Because the terms, capable of aliening, in section 75, in their legal and proper signification, embrace alienation by devise. (1 *R. S.* 732, § 74, 75. *Id.* 735, § 106.) These sections being thus interpreted, the difficulty vanishes ; for the right of a testator to devise after purchased lands cannot be doubted, and is not understood to be denied. That a testator, for example, may direct his personal estate, or the rents and profits of his real, accumulated during a minority, to be invested in lands, and may dispose by his will of the lands so purchased, it is presumed no counsel could mean to deny. The reasonable and true construction of the statute is, that a power may be granted by devise, to be exercised in relation to the whole or any portion of the estate bound by the provisions of the will. And even if the powers in question were wholly void, their invalidity could in no manner affect the estate of the trustees, or prevent the execution of the trusts of the will.

1835.

Hawley
v.
James.

It is insisted that the powers of final division and appointment vested in the trustees are void, as contrary to public policy, and as conferring an illegal and dangerous discretion. That a power may be granted, of which several persons are the objects, vesting in the donees an absolute discretion as to the persons to be selected, and the amount of their respective shares, cannot be denied; and it seems extravagant to say that the power is void, where the grantor suggests the reasons that ought to regulate its exercise. (1 *R. S.* 734, § 98, 99.) But the power of declaring a forfeiture, in respect to the eight and a half shares, confers no such discretion as is supposed, as the existence of certain facts will be necessary to justify its exercise; and should the trustees exclude a devisee without cause, it cannot be doubted that equity would correct the abuse.

It is next objected, that the powers of final division and appointment must remain inoperative, and are therefore void, because the persons, to whom the trustees are directed to convey, will be incapable of taking, inasmuch as no person can take any estate or interest by an instrument in execution of a power, which he would not be capable of taking under the instrument by which the power was granted. (1 *R. S.* 737, § 129.) It is admitted, that the best mode of stating the objection is to consider all the future limitations as direct remainders, and such, in respect to the eight and a half shares, it has been already shown, is their true character. If as remainders they would be void, they cannot be valid as estates arising under a power. Thus considered, the objection to their validity is derived from the 20th section in the article "Of the Creation and Division of Estates;" which declares, that every contingent remainder, on a term of years, must vest in interest during the continuance or upon the termination of not more than two lives in being. (1 *R. S.* 724.) It is insisted that all these remainders are contingent, and therefore void, inasmuch as they are not so limited that they must of necessity vest within the period prescribed by law. The objection, it is submitted in reply, is founded on an erroneous construction of the section to which it refers; the object of that section was, 1. To authorize the creation of a contingent

remainder on a term of years, which before the statute could not be done, except by way of executory devise; and 2. To extend to such remainders the rule in respect to perpetuities, which the statute had before declared. The legislature did not intend that there should be two rules in respect to perpetuities; one applying to future limitations on a term for years, the other to the same limitations on a freehold. The object of the revisers, in the alterations which they proposed, as they have themselves declared, was to relieve this branch of the law from its abstruseness and uncertainty, by reducing all expectant estates substantially to the same class, and applying to them the same rules. (*Rep. of Rev. 21, note.*) It is therefore impossible that they, or the legislature which adopted their views, could have meant to perplex the law, by introducing a new and arbitrary distinction, as fanciful and unreasonable as any of those which they sought to abolish. The rule as declared in sections 15 and 20 is the same; and its annunciation, in a particular case, must be conformed to that which is general. A contingent remainder on a term of years is therefore good, if it do not suspend the power of alienation for a longer period than during the continuance of two lives in being. In other words, if it is so limited, that it must vest in interest within that period or at its termination. The section being thus understood, the objection founded on it has already received a full answer; and if the court is satisfied that the trust term does not create a perpetuity, the limitations which are to take effect on its expiration must be valid.

Even if the terms of section 20 are to be literally followed, they do not avoid the future limitations on the eight and a half shares. The remainders for life in these shares, it has already been shown, are vested; they become so on the death of the testator, and must so continue during the whole trust term. Nor does the objection apply to the remainders in fee, if they are to be considered as contingent; for the remainder in each share is so limited, that it must of necessity vest on the death of the tenant for life. There is, indeed, a possibility that the suspense of alienation of each share may exceed two lives in being; but such is always the case, where a testator divides his estate into distinct parts or portions, and cre-

ates separate estates in each. The right of a testator thus to divide his estate, and to suspend the power of alienation as to each part or portion for the period allowed by law, it is submitted, cannot be questioned. If a testator, having three sons, were to devise a farm to each for life, with a remainder in fee, to his issue living at his death, the suspense of alienation as to each farm, as the doctrine seems to be understood by our learned adversaries, might exceed two lives in being, for any one of the sons might outlive the other two; yet it cannot be doubted that the limitations would be valid. Whether an estate be devised in separate portions, or in undivided shares, the rule must be the same.

The last objection that remains to be noticed is, that the power of division and appointment is void, because it directs the conveyance of life estates to persons not in being at the death of the testator. The testator, it is alleged, directs that all conveyances under the power shall be for life, with the exception only of conveyances to *descendants* born after his decease—an exception, leaving the general direction in force as to all persons, other than *descendants*, who may be entitled to take. This objection, it is submitted in reply, is founded in a misconception, both of the law and of the provisions of the will. A power is not void in its creation, because it may be so in its possible execution. The only section or provision in the article " Of Powers," or elsewhere in the revised statutes, that has a bearing on the question, is that already quoted, which declares that no person shall take under a power, who would not be capable of taking under the instrument granting the power; and this plainly relates to the execution of the power, not to its creation. A power therefore of appointment among several persons is not void, unless all are incompetent to take, since otherwise it will be restrained in its execution to such as are competent. This is not only the fair construction of the statute, which now contains the whole law on the subject of powers, but is the settled rule at common law; for although an executory devise or other future limitation is void, if it may exceed the prescribed limits for the suspense of alienation, a power of the same character is not

void, if it may be executed within those limits. (*Routledge* v. *Dorril,* 2 *Ves. jun.* 387. *Biddle* v. *Perkins,* 4 *Sim.* 135.) But if the law was otherwise, the objection is not justified by the terms and operation of the will. Under the provisions of the will, if any descendants of the testator are living, they alone can be entitled to take, with the exception of James King and the widow of Robert James, who were both living at the testator's death; and by comparing the different provisions of the will, it is evident that the testator looked to his descendants alone as the persons entitled to share in the ultimate division of his estate. Consequently, if his descendants should fail, the trusts will cease, and his general heirs, as such, be entitled. And the manifest intent of the testator, that life estates should be conveyed to those only who were competent to take, would control, under all circumstances, the execution of the power.

*J. C. Spencer,* for William James and Henry James, the complainants in the cross bill; for Catharine James, the widow; and for the children of Mrs. Gourlay. The bequest to the children of Mrs. Gourlay is a specific bequest to them as to a class of persons, and is not affected by the refusal of the widow to accept the provisions of the will in her favor, in lieu of dower. These legatees can enforce this bequest as a trust. If Mrs. James had died without making distribution, the court would have divided the legacy between them equally. The testator did not make the acceptance by the widow, of the provisions in her favor, a condition of this bequest. If the testator's intention was that this legacy should at all events be paid, it would not have lapsed by the death of the widow previous to the testator's death.

As to the dower of Mrs. James, the widow of the testator, we insist that she is entitled to dower in the Albany city lottery lots, because Mr. James was in fact so far seized of them that they would descend to his heirs. He held them under the statute authorizing the lottery, and no deed was necessary; because the deed of the corporation to the trustees, when given, operated by relation, so as to vest the legal fee in him at the time of his death. The widow is also entitled to dower in the Sy-

racuse property included in the Safford deed; because the deed to Burnett, as agent, was in effect a deed to his principals; and because a resulting trust was created by the payment of the purchase money, which operated to vest the legal title in the testator. The widow is likewise entitled to dower in the property included in the deed of James and others to M. D. Burnett, because in fact that deed was a mere naked collateral power, which never divested the estate of the grantors, except so far as the power was exercised by actual sales; and it was revoked by the death of Mr. James as to all the lands not then contracted or sold; and because the acknowledgment of Mrs. James barred her claim of dower only so far as the use or purpose for which the acknowledgment was made was executed before the death of William James. In all these cases; under our present statutes, the legal estate vested in Mr. James at his death, with all its incidents of dower, &c.; and Mrs. James has made a sufficient entry to be entitled to dower in these lands.

As to the Albany city lottery lots: The testator, by drawing and paying for the lands drawn, was entitled to a conveyance. (*Laws of* 1820, *p.* 224. *Laws of* 1826, *p.* 207. *Boyd* v. *M'Lean,* 1 *John. Ch. Rep.* 582. 2 *Sugden's Law of Vendors.* 130.) The legal title became vested in him without a conveyance, he having taken possession of the lots; (*Champion* v. *Brown,* 3 *John. Ch. Rep.* 316;) and the estate descended to his heirs at law, or passed to the trustees under the will. (*Bogert* v. *Perry,* 17 *John. Rep.* 351. *Thompson* v. *Brown,* 6 *John. Ch. Rep.* 398.) The subsequent conveyance to the trustees relates back, so as to vest the title in the testator at the time of his death, or at the time of the payment of the consideration. (*Jackson* v. *Raymond,* 1 *John. Cas.* 85, *note. Johnson* v. *Stagg,* 2 *John. Rep.* 510. *Jackson* v. *Ramsay,* 3 *Cowen,* 75. *Coates* v. *Cheever,* 1 *Idem,* 460. *Bankes* v. *Sutton,* 2 *P. Wms.* 706.) The doctrine that a widow is not entitled to dower in an equitable use is not founded in principle. The reason given for refusing dower in a use was because it was not a legal estate, and if allowed, two dowers might be allowed out of the same estate. There were no uses at common law. The statute of uses converted uses into legal estates.

1835.

Hawley
v.
James.

The principle failing, dower should no longer have been refused. By the revised statutes, (1 *R. S.* 727, § 46, 47,) every person, entitled by grant, assignment or devise, to the actual possession of lands, and the receipt of the rents and profits thereof, is deemed to have the legal estate therein. The lottery certificates of the drawing of the city lots are assignments. The legal estate in these lots descended to the heirs of the testator. (1 *R. S.* 754, § 21.) The testator's beneficial interest in the lots being converted into a legal estate, his widow is entitled to dower therein. (1 *R. S.* 750, § 11. *Greene v. Green,* 1 *Hamm. Ohio Rep.* 535. 4 *Kent's Com.* 50.) The testator paid the purchase money, and entered into possession and made improvements.

The widow is entitled to dower in the lands included in the deed to Burnett. This deed created a mere naked collateral power, which never divested the estate of the grantors, except so far as the power was exercised by actual sales; and it was revoked by the testator's death as to all the lands not then contracted or sold. No interest was coupled with the power, and no interest or estate passed to Burnett. The conveyance passed no estate to him at common law. And the deed does not state that the consideration was paid by him. If the deed conveyed any estate, it was to the use of the testator; and the use was executed in, or resulted to him. Mrs. James is only barred of her dower in such parts of the lands described in the deed to Burnett as were sold before the testator's death. (*Lampet's case,* 10 *Coke,* 49.) The widow's acknowledgment of the deed had no greater effect than the acknowledgment of a fine. (5 *Cruise's Dig.* 158, *tit.* 35, *ch.* 10, § 22.) Where there is an acknowledgment of a fine to the use of the husband, the estate which continues in the husband is liable to dower. Where there is no declaration of uses in a fine, the use is to the cognizor. So where the declaration is to such uses as the cognizor shall appoint, the use also results to the cognizor. Where the declaration of uses is in favor of a third person, dower is barred; not, however, where the declaration is in favor of the heir. As between the widow and the heir, there can be no dispute about dower.

A trust estate, if not devised, descends to the heirs of the cestui que trust. (1 *R. S.* 754, § 21.) If the lands, therefore, included in the deed to Burnett were held in trust for William James, they descended as a legal estate to his heirs. If there can be no contest between the widow and heir, there cannot be between the widow and those who represent the heir. Trust estates are, by the revised statutes, made real estates, and descend as legal estates. Section twenty (1 *R. S.* 754,) is retrospective in its operation; not prospective. Section twenty-seven defines the words *real estate* and *inheritance.* A widow is entitled to dower in every estate of inheritance of her husband. (1 *R. S.* 740, § 1.) The definition of the term *inheritance,* although given in another chapter, is applicable to the term as used in the definition of dower, in the chapter on that subject. The revised statutes having been passed at the same time, the legislature must have so intended it. The policy of the revised statutes was to convert trust into legal estates; and the intention of the legislature was to allow dower in trust estates. It will be in harmony with the policy of the legislature, to consider the estate of the testator in these lands as a legal estate. (1 *R. S.* 727, § 47.) If this had been a nominal trust, before the adoption of the revised statutes, the 47th section of the statute would have carried the legal estate to the cestui que trust. A mere power to sell is a nominal trust; and so the legislature considered it. If it does not come within the 55th section, (1 *R. S.* 728,) it is a power in trust. There can be no other express trusts than those enumerated in that section. It was the intention of the legislature to convert all equitable estates, as well those created before as subsequent to the adoption of the revised statutes, into legal estates, except those specified in the statute. No trustee can now take an estate as such, unless in the cases mentioned in the 55th section. Only make one exception to this rule, and the evil will be incalculable. Section 47 includes all existing trusts, and section forty-eight qualifies that section by excepting from its operation the cases named in section fifty-five. Section eleven (1 *R. S.* 750,) refers to section forty-seven. These two sections are to be construed in *pari*

*materia.* These remarks apply to trusts created by grant, assignment, or devise; not to resulting trusts.

The widow has made a sufficient entry to entitle herself to dower in these lands. It is not necessary that an assignment should be made by metes and bounds, if the widow waives it. She may have assigned to her, for her dower, one undivided third part of the rents. (5 *Bosanquet & Puller*, 1.) An entry was acknowledged by the suit in partition. Payment of her dower was there decreed. By accepting dower in the parcel of land in question in that suit, she waived the provision in her favor in the will. The children of Augustus James cannot take this objection. Their interest as remainder-men is a mere possibility.

There being provision made in the will for the payment of debts in exoneration of the personal estate, the testator is to be deemed intestate in respect to the personal property bequeathed to the widow in part satisfaction of her dower, and she is therefore entitled to one third of the same. The widow is also entitled to one third of the personal estate remaining, after satisfying the annuities and legacies which are valid, the testator having died intestate as to such personal estate. She is likewise entitled to one third of the personal estate included in the three and a half shares, the directions for accumulation as to them and for their payment being void. And if it should be decided that the directions for accumulation as to the one twelfth to be paid to Augustus James are void, and the devise and legacy to him invalid, then the widow will also be entitled to one third of the personal estate included therein.

The absolute ownership of the personal property of the testator, and the absolute power of alienation of his real estate, are by the will suspended for a longer time than is allowed by law; and the authority to the trustees given by clause 27, to sell or exchange portions of the real estate, does not prevent the application of the rule against perpetuities, and the authority itself does not extend to personal property. The trust term is in itself a suspension of the power of alienation for more than two lives in being. The life estates directed to be conveyed, on the termination of the trust term, are contingent; and the contingency on which they are limited is not such

1835.

Hawley
v.
James.

that the life estate in remainder must vest in interest, during the time prescribed by law. The remainder in fee is also contingent, and the contingency on which it is dependant is not such that it must vest in interest during the time required by law. By the terms of the will, collateral heirs, not in being at the death of the testator, are to receive conveyances for life, in violation of the rule against perpetuities.

The directions for accumulation being contrary to the statute, are wholly void, and cannot be modelled by the court. An accumulation is directed. It is for a class of persons some of whom are incapable of taking ; and being entire, if a part fails the whole must fail. It may be wholly for the benefit of one adult, Augustus James. It is in fact for the benefit of uncertain and unknown persons.

These directions being void, the trust itself fails, and the term created for the purpose of supporting it cannot be maintained, unless there are other legal objects requiring it to be continued, in order to support them ; and there are no such objects. Again ; the powers given to the trustees, on the termination of the trust, are void. The directions for accumulation being void, the powers of the trustees cannot be applied to the subject which was solely contemplated by the testator. The powers embrace lands which the testator himself could not alien, and being entire in their character, they cannot be partially executed. Conveyances are authorized, under the trust powers, of estates and interests which could not be directly created or devised by the will. The powers are void for uncertainty in respect to the time when, and consequently in respect to the persons in whose favor they are to be exercised. At least, the directions for accumulation, so far as the three and a half shares are concerned, are absolutely void; and if the trusts of the will are remodelled in all other respects, they cannot be in this.

The annuity to the widow of the testator for the support of herself and children, given by the 4th clause of the will ; the provisions in the 30th clause, in favor of the widows and children of the testator's descendants ; the advances to the sons, authorized by the 31st and 32d clauses; the advances to the daughters, authorized by the 33d clause; and the devise to

James King, in the 38th clause, being dependant on the va‐ lidity of the trust for accumulation, must fall with it.

The other annuities and the specific legacies given by the will, which are valid, and are independent of the trust for ac‐ cumulation, should be secured by the appropriation of suffi‐ cient personal property as a fund for that purpose; and a de‐ cree to that effect should now be made. If the trustees are required to pay those annuities and legacies, they can retain such portion only of the personal estate as shall be necessary for that purpose, and their power as trustees will be confined to the funds so secured, or the personal estate so retained. And as to so much of the residue of the personal estate as is not required for the satisfaction of the last mentioned annuities and specific legacies, and as to the whole of his real estate, the testator has died intestate.

The devise to the trustees creates a term for years, to con‐ tinue until the youngest grand-child attains twenty-one. The power given to the trustees to sell, exchange and invest the proceeds, is an accumulation. If the devise is illegal in its objects, a power vested in the trustees by which, in their dis‐ cretion, its illegal operation may be prevented, does not ren‐ der the devise valid. If an instrument directs a thing to be done which the law does not permit, the instrument must fall. The policy of our law is to distribute. Primogeniture and entails were abolished by our ancestors, in furtherance of this policy, but they stopped short of the object. The legis‐ lature, in 1828, accomplished what they had left undone. The policy of England is different. (*Southampton* v. *Hertford,* 2 *Ves. & Bea.* 54. *Ware* v. *Pothill,* 11 *Ves.* 257, 283.) A trust to sell lands and purchase others for the mere purpose of pur‐ chasing is not a trust recognized by the statute. If valid, it must be as a power in trust. (1 *R. S.* 732, § 78.) Words used by the legislature must be taken in their ordinary mean‐ ing and popular sense. The trust term is in itself a suspen‐ sion of the power of alienation for more than two lives in be‐ ing. In this devise there is a precedent estate and two future estates. The object of the statute is to prevent the suspension of the power of alienation as to both present and future estates. The statute is prohibitory. It is intended to affect society,

both socially and politically. Every attempt to do any thing prohibited by statute is void. The fee cannot be conveyed, as it is not known who will take the remainders. The power of alienating the future estate is suspended until the expiration of the term. The trustees having no power to convey in fee, the power of alienation is suspended for a longer time than is allowed by law. Section 20 of the statute, (1 *R. S.* 724,) includes all contingent remainders; not only those which are in fee, but also those for life. All the remainders limited by the will in this case are contingent, both as to persons and events. The condition precedent to the termination of the trust is the attaining by the youngest grand-child of the age of twenty-one. (2 *Ves. & Bea.* 54.)

Where a trust is allowed by the statute, a term can be created corresponding with it; but if the trust term may continue beyond two lives, it is void. (1 *Cox*, 324.) The remainders in fee are contingent, and will not vest during two lives in being, but at the end of thirteen lives. Collateral heirs, not in being at the death of the testator, may come in and receive conveyances for life, in violation of the rule against perpetuities.

The power of appointment of the three and a half shares is not an estate; if an estate, it is void, not being limited as the 20th section requires. Terms for years in gross cannot now be created. Courts, under the *cy pres* doctrine do not carry out the intent of illegal instruments. If the intent is illegal, the court will not apply the doctrine. The intermediate life estates cannot be modified. They are void in their creation, not being limited on a contingency which must happen within two lives in being. This affects the whole will.

Under the 31st and 32d clauses of the will, the child who is entitled to an advance, may, at the time of the ultimate division, be entitled to no part of the estate ; at least, nothing but a life estate. Such child is therefore entitled only by way of advances to one fourth of the value of the life estate ; not of the fee, as otherwise it would be a violation of the 44th clause of the will. The testator never intended that the advances should be repaid, as he required no other than the

personal security of the children to whom the advances should be made. The testator must have intended that the advances should be made, and then that the rents should be accumulated to replace the capital withdrawn.

The directions in the will as to personal and real property are the same. An accumulation is directed. Where property is given in mass, an accumulation is included. (*Gibson* v. *Rogers*, 1 *Ves. sen.* 485.) Where a residue is given, an accumulation is implied. (*Vail* v. *Vail*, 4 *Paige*, 317.) Accumulation means to heap up, to amass. Anna M'Bride and Lydia James have no share in the estate. Lydia can only derive a share as heir to her brother Robert, and Anna M'Bride as heir to her father, who would be heir to his brothers and sisters. An accumulation must be for the benefit only of minors, and of no other person; and it must terminate at the expiration of their minority. The will, therefore, violates the 37th section of the statute. The debts, by the 15th clause of the will, are directed to be paid out of the rents and profits, leaving the capital entire. The testator thus adds to his estate the amount of his debts. This is an accumulation. The testator also authorized money to be borrowed to pay his debts, and directs the repayment of the sums thus borrowed, to be made out of subsequently accruing rents and profits. This is also an accumulation of rents to pay debts, which results in an addition to the capital of the estate. An accumulation is also directed to raise portions; money is to be borrowed to pay them, and then the rents are to be accumulated to pay the money borrowed. This accumulation is by anticipating the rents to pay the debts and legacies.

By the will, the whole of the eight and a half shares may go to Augustus, at the expiration of the trust. This contemplates an accumulation for an adult, which is not permitted by the revised statutes, which require the accumulation to be wholly for the benefit of minors; also a part of the eight and a half shares may go to William and Henry, as heirs of their brothers and sisters. The trustees can also, in the ultimate distribution, apportion a part of the estate to William and Henry. If any part of the estate may pass to either of the adults, the direction to accumulate is void.

1835.

Hawley
v.
James.

To make a valid trust of accumulation, the fund itself must be given to minors, and must be a vested interest. It cannot be contingent. Even if all the devisees in this case were minors, the trust would be void, as the accumulation will not terminate at the expiration of their minority. The 39th clause of the will includes all the heirs, both lineal and collateral, of the testator, as all these may in some event be entitled to a share of the estate ; and the 41st clause of the will includes the same persons.

The direction to accumulate is also void, because it is in fact for the benefit of uncertain and unknown persons. Throughout the whole will, the intention of the testator is apparent that the estate should accumulate and become increased before the termination of the trust. The children are to have nothing but the income—no part of the capital. The capital is to remain entire and unbroken. The accumulations cannot be taken distributively. The division is not to be made until the termination of the trust. The whole is to remain vested in the trustees until the youngest grand-child becomes twenty-one. The question is, whether there are in this will directions to accumulate ; not whether there will in fact be an accumulation. This latter question, therefore, which has been raised by the trustees, it is not important to consider.

Rents cannot be devised to raise a portion. No such express trust is allowed by section 55 of the statute. The 3d subdivision of that section only authorizes rents to be received and applied to the use of a person. Applying to the use of a person, means current use, not payment of a gross sum. If the trustees do not think proper to make an advance to Augustus, there must be an accumulation ; and if there may be an accumulation, the direction is void. Even if the advances are made, an accumulation will still go on. But the legal result is the same, whether the accumulation is now going on, or will go on at some future day. The statute declares all directions for an accumulation void, unless it be for the benefit of minors. If an instrument be void in part as against the provisions of a statute, it is void in the whole. (*Twyne's case*, 3 *Rep.* 823. *Co. Litt.* 120. *Hyslop* v. *Clarke*, 14 *John. R.* 464.

1835.

Hawley
v.
James.

*Mackie* v. *Cairns*, 5 *Cowen*, 580. *Marshall* v. *Holloway*, 2 *Swans*. 476.)

The testator meant that the powers conferred on his trustees should be exercised as to all the objects; and he did not mean to give them such powers, unless they could be so exercised. In *Gee* v. *Audley*, (1 *Cox's Cas.* 324,) it was held, that if the class designated could not take as such, they could not take distributively. (*Leake* v. *Robinson*, 2 *Meriv.* 363, 390.) These authorities show that if the intention of the testator cannot be carried into effect as to all its objects, the court cannot mould the estate, and execute it pro tanto. (1 *Russell*, 217. *Vawdrey* v. *Geddes*, 1 *Tamlyn*, 361. 1 *R. S.* 748, § 2.)

Where the testator's intent is legal, the court will carry it into effect ; but if not legal, the court will not carry it into effect, even so far as it may be consistent with the rules of law. Here the general intent of the testator was to create an accumulation, which is not authorized by the revised statutes, and that the capital of his estate should go to the devisees of his children and grand-children, who were to be tenants for life only. If all the directions to accumulate are void, then the whole estate is to be distributed at once. It would be impracticable to remodel this will.

A will may be void for uncertainty ; and it is void for this cause, although the general intent of the testator may be collected from the will, if it is doubtful how he intended such intent should be carried into effect. (*Constantine* v. *Constantine*, 6 *Ves.* 101.) This principle is applicable to the three and a half shares. It is uncertain among what class the testator intended they should be distributed. If the purpose for which the trust, as to the three and a half shares, was created, fails, the trust ceases, and there is a resulting trust pro tanto to the heirs at law and next of kin. (*Chambers* v. *Brailsford*, 18 *Ves.* 368.) In all cases where the court cannot see its way clear, as to the testator's intent, the devise is void. (2 *Bro. Ch. Cas.* 202. 4 *Mod. Rep.* 484.)

As to the powers in trust : If all the valid bequests and annuities can be provided for, there is no necessity for any power in trust. The legal title will go to the heirs at law. The

power of selection will fall with the trust term, and the power of partition must be executed immediately. The execution of the power of selection is impracticable, as it may terminate before the trustees know it has terminated—as if John B. James lives until he arrives at twenty-two, and then the youngest grand-child dies before twenty-one.

The trustees can receive the rents only for the purpose of paying the annuities; if the will has authorized more to be received, it is void for the excess, and as to this excess, the testator died intestate. The authority conferred by statute is only to receive rents to be applied to the use of a person.

The household furniture given to the widow must be distributed to the next of kin, as all property not disposed of by a will goes to the heirs at law, and next of kin. (8 *Ves.* 25. 3 *P. Wms.* 40.   5 *Ves.* 149.   12 *Idem,* 497.   4 *Mad. R.* 275. *Fowler* v. *Garlike,* 1 *Russ. & Myl.* 232.   *Vezey* v. *Jamson,* 1 *Sim. & Stu.* 69.   3 *Meriv.* 117.   2 *R. S.* 96, § 75.) The personal estate of the testator, left undisposed of, is not chargeable with his debts and legacies, as they are expressly charged on the rents and profits of the real estate. (*Foster* v. *Cooke,* 3 *Bro. Ch. Cas.* 351.   2 *Williams' Ex'rs,* 936.   *Prec. in Chan.* 101.   2 *Vernon,* 1718.   *Wainwright* v. *Beulowes, Prec. in Ch.* 451.   1 *Cox,* 138.) Express words are not necessary to exonerate the personal estate. (*Rogers* v. *Rogers,* 1 *Paige,* 190.) It is sufficient that the intent appears to charge other property than the personal, with the debts and legacies. In case of personal estate, the intermediate profits go to the ultimate owner of the capital.

*A. C. Paige,* for Marcia James, the wife of William James, Mary Helen James, wife of John B. James, Elizabeth Tillman James, youngest child of William James, and William James Barker, the infant son of William Barker. Marcia James, on the death of her husband, will be entitled to the provison made in the 30th clause of the will of William James; and she will be entitled to such provision, although her husband should leave no child or children by her, him surviving, and although he should not die until after the expiration of the trust; as otherwise she would be left, by the will, with-

out any provision for her support—the annuity to her hus-band, William James, ceasing on his death, and the manifest intent of the testator being to make a provision, in any event, for the widows and children of his sons, and for the children of his daughters, in the event of their death. This bequest is valid, and not contrary to law.

Mary Helen James, in the event of the death of her hus-band, John B. James, during the continuance of the trust, will be entitled to the provision made in the 30th clause of the will of William James ; and she will be entitled to such provision, although her husband leaves no child or children by her him surviving. This bequest is valid, and not contrary to law. In the event of the death of John B. James before the expiration of the trust, Mary Helen James, in case she survives him, will, be entitled to a conveyance of such portion of his share of the real and personal estate of the testator as she would have been entitled to had the said John B. James died lawfully possessed of the personal estate, and seized in fee of the real estate, as provided in the 39th section of the will. She is also embraced within the class of persons among whom the trustees are au-thorized by the 41st section of the will to apportion the three and a half shares of the real and personal estate of the tes-tator.

William James Barker, in the event of the decease of his mother, Jeanette Barker, and Elizabeth Tillman James, in the event of the decease of her father, William James, during the continuance of the trust, will be entitled to the provision made in the 30th section of the will of the testator. And William James Barker, if he attains the age of manhood dur-ing the continuance of the trust, will be entitled, in the event of the decease of his mother during the continuance of such trust, to the advance of two fourths of the probable amount of the estate to which he would be entitled, upon the ultimate division thereof, under the 31st and 32d sections of the will ; absolutely, and without reference to the quantity of interest directed to be conveyed to him at the termination of the trust estate.

In the event of the death of Jeanette Barker before the ex-piration of the trust, William James Barker, in case he sur-

vives her, will be entitled to a conveyance of such portions of her share of the real and personal estate of the testator as he would have been entitled to had she died intestate, lawfully possessed of the personal estate and seized in fee of the real estate, as provided in the 39th section of the will; and he having been born subsequent to the decease of the testator, will, in such case, be entitled to a conveyance in fee of the real estate.

Elizabeth Tillman James and William James Barker will each in like manner be entitled, in case of the death of the father of the former and of the mother of the latter before the expiration of the trust, they surviving, to such portion of the share of the personal estate, and a conveyance in fee of such portion of the share of the real estate of any of the devisees and legatees referred to in the 39th section of the will, who shall before the expiration of the trust die without leaving lawful issue, as the said Elizabeth and William would have been entitled to had such devisee or legatee died intestate, lawfully possessed of the personal estate and seized in fee of the real estate. Both are also embraced within the class of persons among whom the trustees are authorized by the 41st section of the will to apportion the three and a half shares.

*B. F. Butler*, for the trustees Hawley and King, in reply. The numerous questions arising in these causes may be naturally divided into five classes: 1. Those which relate to or grow out of the peculiar frame of the pleadings; 2. Those which grow out of the refusal of the widow to accept the provision made for her in the will in lieu of dower, or are otherwise independent of the particular provisions of the will; 3. Those which relate to the trust estate devised to the trustees, involving all the points which have been discussed, in respect to the creation, validity and duration of that estate, the purposes intended to be effectuated by it, and the powers, rights and duties of the trustees; and including also those which will arise in case the trust estate, or any of the trusts for which it was created, shall be adjudged invalid; 4. Those which relate to the various powers in trust created by the will; 5. Those which relate to the duty of all or any of the

1835.

Hawley
v.
James.

parties, in any event which has occurred, or which, in the present aspect of the case, is likely to occur, to elect between the provisions of the will and their title as heirs at law or next of kin, or otherwise.

The original bill, filed by the trustees, presents the ordinary case of executors and trustees applying for the construction and directions of the court upon questions of difficulty or doubt arising on the will, or growing out of the acts or claims of the heirs at law and other parties in interest ; and it necessarily involves an inquiry into the validity of the trust estate devised to the trustees, and, so far as may be necessary to the decision of this question, into the nature and effect of the other provisions of the will ; but not otherwise. The cross-bill is but a means of defence to the original bill, and was only necessary for the purpose of presenting to the court certain facts supposed to be requisite to a proper decision as to the validity of the trust estate, and of bringing before it all the parties interested in that question.

On the pleadings in the original and cross cause, the court is now required to decide, 1. The several questions included in the second class, as above described and herein after enumerated ; 2. Whether or not the trust estate devised to the trustees is valid ; and if it be, then what are the powers, rights and duties of the trustees in respect to all questions which have already actually occurred, and upon which they are now required to act ; 3. Such questions of election as may arise in consequence of the decisions of the court upon the points just enumerated. But the court, in the present state of the case, is not required to decide any question in respect to the future duties of the trustees ; but in order to prevent delay, expense and difficulty, and to secure uniformity in the decisions of the court, and the execution of the trust, the causes, in case the trust estate shall be deemed valid, will be continued, and provision will be made for authorizing the trustees, or any two of them, or any other party, from time to time, to apply to the court for further directions. And, in the present state of the case, the court is not authorized to decide any question in respect to the powers in trust created by the will, except as to those trust powers, if any, which are indissolubly connected

1835.

Hawley
v.
James.

with and absolutely dependant on the trust estate, and those also, if any, which are required to be presently executed. The power to divide the estate at the expiration of the trust, and the other powers connected with such division and thereafter to be executed, are not of this description, and therefore no question in regard to them can now be decided.

The widow has duly elected to take her dower, in lieu of the provision made for her in the will. The deed, notice, and other facts mentioned in the bill, constituted a valid election not to take under the will, but to be endowed ; and no entry or legal proceeding was necessary. There was in fact a sufficient entry, and competent legal proceedings, within the year. The widow is not entitled to dower in the Albany city lots mentioned in the pleadings, because the testator was not seized of an estate of inheritance therein, within the meaning of the statute concerning dower, at any time during the marriage. The widow is not entitled to dower in the premises conveyed to Burnet and Hawley by the deed of the 18th of June, 1825, the same having been executed and acknowledged by her, in the manner required by law to bar claims to dower. A sufficient pecuniary consideration is expressed in the deed, to raise a use in the bargainees. The operative words convey the estate, and are inapplicable to a mere naked collateral power. The power of revocation contained in the deed does not affect this question. By the law, as it stood at the execution of the deed, it was effectual to vest the whole legal estate in the grantees, and to bar the widow's dower ; and the Revised Statutes have not altered the legal rights of the parties, because the title of the trustees was not merely nominal, but was connected with a power of actual disposition or management. It is admitted that, as an aliquot share of the consideration money for the purchase of the lands described in the deed from Safford was actually paid, at the date of said deed, by the testator, a resulting trust for five-eighths thereof was created, which, by the law in force at the testator's death, was turned into a legal estate of which the widow is to be endowed.

The refusal of the widow to take the provision tendered to her in the second, third and fourth clauses of the will, cannot affect the rights of the children of Mrs. Gourlay to an execution of the trust power, devised to the widow for their benefit, in the fifth clause. But the personal chattels bequeathed to the widow being left undisposed of by the will, and another fund having been specially provided and pointed out for the payment of debts, which is admitted to be abundantly sufficient, the same ought to be distributed to the widow and next of kin. (*Boodle* v. *Blunt*, 1 *Meriv.* 192.) The testator's minor children are also entitled to such portion of the sum of $3000 per annum, given to the widow, among other things, for their education and support, as may be necessary for that purpose. And the trustees being satisfied that the testator actually intended, in his lifetime, to give to his son Augustus the several lots enumerated in the ninth page of the bill, think it proper to submit to the court the question arising on this part of the case, upon the arguments offered by the counsel of the infant defendants and of Augustus James.

The will in this case creates an express trust for the purpose of leasing the lands of the estate for the benefit of legatees, and for the purpose of satisfying charges thereon ; (1 *R. S.* 728, § 55 ;) and also for the purpose of receiving the rents and profits, and applying them to the use of divers persons, during the lives of such persons, or for shorter terms ; and in case there should be a surplus, then provision is in effect made to accumulate the same for purposes and within limits allowed by the statute. The whole legal estate is therefore well vested in the trustees, subject to the execution of the trusts.

There is no such uncertainty in the duration of the trust estate, as to render it invalid. The will creates a term for years, which cannot possibly last for more than twenty years and ten days from the death of the testator, and which is subject to be determined before the period prefixed. The language of the will being ambiguous in respect to the duration of the trust estate, it becomes necessary, and it is the duty of the court, to interpret it, and to determine the meaning of the testator ; but there is no other uncertainty here, than such as exists in all cases where written language requires to be judi-

cially expounded. After such exposition shall be given, there will be no difficulty in ascertaining when the trust *shall have ended*, although no one can foretel the precise period when *it will end*, the time being, from its very nature, liable to determine at any period. And when the construction shall have been settled, there will be no room for any legal doubt as to the intention of the testator in respect to the persons who are to take at the termination of the trust; for, whenever it may end, whether to-morrow or twenty years after his death, his descendants then in being are the persons for whom he intended to provide.

The trust estate is not invalid by reason of any undue suspension of the absolute ownership of the personal estate, or of the absolute power of alienation of the real estate. There is in this case no suspension of ownership, or of the power of alienation, within the words of the prohibitory sections of the Revised Statutes; nor is there any suspense in this case, within the contemplation of those sections, or the mischiefs they intended to prevent. If there is, *it is not unduly protracted*, being for a term which, in judgment of law, is shorter than the lives of two persons in being at the creation of the estate; the suspense being for the period of the trust, and not for the lives of the annuitants. The lives which are in this case connected with the duration of the term can have no other effect thereon, even should they all terminate within the term, than to shorten its duration. If it is for a longer term than two lives, it is yet allowable, because the suspension results not from any condition or limitation imposed by the party, but from the peculiar nature and attributes of a trust estate—an estate expressly authorized by the statute, when created for proper purposes. And it will be shown, under the points immediately following, that the various purposes for which the present estate is created are valid as express trusts; and if so, it must follow that the suspense of ownership and alienation thus occasioned is not within the prohibitory sections referred to, but is excepted therefrom by the article concerning trusts. The language being ambiguous, the court should give such a construction to it, if the same can be done, as will render the limitation of the estate consis-

tent with the rules of law ; but if this cannot be done by the construction to be given to the words, the court, under the general *cy pres* doctrine, and in accordance with the duty specially imposed by the new statute, will so model the limitation of the estate as to confine it within the period allowed by law.   This may be done by taking the lives of the two children and grand-children who shall first die within the twenty years, or by taking the life of William Augustus, the youngest of the children and grand-children, considering them as one class.   Whatever difficulties may be produced in regard to the power of alienating the ultimate estates, by reason of the powers in-trust, and of the limitations or conditions which are to be annexed to the remainders to be created under such trust powers, such difficulties cannot defeat or affect the trust estate.   The invalidity of a future estate cannot affect a precedent estate otherwise valid ; and if any illegal limitation or condition be annexed to a precedent estate, it will be merely void, but the estate itself will be good.

The 18th section of the will states the trust on which the estate is devised, to be, to *manage* and *dispose* of the same, and to *receive* and *apply* the rents and profits, &c. in the manner thereinafter directed.   This necessarily includes the power of leasing, as the appropriate mode of raising rents and profits ; and that the testator intended this mode should be adopted, is fully evinced by other parts of the will.   And the leasing so authorized is for the benefit of *legatees,* and for the satisfaction of charges, and is an express trust, sanctioned by the second subdivision of section fifty-five.   The specific legacies and annuities are directed to be paid out of the rents and profits.   So are the debts, the portions, and the monies authorized to be advanced.   These legacies and debts are all *charges* on the land, within the meaning of the statute, and may be legally satisfied out of the rents and profits as they accrue.

The annuities given by the will, and the various advances directed or authorized to be made to the testator's descendants and their families, are within the third subdivision of section fifty-five.   There is no limitation of the number of life annuitants, to whose use the rents and profits of land may be

1835.

Hawley
v.
James.

received and applied. The contingent provisions and those which are discretionary are also within the statute.

There is no objection, either upon the words or the general policy of the statute, to anticipating the rents and profits for the purposes mentioned in the two last points ; it is not an *accumulation* of rents and profits, but *the reverse*. The intent of the testator being clear, and his directions explicit, that the monies necessary for the purposes of the trust should be raised by the application of the annual rents and profits, and there being at present no necessity for resorting to another mode, the court cannot order the same to be raised by a sale or mortgage ; although, if such necessity should hereafter arise from an unexpected determination of the trust, that course may be adopted. And the legal estate being well vested in the trustees, for the purpose of executing numerous valid trusts which are not yet expired, the estate must remain in their hands, even though a surplus of rents and profits should arise. In such case, if no valid disposition of the surplus can be found in the will, and no such state of things shall exist as to authorize and require the court to direct such surplus to be paid to some person or persons other than the heirs at law, a trust for the surplus would result to the heirs at law, but the legal estate would still continue in the trustees, and they would still be entitled to the possession of the premises, and the perception of the rents and profits. It is no objection to the trust estate, that certain powers which are not enumerated in section fifty-five of the statute are also given to the trustees. If they are not valid as trust powers, they will not affect the trust estate ; and if they are valid as such, they will be imperative on the trustees, and at the proper time may be enforced in favor of the parties entitled to the execution thereof. The power in trust to divide the estate is also valid ; but if void, it is not so far connected with or dependant on the trust estate as to affect the same.

The general intent of the testator was, that all his personal estate should be turned into land ; and the court will therefore regard the personal property as land, for all the general purposes of this will. But as the testator intended that his trustees should have, and has actually given to them, a dis-

cretionary power to invest in personal property, and as he also foresaw that the trust might terminate suddenly, he has provided for the disposition of that portion of the estate which might exist in personalty at the expiration of the trust, as personal estate, and this provision will be upheld by the court.

The trustees, under the thirty-first and thirty-second clauses of the will, are authorized to advance, from time to time, sums equal in the whole to one fourth of the probable amount of the whole share to be allotted as and for the share of the party, without regard to the life estate, and without regard to the possibility that the party may receive a portion of the three and an half shares. But the advance authorized in section 32 is not in addition to that allowed in section 31. Under the two, only one fourth can be advanced to any one person. By the age of manhood, in these sections, the testator must be understood to have meant the attaining of legal age; and the words which indicate a contrary intent must be rejected as incongruous and nugatory.

The portions for the children of Augustus James, and for Anna M'Bride James, and Lydia James, are all to be raised and invested in the same manner; that is to say, the trustees are in each case, as near the termination of the trust as may be found convenient, with the rents and profits, to purchase productive real property, which is to be conveyed, at the expiration of the trust, and not till then. The present children of Augustus James, and Anna M'Bride and Lydia James, have vested interests in their respective legacies; but the interest of the children of Augustus will open to let in after-born children; and the same is liable to be defeated as to all but one, by the exercise of the power of appointment, and as to all by the death of all. The interests of Anna M'Bride and Lydia are also liable to be defeated by their death. In the event of the death of these two last named legatees before the termination of the trust, the limitation over, by section 39, will take effect.

No accumulation is directed in express terms; none can ever occur, except of the surplus, and it is not certain that any such will occur: on the contrary, it appears from the pleadings and master's report, that there has not yet been, and for some time to come cannot be, any surplus of rents and

1835.

Hawley
v.
James.

profits to be accumulated. At present, therefore, the question of accumulation is not ripe for discussion, except for the purpose of ascertaining whether or not such an accumulation is directed, as must necessarily invalidate the other trusts of the will. If a surplus of rents and profits shall hereafter at any time exist, and the provisions of the will should be deemed equivalent to a direction to accumulate the same, and such direction be adjudged either partly or wholly contrary to the statute, the partial or entire invalidity thereof will not affect the other trusts of the will, nor divest the trustees of the legal estate devised to them ; but all the trusts of the will, which are agreeable to law, will be protected, and their execution enforced by this court. And, under the provisions of the will, should any accumulation of the surplus hereafter commence, the direction therefor will have been agreeable to the statute, and therefore valid, because such accumulation will be for the benefit of minors ; will commence within the time prescribed by law for the vesting of future estates, and during the minority of the persons for whose benefit it is directed ; and will terminate at the expiration of such minority. All those primarily interested in such accumulation, and for whose benefit it will be made, except Augustus James, are now minors ; and it is a common possibility, that before any surplus shall exist to be accumulated, all the persons so interested may be minors. Even if adults should continue to be interested, the direction will not, for that cause, be void, because the statute does not require, on its true construction, that all the cestuis que trust should be minors. And it is no objection that some of the cestuis que trust are to take life interests only, or that the persons who are to take the residue may be adults. The object of the statute is sufficiently complied with by such a limitation of the benefits of the accumulation, it being a substantial share, and analogous to provisions usually made for the benefit of the children of a decedent. Besides ; the life estates here are to be accompanied by a power of disposition, which secures the ultimate vesting of the whole interest within the time allowed by law for the vesting of future estates. All the persons who are to take the remainders, now in being, are minors, and most, if not all of them, must continue to be

so during the continuance of the trust; and in some cases, both the parent who is to take the life interest, and the children who are to take the remainder, may all of them have been minors during the whole period of accumulation.

Nor is it any objection to the accumulation, that the cestuis que trust are not to take absolutely; the discretionary power of the trustees being in the nature of a condition subsequent, and the legal presumption being that the parties will so demean themselves as to prevent the application of the power. The direction for accumulation is severable; and if it includes any person not authorized by the statute, it will, as to such person, be void; and if that person would be either the first legal or equitable tenant of the freehold in a share of the estate, or the person presumptively entitled to the next eventual estate in such share, the rents and profits on his share will go to him; and as these several circumstances will concur, in the present case, in respect to each cestui que trust who now is, or hereafter may be, primarily interested in the accumulation directed to be made on such share, such party, and not the heirs at law, will be entitled to the rents and profits on the share. If the accumulation in respect to the minors for whose benefit it is to be made, is directed for a longer term than during the minority allowed by statute, it will only be void as respects the time beyond such minority, and on the arrival of the minor at full age, will cease as to his share; and the rents and profits already added thereto must be specially reserved by the trustees as a part of such share, and those subsequently accruing on the original share so increased, must be paid over to the party until the termination of the trust.

In these remarks it has been assumed that the personal property was to be deemed land; and that there was therefore no discrimination to be made between the accumulation of the surplus income of the personal estate, and that of the surplus rents and profits of the realty. The discretion given by the will to the trustees as to investments, however, is of such a character, that if the court should find that any legal objection exists to the accumulation of the rents and profits of land for the qualified benefit of the party, it may and ought to direct the trustees to invest the surplus income, whenever any shall

occur, in personal securities, and to hold the same and the accumulation thereof as personalty, until the expiration of the trust ; in which case the party, whether in being at the time of the testator's death, or born afterwards, will take the whole interest ; the provision as to the life estates applying only to the shares of that part of the estate which shall actually exist in land at the time of division. If, for any reason, the accumulation cannot legally be allowed in respect to the three and a half shares, the surplus rents and profits thereof may, under the direction of the court, either be annually distributed by the trustees, in conformity to the power to them given, or be added to the eight and a half shares, or laid out and kept in personal securities ; in either of which ways the general intent of the testator may be effectuated in consistency with the rules of law. But in case the trust for accumulation shall be held to be wholly void, the surplus rents and profits over and above the charges and expenditures on account of the other trusts, should be distributed, not to the heirs at law, but to the descendants of the testator now in being, who are presumptively entitled to the next eventual estates under the will, that is to say, eight and a half shares thereof to the nominees of the eight and a half shares, and three and a half shares to those designated as entitled to share in the ultimate disposition of the estate.

The invalidity of any one or more of the trusts of the will will not affect those trusts which are valid and capable of execution. Independently of the express devise to the trustees, they would take the legal estate by implication, for the purpose of receiving the rents and profits, and applying them to the purposes directed by the will ; and such estate would continue until such purposes shall cease.

If the trust estate is held to be valid, decisions should be made and directions given in regard to the various matters specified in the original bill, and enumerated in the points presented on the part of the complainants therein, and not herein expressed. But if the trust estate should now be declared invalid, provision must be made for settling the accounts of the trustees, and confirming all acts done by them, in good

faith, under the will.   Provision must also be made for mar-
shalling the assets, in the event which will then have hap-
pened, and applying the same to the payment of debts, and of
the legacies which may yet remain ; for securing to such of
the annuitants whose annuities may yet remain, the future
payment thereof ; for putting such of the parties as may then
be bound to elect between any beneficial provision not affected
by the invalidity of the trust, and their rights as heirs at law
and next of kin, to such election ; and for giving all proper
directions to the executors, in respect to the personal property
remaining in their hands, and the subsequent management
thereof.

The revised statutes have not attempted to limit powers in
trust ; and every trust power which could have been created
by the former law, may still be created and executed under
the new statutes, provided the provisions of the statute as to
perpetuities and accumulations, and the express restrictions in
the article concerning powers, be not violated.   The power of
sale, exchange and investment, if not valid as included in the
active trusts with which it is connected, and to which it is
auxiliary, is yet valid as a trust power.   It prescribes a duty
which may lawfully be done under a power, and it involves
no violation of the statute against accumulations.   The tes-
tator had legal capacity to grant it in respect to lands purchas-
ed by his trustees, after his death.

The power to divide the estate at the expiration of the trust
term, and the powers of appointment connected therewith,
are valid in their general outlines ; and that whether the active
trusts be either wholly or partially invalid, and even though
the trust estate be wholly void.   These several powers prescribe
duties which may lawfully be done under powers in respect
to the lands of which the testator was seized at his death, and
those to be acquired by his trustees.   The discretion conferred
on the grantees of the powers of appointment, both as it re-
gards the eight and a half and the three and a half shares,
is legal.   And the statute against perpetuities will not be
violated in the estates to be taken by the remainder-men for
life, nor in the remainders in fee.   Such of the trust powers,
if any, as purport to authorize the granting of estates incon-

sistent with the rules against perpetuities, will not thereby be rendered wholly void ; but so far as the same can be executed in a legal manner, they will be upheld by the law, and their execution, at the proper time, will be duly enforced.

The defendant Augustus James cannot be allowed to take under the will, and also to claim the Syracuse property in his own right ; this being a clear case for applying the doctrine of election. And if the trust estate should be adjudged void, the annuities to William and Henry James will fail, and they must refund to the estate the sums already advanced to them on account thereof. In the present state of the case, and until the main questions are disposed of, it is deemed unnecessary to enter any further into the doctrine of election.

As to the second class of questions : An entry, or the commencement of proceedings for the recovery of dower, is not the only mode for the widow to elect to take dower, (1 R. S. 741, § 13, 14 ;) any authentic act, signifying her election, is sufficient. The taking any portion under a will is an election. (10 John. R. 30.) An entry into a part, at common law, is an entry into the whole. (4 Paige, 98.) But the widow is not entitled to dower in the Albany city lots. The definition of the words real estate and inheritance, in the statute, applies only to the chapter on descents, and not to the title relative to dower. If the trust as to the Albany city lots was turned into a legal estate by virtue of section 47, then the widow would be entitled to dower in these lots ; otherwise not. The lottery certificates are neither grants nor assignments, within the meaning of that section. The object of the section was to convert mere formal trusts into legal estates, and such only as were created by either grant, assignment or devise ; and as the testator's estate in these lots was not created by either of these modes, he had no legal estate therein. The statute gives a new rule as to contracts for purchase of land. They give a remedy to the creditor by bill in chancery, to obtain satisfaction out of the defendant's interest in the contract. (1 R. S. 744.) Under the provisions of the statute, (2 R. S. 111, § 66, Idem, 112, § 75,) the widow would not be entitled to dower out of contracts for purchase of lands, except in cases of sales of the purchaser's interest therein, by order of the

surrogate. The equitable rights of the cestui que trust was, under the former statute of uses, allowed to be sold on execution, but dower was never allowed in the same. (*Kellogg* v. *Wood*, 4 *Paige*, 578. *Ontario Bank* v. *Root*, 3 *Id.* 478.) Neither is the widow entitled to dower in the premises conveyed to Burnet and Hawley. There was a sufficient pecuniary consideration expressed in the conveyance to them to raise a use in the grantees. A pepper-corn is a sufficient consideration for this purpose. Such a construction must be given to the deed as will make it available. It must be taken most strongly against the grantors. (*T. Moore's Rep.* 569. *Rogers* v. *Eagle Fire Ins. Co.*, 9 *Wendell*, 611, 617, 631.) The legal intendment is, that the consideration expressed in a deed was paid by the grantee. If paid by a third person, it is sufficient. The question of the widow's right to equitable dower is not presented by the pleadings. If the husband has once divested himself of the seisin, it can only be reinvested by some solemn act. The intention of the grantors here was to create a trust estate, and not merely a collateral power; Burnett was made the trustee. The equitable estate of the grantors was not turned into a legal estate by the revised statutes. The power of revocation does not affect the question. This power of revocation is only important when the rights of bona fide purchasers are in question. Its insertion is evidence only that the grantors deemed it necessary, for their protection, to prevent the whole estate from passing.

The legacy to the children of Mrs. Gourlay is not defeated by the refusal of the widow to take the provisions made in her favor in the will. The testator intended this legacy should go to these children, at all events. If the widow has lost the power of distribution, the execution of the power in trust conferred on her will devolve on the court of chancery. (1 *R. S.* 734, § 100, 101.)

As to the third class of questions: The whole legal estate is well vested in the trustees, subject to the execution of the trusts. The testator first carves out an estate for years, which he devises to his trustees, and suffers the reversion to descend to his heirs at law, clogged however with certain powers in trust, devised to his trustees: 1. To sell during the continu-

ance of the trust; and 2. To make partition at the termina-tion of such trust. These powers in trust being valid, they will authorize the trustees, at the termination of the trust, to execute the power of partition, and to pass the fee to their grantees. The interest of a cestui que trust, under a trust power, if only a right in equity, would be protected. The estate given to the trustees is a present legal estate in posses-sion. The interest or estate of the cestuis que trust is a vest-ed right, which can be enforced in a court of equity, although it may open to let in after-born children. This vested right in equity is a right to an estate in remainder for life. If there had been words of present devise, the cestuis que trust would have taken vested remainders for life; as it is, the fee descended to the heirs at law, subject to the execution of the trust as a power. (1 R. S. 729, § 59, 60. *Vail* v. *Vail*, 4 *Paige*, 328.) The interest, in equity, of a cestui que trust, under a power in trust, is the same as under a trust. In both cases, he has only a right in equity; in neither case has he an estate.

The will creates a term for years, which cannot last for more than twenty years and ten months from the death of the testator. (*Bishop of Bath's case*, 6 *Coke's Rep.* 34.) A lease during the minority of A., who is fourteen years of age, is a good lease for seven years, determinable by his death be-fore the expiration of that time. (*Say* v. *Smith, Plowd.* 273.) Reference to a time certain, is equivalent to a statement of the time. (*Corbet's case*, 4 *Coke*, 81, *b*. 1 *P. Wms.* 809. *Goodtitle* v. *Whitby*, 1 *Burr.* 228.) A devise to trustees for years, during the minority of A., has been held a chattel in-terest. (*Doe* v. *Nicholls*, 1 *Barn. & Cres.* 336. *Warter* v. *Hutchinson, Idem*, 721. *Woodf. L. & T.* 132.)

The language of the will being ambiguous as to the dura-tion of the trust estate, the court must interpret it according to the meaning of the testator. There is no other ambigui-ty here but what judicial construction can expound. The existence of mere contrariety of opinions as to the meaning of a testator, or as to the true construction of a will, is no objec-tion to a suit commenced to obtain a judicial exposition of such will. This is not a case of a fatal uncertainty, but a case for interpretation merely. To show the extent to which

courts go in supplying words omitted in a will, and in solving uncertainty of expression, I cite *Jackson* v. *Strange*, (1 *Hall's Rep.* 1.) Only a few cases of fatal uncertainty can be found in the books. Courts always endeavor to eviscerate from in- struments sufficient to support them. (*Viner's Abr. tit. Un- certainty. Jackson* v. *Blanshan,* 6 *John. Rep.* 54.)

It is no objection that it cannot be foretold when the trust will end. The same might have been said of the trust estate, if there had been but one cestui que trust. The words, " the trust is to determine, if the children and grand-children die before they arrive at the age of twenty-one," are to be implied. The law will supply this omission. The will might be con- strued to mean that there were to be two classes ; the one formed by the children, and the other by the grand-children, and the youngest of each to be taken as the person designat- ed, whose arrival at twenty-one, or death before, would deter- mine the trust estate ; or that the testator meant there should be only one class, and the youngest of the whole to be taken as the person whose arrival at twenty-one, or death before, was to determine the trust. The court could, in conformity to rules of law, give either of two or three constructions to this will. (*Cruise, tit.* 38, *Devise, ch.* 19, § 18. *Archibald* v. *Thomas,* 3 *Cowen,* 284.) Where a contract admits of two sig- nifications, that should be adopted which renders it operative, rather than that which renders it void ; so if susceptible of two constructions, the one making it unlawful and the other lawful, the latter construction is to be adopted.

As to the suspense of the absolute power of alienation : If such a construction can be given to this will as will render the limitation of the estate consistent with the rules of law, it is the duty of the court to adopt it. But if this cannot be done, the court will so model the limitation of the estate as to confine it within the period allowed by law. The limitation will only be void for the illegal excess. If the trust should terminate to-morrow, there is not a provision in the will which could not be immediately carried into effect. The objection that here is a suspense of the absolute power of alienation for more than two lives in being at the creation of the estate, is based on sections 14, 15, 55, 63 and 65, of the statute. Fu-

1835.

Hawley
v.
James.

ture estates only were in the contemplation of the revisors when they framed these sections. The estate of the trustees is to be measured alone by the minority of the children and grand-children, and not by their lives. The 63d section was adopted to protect minors, lunatics, &c. So long as the trustees continue in possession of the trust, this section will be applicable. Their estate is for twenty years and ten days; determinable within that period, by the death of the minor children and grand-children. This estate is not prohibited by the revised statutes, unless its continuance is to exceed the duration of two lives. The legislature did not intend to prohibit any thing not within the mischief to be remedied. The maxim of construction that a statute in derogation of common law right is to be construed strictly applies. The legislature have proceeded on the supposition that the minority of any number of persons would be shorter than any two lives. (1 *R. S.* 723, § 15 ; *Id.* 726, § 37, *sub.* 2.) In this case, the lives connected with the term can have no other effect than to shorten it. If the cestuis que trust should all die under twenty-one, the term would be shorter in duration than twenty-one years. But if the trust in this case is expressly authorized by the revised statutes, it is allowable, although it may carry the suspension of alienation beyond two lives ; it being excepted from the prohibitory sections, by the article concerning trusts.

The eighteenth clause of the will authorizes the trustees to " manage and dispose of the estate, and to receive and apply the rents." This includes the power of leasing. The leasing is for the benefit of the legatees, and for the satisfaction of charges. The legacies, debts and portions are all charges on the lands, within the meaning of the second subdivision of section 55, and may be legally satisfied out of the rents and profits as they accrue. There can be no doubt of the intention of the legislature to allow a testator to devise lands to trustees to sell, mortgage, or lease, for the benefit of legatees, or to satisfy any charge thereon. The third subdivision of section fifty-five authorizes rents and profits to be received and applied during the life of more than one person. The

words " any person," as used in this section, may include several persons. (2 *R. S.* 778, § 11.)

The trustees are authorized to make loans, if necessary, to fulfil their trust duties  This is not prohibited by the Revised Statutes.  Anticipating the rents and profits to pay the debts and legacies is not an accumulation ; but the reverse.  It is a mortgage or pledge of the rents and profits for lawful purposes.  (*Randall on Perpet.* 193.)  A mere preservation of the capital of the estate entire is not an accumulation.  Where a charge is made on rents and profits, the court will direct a mortgage to be given ; not, however, where the charge is on annual rents.  (*Allen* v. *Backhouse,* 2 *Vesey & Bea.* 65, 74.  *Earl of Derby* v. *Rivers,* 2 *Vernon,* 72.)

It is not necessary to the validity of the trust that the rents received should be exactly equal to the fulfilment of the purposes of the trust.  If there is a surplus, a trust for such surplus will result to the heirs at law.

If a surplus of rents and profits should hereafter exist, and the direction to accumulate the same (if the provisions of the will should be deemed equivalent to such direction) should be adjudged either partially or wholly void, the valid trusts of the will would nevertheless be protected and enforced.  The rule of law is, that what is vague and void will not vitiate that which is useful.  (*Hopkins* v. *Hopkins, Cas. temp. Talbot,* 44.  *Thellusson* v. *Woodford,* 4 *Ves.* 325, 9.  *Trelawny* v. *Molesworth, Colle's Par. Cas.* 163.  *Doe* v. *Hobson,* 3 *Dow. & Ryl.* 186.  *Doe* v. *Pitcher,* 6 *Taunt.* 359.)  A deed or instrument void in part is only void to that extent.  The void part will not vitiate the good part.  This is the rule of American law and of enlightened jurisprudence in every part of the world.

The 37th section of the statute provides for two cases of accumulation of rents and profits.  The accumulation must be for minors, and must commence within the time allowed for the vesting of future estates, and during the minority of such minors, and must terminate at their majority.  Here all are minors, except Augustus James.  There being one adult interested does not render the direction void.  The statute does not declare that the accumulation must be for the exclu-

sive benefit of minors. The participation of an adult does not vitiate the whole direction.

The power of managing an estate does not include the power of accumulation. The mere increase in value of capital is not an accumulation. A power in trust to exchange and sell, with the view of increasing the capital, is not an accumulation. The statute authorizes the creation of the power to sell lands purchased after the testator's death, if purchased with money belonging to the testator at his death, or with the proceeds of land owned by him at his death. (1 *R. S.* 723, § 7 *to* 75.

. There is no indissoluble connection between the trust term and the power to divide the estate at the expiration of the trust term. The power to divide is valid, and if the trust estate is void, the legal estate will, until the time for division arrives, descend to the heirs at law. The tenants for life take their power of appointment from the will. The trustees are the mere conduits through which the power passes. There is therefore no power here given to the trustees to create a power.

The rights of the remainder-men for life are vested rights, in equity, although they are not legal estates. The testator did not intend to include collateral heirs within the benefits of this trust. The remainders in fee are contingent, and are limited on a term of years. If the term of years is less than the value of one life, then the period of limitation prescribed by section twenty of the statute will not be exceeded; but if the term is not deemed to be shorter than the duration of one life, then these remainders are void.

THE CHANCELLOR. In disposing of the various questions which must necessarily be decided in this cause, I shall not examine them precisely in the order in which they were discussed by either of the counsel at the hearing. For convenience, however, I shall examine several of those questions in the order of the arrangement of the points made, for the closing argument, by the attorney general of the United States, as counsel for the executors and trustees who were complainants in the original suit.

1835.

Hawley
v.
James.

The original bill sets out the will at large; and the complainants pray for such instructions and directions in relation to the questions which have already arisen, and to the various trusts and provisions of the will, as may be necessary to enable the executors and trustees to execute their trust with safety to themselves, under the protection of a decree of this court. It would seem, therefore, that the decision of the questions presented by the original bill must necessarily involve an inquiry as to the validity of the accumulations of the profits or income of the estate, which were evidently contemplated by the testator, and of the ultimate disposition of the trust estate; as well as the validity of the general devise in trust to the executors and trustees. Indeed, I cannot see how it would be possible for the court to make a decree which could enable the trustees, with safety to themselves, to discharge that part of the trust which relates to the investment of the personal property, and the proceeds of the real estate which they are directed to sell, without first deciding the questions as to what part of the trusts and objects for which such investment is directed to be made are valid. This same question arose and was fully considered in the case which was recently before me, upon the will of George Lorillard. In that case the counsel for the heirs at law insisted upon the invalidity of the trusts of the will, and also of the ultimate limitation over of the estate to the descendants of the testator's twelve nephews and nieces, after the expiration of the time limited for the continuance of the trust; and they asked for a decision of their rights in both respects. And I there arrived at the conclusion that both questions must be decided in that suit, to enable the court to decree a legal and proper investment of that part of the trust estate which, by the will of the testator, was to be invested in the purchase of real property in the city of New-York, for the purposes of such will. (*See Lorillard and others* v. *Coster and others, ante* 172.) But if any doubts could exist on this point upon the original bill only, they are removed by the cross bill; which was filed, among other objects, for the express purpose of bringing all these questions before the court for a decision thereon. And as all the necessary parties now in existence, who have either a vested or a contingent interest in the estate of the testator,

1835.

Hawley
v.
James.

under the will or otherwise, which can be affected by the decision of these questions, are now before the court, it is proper that the several points which have been so fully and so ably discussed on both sides, should be decided and finally disposed of in the present suit.

From an examination of the 27th clause of the will, in connection with the other provisions of the same instrument, it is evident the testator intended that the whole of his real and personal estate which was devised to his executors and trustees, and so much of the income thereof as was not wanted for the payment of debts or other purposes of the will, should, either during the continuance of the trust or at the expiration thereof, be invested in real property ; and should be distributed and conveyed as such to those who were entitled to share in the ultimate division of the estate, at the time designated by him for the termination of the trust.     The testator, however, foreseeing that it would be impossible for the trustees to have every thing which might come into their hands in the character of personal property, up to the last moment of the existence of the trust term, actually invested in real estate at the termination of the trust estate, did not intend to require of them an impossibility.     He therefore directs, that so much of the property and income as may be casually remaining in the hands of the trustees, uninvested, shall be distributed as personal estate.     But this would not justify the executors and trustees in keeping any part of the trust fund, or the income thereof, intentionally uninvested, merely that it might be distributed as personalty at the termination of the trust.     Neither can it authorize the court to decree a violation of the testator's manifest intention in this respect, for the purpose of sustaining other provisions of the will which are clearly illegal and void. For all substantial purposes, therefore, this must be considered as a positive direction to convert the personal estate into land, for the objects of the will.     And upon the principles of equitable conversion, the whole trust fund must be considered and treated as real estate, for the purpose of deciding the various questions, which arise under this will, as to the validity of the several dispositions which the testator has directed to be made of the trust property.

Although a court of equity considers money which the testator has directed to be invested in the purchase of land, and land which he has directed to be sold and turned into money, as of that species of property into which he has directed it to be converted, for all the valid purposes of the will, it is only considered in equity as if actually converted, so far as the objects for which the conversion was directed by the testator are legal, and can be carried into effect. But where the object of the conversion fails either wholly or in part, whether such failure be occasioned by the incapacity of the devisee or legatee to take, or because of the illegality of the disposition attempted to be made of the converted property, or of any particular estate or interest in such property, or from any other cause, there will be a resulting use, or trust, or estate in the property, or in so much thereof as is not legally or effectually disposed of, in favor of those who would have been entitled to such property if the conversion thereof had not been directed by the will. (*See Leigh & Dalz. Equit. Conv. 93, and the cases there referred to.*) If, in this case, therefore, any of the purposes for which the conversion of the testator's personal property into real estate is directed to be made are legal and can be carried into effect, this court must determine the questions as to the validity of all the other estates and interests which the testator has attempted to create in the converted property; so that proper limitations may be inserted in the conveyances to be taken by the trustees, securing to all persons interested in the trust estate, either by way of resulting trust, or otherwise, their legal and equitable rights in the property to be purchased by the executors and trustees.

In connection with this subject, it may be proper here to remark, that the general power in trust, given to the executors and trustees, to sell or exchange portions of the real estate in Albany, New-York or Syracuse, in their discretion, cannot alter the construction of the will in reference to the provisions of the revised statutes relative to the nature and qualities of estates in real property and the alienation thereof. The mere exchange of one piece of property for another, by a trustee, under a valid power in trust, is not considered as an alienation of the estate or interest of the cestui que trust, or person ben

eficially interested in the trust estate. The rules of law on the subject of rendering estates inalienable, have reference to the substance, and not merely to the shadow. And for every substantial purpose, the land received in exchange for that of which the testator died seized, can be considered in no other light than as the same estate. A mere power to exchange lands, whether such exchange is made directly or by means of a sale and new purchase, is not a power to alien the estate, within the intent and meaning of the provisions of the revised statutes on this subject. As well might it be contended that a bequest of personal property was not rendered inalienable, because the trustee who held it for the benefit of another had the right to loan it out from time to time, and to receive other money, when it became payable, instead of that which was lent; although he had no right to dispose of the fund itself. The money received from the borrower is seldom, if ever, the same that was lent, yet for every legal and substantial purpose it is the same fund or property.

The widow's deed of relinquishment, the notice given to the trustees, the receipt by her of a share of the rents and profits of the estate devised to the executors in trust as and for her dower, and the actual receipt of a sum of money for her dower in the homestead under the decree in the partition suit, in which suit the heirs at law of the testator were parties, all of which took place within the year from the death of her husband, constituted a valid election by the widow to take her dower in the real estate, of which her husband died seized, instead of the devises and bequests in her favor contained in the will. If the legal estate was in the executors and trustees, the deed and notice, together with the receipt from them of a portion of the rents and profits of the trust estate, were certainly equivalent to an actual entry on the lands devised to them, or the commencement of proceedings for the recovery or assignment of her dower, as required by the fourteenth section of the title of the revised statutes relative to estates in dower. (1 *R. S.* 752.) And the proceedings and decree in the partition suit constituted an actual recovery and assignment of her dower in that portion of the estate, and was a valid election as to the heirs at law of the testator, even if the whole devise

1835.

Hawley
v.
James.

in trust is void. The object of the legislature undoubtedly was to compel the widow to make her election to take her dower, instead of the jointure or other provision made in lieu thereof, within a limited period after the death of the husband; and by some open and notorious act which could not be misunderstood. And where she gives a written notice of such election, to the person who is in the possession of the land in which she is entitled to dower, or who is in possession of the rents and profits thereof claiming title to the land, and such person thereupon admits her right and voluntarily pays her a part of the rents and profits of the premises as and for her dower therein, it must, in this court at least, be considered as an assignment of her dower, or an entry on the lands, within the intent and meaning of this statutory provision.

Neither is it necessary, by the statute, that the widow should make an entry upon, or commence proceedings for the recovery or assignment of her dower in every separate and distinct parcel of the lands in which she is entitled to claim dower, in order to constitute a valid election, on her part, to reject the provision made by her husband in lieu of such dower. But it will be sufficient, where she has taken no part of such provision made for her in lieu of dower, if she actually commences proceedings within the year, for the recovery or assignment of her dower in any part of the lands as to which the right of election exists, or enters upon any part of such lands, claiming her dower therein. The actual recovery and assignment of her dower in the homestead, within the year, under the decree in the partition suit, was therefore of itself sufficient to determine the election of the widow, in this case, to take her dower in the whole of the testator's estate as to which he died seized of such an interest as would entitle her to dower therein. It was also an effectual bar to any claim which she might afterwards make to any part of the provisions of the will in her favor, which were intended to be in lieu of her dower.

The legacy for the support and education of the Gourlay children was one in which the widow had no personal interest; and was not therefore a pecuniary or other provision made for her by the will, which would have barred her right of dower in the lands of her husband, if she had consented to accept and

execute the trusts specified in the will. To constitute a case of election under the revised statutes, the jointure, or other provision made for the wife in lieu of dower, must be one in which she is to have some beneficial interest. (1 *R. S.* 741, § 11, 12, 13.) A mere power in trust for the sole benefit of others is not sufficient; although the husband has an undoubted right to make the interest of the cestui que trust, under the devise of a trust power, dependant upon the condition that his widow shall elect to take a provision made for her by the will in lieu of her dower. He may make it to depend upon the condition that she relinquishes or releases her right of dower absolutely and without any equivalent. The devise of the mansion house and appurtenances, although coupled with a power to appoint the fee after her death, was intended mainly as a provision for herself in lieu of dower. And as to that I arrived at the conclusion, though with some hesitation, that the interest of her descendants under the trust power, was intended by the testator to be made dependant upon the condition that she accepted of the provisions made for her by the will, in lieu of her dower. But under the fifth clause of the will, the children of Mrs. Gourlay, the deceased sister, appear to have been the sole objects of the testator's bounty, in reference to the $3000 for their maintenance, education and advancement. And the power of appointment given to the wife, by that clause of the will, like that given to the executors in case of her death, by the 14th clause, is a mere naked imperative trust power, which she is bound to execute if she accepts the trust.[a] Although the intention of the testator in this part of the will is not perfectly clear, I have arrived at the conclusion that he did not intend to make the provision, for the support and education of these orphan children, dependant upon the condition of the widow's relinquishing her right of dower in his estate. The amount of that legacy must therefore be paid over to Mrs. James, as the trustee for these children, according to the directions of the will, if she is willing to accept and execute the trust. And if she declines the trust, the legatees interested in the fund may apply to this court for the appointment of a new

(a) *Blakeney* v. *Blakeney,* 6 *Sim. Rep.* 52.

1835.

Hawley
v.
James.

trustee, to execute the power of appointment during the life of the widow. If any part of the legacy remains unexpended at the time of her death, the executors and trustees must execute the power after that time, according to the direction contained in the 14th clause of the will.

The personal property specifically bequeathed to the widow, in lieu of dower, did not pass to the executors and trustees, under the 18th clause of the will, as a part of the trust fund, upon her election to claim her dower in the estate; it being expressly excluded by the terms of the trust clause. But the legal title to that portion of the testator's estate vests in them, by virtue of their office, as executors; to be applied or distributed as a part of his personal property not bequeathed or disposed of by the will. As such it constitutes the primary fund for the payment of debts and legacies, unless the testator has legally and effectually charged such debts and legacies upon the income of the trust fund exclusively, and with the intention of exempting, not only the principal of that fund, but also any surplus of his estate as to which he had not made any disposition by his will, from the payment of any part thereof. If the charging of the debts of the testator upon the future income of the estate only, and by anticipation thereof, as directed by the 15th clause of the will, was a violation of the spirit of the restrictions contained in the revised statutes against the accumulation of rents and profits of real estate, or of the income of personal property, then no legal provision has been made by the will for the payment of the debts out of a particular fund, and the portion of the testator's personal property as to which he died intestate must first be applied for that purpose. The conclusions at which I have arrived on other questions in this cause will render it unnecessary for me to decide the question whether the provision in this will for the payment of debts can be sustained.

The personal estate of the decedent as to which he died intestate being the primary fund for the payment of his debts, a direction to pay the debts out of the income of the real estate does not discharge the primary fund, unless it is evident from the whole will, taken together, that the testator contemplated the event of his dying intestate as to some of his per-

tonal property, and intended to exempt the same from the payment of his debts, for the benefit of those who would be entitled thereto under the statute as to distributions. The mere charging of a secondary fund with the payment of debts does not exempt the primary fund, or postpone its application, unless the intention of the testator to exonerate it for the benefit of his residuary legatee, or some other person, plainly appears. (*Lowndes on Leg.* 329, *and cases there referred to.*) Most of the cases in which the primary fund has been considered as exonerated, by a charge of the debts upon the real estate, were cases in which the primary fund was actually bequeathed, either as a specific legacy or as a general residue; and where it was evident the testator intended that the residuary legatee should take such general residue free from the charge of his debts. But even where the intention of the testator to exonerate a residuary fund for the benefit of the legatee was perfectly manifest, it has been held that a lapse of the residuary bequest, by the death of the legatee, restored the residuary fund to its primary liability for the payment of debts. (*See N'oel* v. *Lord Henley*, 7 *Price's Rep.* 241; *Waring* v. *Ward*, 5 *Ves. Rep.* 670.) In the present case the testator evidently intended to exempt his wife's specific legacy, given in lieu of her dower, from the payment of his debts. But that exoneration was clearly intended for her benefit only, under the supposition that she would take the provision, made for her by the will, in lieu of dower. And there is nothing from which I can infer that the testator intended to exonerate any personal property, as to which he might happen to die intestate, from the payment of his debts, as the primary fund appropriated by the general principles of law for that purpose. The specific articles of personal property bequeathed to the widow in lieu of dower, must therefore be appropriated to the payment of debts, before any resort can be had, either to the rents of the real estate, or to the principal of the personal property legally bequeathed. The same principle is also applicable to any other part of the testator's personal estate, or the income thereof, as to which he is to be considered as having died intestate, in consequence of the illegality of

the bequest, or otherwise. And such portions of the personalty must be applied to the payment of debts, before any resort can be had to the principal of the personal property legally disposed of by the will, or to the rents and profits of the real estate for that purpose.

Two or three questions arise as to the Syracuse lots claimed by Augustus James as a gift from his father in his lifetime. The expression contained in the letter to Burnet, that the writer had *charged and assigned* that property to Augustus, does not necessarily imply that the testator had agreed or determined to convey the lots to him absolutely and unconditionally, without reserving to himself the right to claim the price at which he had charged them. And the fact that the testator afterwards included these lots in the inventory of his estate, at the sum of $1400, seems to strengthen the impression that he intended to reserve to himself the right to claim payment of that amount, if he should think proper to do so, before he gave to his son a conveyance of the property. If I should arrive at the conclusion that Augustus is entitled to a conveyance of these lots, either from the trustees or the heirs at law, without paying the $1400, and it should be determined that a part of the real and personal estate of the testator is not legally and effectually disposed of by the will, the question will then arise, whether the value of the lots at the time of the gift, is not to be brought into hotchpot in the distribution of the real or personal estate as to which there is an intestacy. Under the English statute of distributions, of which our former statute on that subject was nearly a transcript, it has been decided that the provisions as to advancements and portions only apply to an actual intestacy of the parent; and that no collation is to take place where there is a will, although there is a surplus of the testator's estate which is undisposed of by such will. It was so decreed by Sir John Trevor, the master of the rolls, in the case of *Vachell* v. *Jefferey*, (*Prec. in Ch.* 170,) a few years after the passing of the statute. And Sir William Grant expressed an opinion to the same effect in the more recent case of *Walton* v. *Walton*, (14 *Ves. Rep.* 324.) But it is somewhat doubtful whether the same construction can be given to the provision on this sub-

ject contained in the sixth chapter of the second part of the revised statutes; as the revisors have substituted the word *deceased* for *intestate,* which was used in the former statute, and, as appears from their note to the previous sections, for the express purpose of providing for a case where there is a will which does not bequeath the estate. (2 *R. S.* 96, § 75, 76 ; *Rev. Notes to ch. 6, pt. 2, p. 65.*) As the legislature, however, has used the word *intestate* in the corresponding sections of the chapter of the revised statutes relative to the descent of real property, (1 *R. S.* 754, § 23, 24,) which sections were introduced during the passage of that chapter through the two houses, it is still left doubtful what construction should be given to these several provisions taken together.[a] And if these Syracuse lots are in any way connected with the copartnership with Burnet, the profits of which are bequeathed to Augustus, a question of election may also arise under the provision of the will. I therefore prefer to have a new argument of those questions, if it shall be necessary to decide them in this cause. And I shall reserve the decision of the several questions arising out of this claim of Augustus to the Syracuse lots, until all the facts in relation to the alleged gift of those lots, and the value of the lots at the time of the gift, are more fully ascertained by the report of a master.

The lands as to which the widow's right of dower is questioned by the executors and trustees, or submitted to the decision of the court, have been considered by the counsel upon the argument as belonging to three distinct classes. The first class is composed of the Albany City Lottery lots, the consideration for which was fully paid by the decedent in his lifetime, but the legal title still remained in the city corporation at the time of his death, and was subsequently conveyed to the executors and trustees. The second consists of several parcels of land owned by the decedent as a tenant in common with M'Bride and the Townsends ; the share of the decedent being the undivided five eighths thereof. The lands belonging to this class were, in June, 1825, conveyed by the several tenants in common, and their wives, to M. D. Burnet and G.

(a) *See Vance* v. *Huling,* 2 *Yerger's Rep.* 135.

1835.

Hawley
v.
James.

Hawley as trustees, for the sole purpose of enabling one of the trustees to execute conveyances to purchasers of such of the lands as had been or might thereafter be contracted to be sold, discharged of all claims of dower therein; and to avoid the embarrassments and difficulties which might arise from having any part of the legal title to the lands vested in infant heirs, upon the death of one or more of the tenants in common, or their assigns. And the third class consists of several lots conveyed by Safford to Burnet, in 1825, the consideration of which was paid by the decedent and M'Bride and the Townsends. The share of the purchase money paid by the decedent upon the purchase of these lots was five-eighths. And since his death, the legal estate in an undivided share of the premises, to that extent, has been conveyed to the executors and trustees.

It is perfectly well settled in England that a wife is not entitled to dower in lands in which the husband had a mere equitable interest as cestui que trust. (4 *Kent's Com.* 2 ed. 43. *Park on Dower,* 124.) Such was also unquestionably the law of this state previous to the revised statutes; although the settlement of the rule in that way was clearly a departure from the principle by which courts of equity are governed in analogous cases. The endowment of the wife of a mortgagor, subject to the right of the mortgagee, can hardly be said to be an exception to the rule, in this state; because here the mortgagor is treated as the legal owner of the land, and the mortgagee is considered as having a mere lien thereon for the payment of his debt. This being the case, the right of the widow to dower in the equity of redemption follows of course, as a legal and not merely as an equitable right. And for this reason her dower is recoverable by an action in a court of law, (*Collins* v. *Torry,* 7 *John. Rep.* 278.) It is different where the husband has a mere equitable estate in the land, either by the operation of a resulting trust or otherwise. In *Ambrose* v. *Ambrose,* (1 *P. Wms. Rep.* 321,) where the purchase money of the premises had been paid by the husband, and a conveyance taken in the name of a third person, for the benefit of the husband, but without any written declaration of trust having been executed in the lifetime of the latter, Lord Cow-

per considered the wife as having no legal claim to dower in the resulting trust; but he recommended to the heirs to let her come in for her dower in the trust estate. That case does not appear to be distinguishable from the case of the Syracuse lands purchased in the name of Burnet. I therefore conclude, that independent of the new principle hereafter mentioned as having been introduced into the revised statutes, the widow would not have been entitled to equitable dower in the lands comprised in the first and third classes.

The legislature, however, in the recent revision of the laws, have distinctly adopted the principle of permitting the widow to receive equitable dower in the descendible equitable interests of the husband, in real estate, which belonged to him at the time of his death. In the case of lands purchased under execution, if the purchaser dies during the fifteen months allowed for redemption, or before the actual conveyance of the land by the sheriff, the statute directs the conveyance to be made to the executors or administrators of the decedent, in trust for his heirs at law, but subject to the dower of his widow, if there be one. (2 *R. S.* 374, § 63, 64.) So in the case of a contract for the purchase of land, where the husband dies seized of an inheritable interest in the premises, before a conveyance of the legal estate has been given, the right of the widow to equitable dower therein, subject to the lien of the vendor for the unpaid purchase money, is distinctly recognized and declared by the legislature, in that part of the revised statutes which authorizes a sale of the decedent's interest in the premises, under a surrogate's order, for the payment of debts. (2 *R. S.* 112, § 71, 72.) This principle of giving to the widow her equitable dower in lands in which the husband had an inheritable interest at the time of his death, being thus adopted by the legislature, it is the duty of this court to carry it into effect, by giving to the widows of those who have died since the revised statues went into effect, their equitable dower in such inheritable interests of their husbands, whenever it can be done without interfering with the rights of bona fide purchasers from those in whom the legal title was vested. This principle of the revised statutes, however, extends only to those cases in which the equitable interest of

1835.

Hawley
v.
James.

the husband in his trust property continues down to the time of his death, so as to be inheritable by his heirs. And if he aliens it in his lifetime, the widow will not be entitled to dower therein, as against the grantee. In the present case, as the husband died since the revised statutes whent into effect, the widow was equitably entitled to dower in the lands, belonging to the first and third classes, of which he was seized of an inheritable interest.

The equitable right of the widow to dower in the proceeds of the land conveyed to Burnet and Hawley, depends upon a different principle. The object of the conveyance in that case was to vest the legal title to the land in the trustees, and the heirs at law of the survivor of them, for the purpose of creating a perpetual trust, of so much of the premises as should remain undisposed of or unconveyed from time to time, for the more convenient vesting of the legal title to such parts of the premises as should be contracted to be sold by the grantors, or their heirs and assigns ; but which trust could be determined at any time, by a joint conveyance of all the persons beneficially interested in the lands remaining unsold when such joint conveyance should be executed. The counsel for the widow is under a misapprehension, in supposing that the deed to Burnet and Hawley is a mere power of attorney, which was revoked by the death of Mr. James. He has probably fallen into this error in consequence of the recital in the deed, that the grantors had appointed Burnet their agent, and attorney in fact, to manage the property for their use, and to contract for the sale thereof in parcels, subject to such orders as he might from time to time receive from them. But that appointment of Burnet as the agent to contract for the sale of the lands, in the name of and for the benefit of the grantors, and to manage the trust estate for their use until sold, was entirely distinct from the conveyance of the legal title in such lands, to Burnet and Hawley in trust. And if such appointment was not, in fact, contained in a distinct instrument, the recital thereof in the trust deed is at most but the legal evidence of the fact that they had appointed him their agent and attorney for those purposes. That undoubtedly was a mere power of attorney, which the persons granting the pow-

1835.

Hawley
v.
James.

or might revoke at any time; and which probably was revoked, as to William James, by his death. It might be renewed, however, by those who succeeded to his equitable estate in the premises. And whether renewed or not, it does not affect the trusts created by the deed; as it still is competent for those who have succeeded to the rights of the decedent, to join with the survivors in making a contract of sale, under the power in trust, contained in the will, to sell or exchange portions of the testator's estate. In other words, the appointment of Burnet as agent to manage the premises, and to contract for the sale of portions thereof from time to time, subject to such instructions as he might receive from the real owners of the property, was a mere power of attorney, and was revocable by them at any time, without interfering in any manner with the trust as to the legal title; which was vested in the trustees for the purpose of having such title conveyed to those who might contract for the purchase of parts of the premises, whether such contracts were executed by the owners of the estate personally, or through the medium of such agent, or any other agent or attorney lawfully appointed. There was no legal objection to the creation of such a trust, previous to the adoption of the revised statutes. And I do not at present discover any legal objection to such a conveyance, as a mere power in trust, even if the trust deed had been executed since the revised statutes went into operation. (*See* 1 *R. S.* 729, § 58.) In the latter case, however, the legal estate would remain in the grantors until the execution of the power; and the widow would take her dower in the land, subject to be divested by the execution of the power, in favor of a purchaser by contract from the grantors, or their heirs or devisees.

I do not consider it important to inquire, whether the legal estate in the premises remained in Burnet and Hawley at the death of the testator, coupled with the power in trust, or was vested in the grantors, subject to be divested by the execution of the trust power, by the operation of the 47th section of the article of the revised statutes relative to uses and trusts. (1 *R. S.* 727, § 47, 48.) For in either case, the widow's equitable right to dower in such portions of the premises, or the

1835.

Hawley
v.
James.

proceeds thereof, as had not been contracted to be sold, would still be the same. The object of the parties to this trust deed, was not to deprive the wives of the grantors of their equitable right to dower in such portions of the estate as should remain unsold at the deaths of their respective husbands. But the real object of the grantors undoubtedly was, to place the legal estate in such a situation that the premises might be subvided into lots, and sold for their joint benefit, not only during their joint lives but afterwards; and that perfect titles might be made to the purchasers, without the trouble and expense of obtaining a separate and distinct conveyance to each purchaser from the grantors, or their heirs or assigns, and from their several wives or widows. The purchasers, therefore, under the joint contracts of the several persons beneficially interested in the trust estate, from time to time, whether such contracts are made by such persons for themselves, or through the instrumentality of an agent or attorney, will, by the conveyances under the power in trust contained in the deed to Burnet and Hawley, obtain a perfect title to their respective lots, free from any claim of dower therein. As the court of chancery considers that which is agreed to be done as done, upon the principles of equitable conversion, the purchase money of the lands contracted to be sold during the lifetime of the testator, whether paid before his death, or afterwards, is a part of his personal estate. And so far as it is not legally bequeathed by his will, it must be distributed to his widow and next of kin as personal assets. (*Lawes* v. *Bennet*, 1 *Cox's Cas.* 167. *Baden* v. *Countess of Pembroke*, 2 *Vern. Rep.* 215. *Bubb's case*, *Freeman's Ch. Rep.* 38. *Sugd. Law of Vend.*, *8th Lond. ed.* 163.) The interest of the testator in the lands contracted to be sold, therefore, was not an estate of inheritance descendible to his heirs, and the widow has no equitable right of dower in that part of the premises. But the executors may claim a specific performance of the contract, and an execution of the conveyances under the trust power, for the benefit of those who are entitled to share in the testator's personal estate. (*a*) As to the residue of the trust premises, in

(*a*) See *Muldrow's Ex'rs* v. *Muldrow's Heirs*, 2 *Dana's Rep.* 386; *Prytharch* v. *Havard*, 6 *Simons' Rep.* 9.

1835.

Hawley
v.
James.

which the husband had an inheritable interest at the time of his death, the widow is equitably entitled to one third of the five eighths of the net income thereof during her life, as and for her dower. And if the premises shall hereafter be sold, and conveyed to the purchasers under the power contained in the trust deed, she will be entitled to the same portion of the interest of the purchase money, and for the same time, or to a gross sum in lieu thereof.

The whole of the legacy given to the widow, by the fourth clause of the will, for her own support and for the education and support of the children of the testator and his wife, became lapsed by the refusal of the widow to take the devise and bequests to her in lieu of dower. It is very obvious that the testator intended to give this annuity to the wife for her own benefit, to enable her to keep up the family establishment in the mansion house, which was also devised to her for life, together with the furniture ; knowing that if she had the means, her children would not be suffered to want. And also knowing that if she elected to take her dower in his estate, instead of the provision he had made for her by the will, she would have more than was necessary to keep up her family establishment, living "respectably, but at the same time prudently and circumspectly," and much more than he appears to have supposed necessary for that purpose. In the recent case of *Benson* v. *Whittam*, (5 *Simons' R.* 22,) where the testator bequeathed the dividends of certain stock in the Bank of England to his brother A. B., to enable him to assist such of the children of his deceased brother F. B. as he might find deserving of encouragement, the vice chancellor, Sir Lancelot Shadwell, held that this bequest was not intended as a mere power of appointment, and that no trust was created for the children of the deceased brother. That appears to be a much stronger case than the present, as it is perfectly manifest here that the testator intended his widow should take a beneficial interest, in a part of the annuity, at least, and the whole is given to her as a compensation for her dower in his real estate. And there is no principle upon which I can declare a trust in favor of the children of Mrs. James as to a

Vol. V.　　　　　58

part only of this annuity, and apportion the annuity between her and them, without doing violence to the testator's intention in making this bequest.

The trust term devised to the executors and trustees cannot continue, so as to retain the legal estate in them, a moment longer than is necessary to enable the trustees to perform the objects of the trusts, so far as the same are valid and can be legally carried into effect. For however long a period the estate may be nominally devised to them, by the terms of the will, whenever the legitimate purposes for which an express trust has been created cease, or have been accomplished, the estate of the trustees must terminate, under the express provision of the statute. (1 *R. S.* 730, § 67.) And if there are any valid powers in trust, contained in this will, that would not of themselves have authorized the creation of a trust estate, under the provisions of the 55th section of the article of the revised statutes relative to uses and trusts, but which remain unexecuted at the termination of the trust estate which is legally vested in the trustees, they may still be executed, as powers in trust, for the benefit of those who are interested in the execution of such powers. Although some of the objects for which this trust term was created, and some of the contingent remainders and future interests limited thereon, may be illegal or invalid, if any of the purposes for which the trust estate was created are valid, and will continue during the term, the trust estate must continue in the executors and trustees for the same period. Every future estate in real property, or future interest in personal property, which if valid would have the effect to suspend the absolute power of alienation of the one, or the absolute ownership of the other, for a longer period than is allowed by law, is absolutely void in its creation. (1 *R. S.* 723, § 14. *Id.* 773, § 1, 2.) And every disposition, made by this will, of an estate or interest in the rents, profits, or income of the testator's real or personal property which may accrue and be received after his death, whether such estate or interest in the rents and profits or income is to vest in possession during the continuance of the trust term, or to take effect at or after the termination thereof, must be considered and treated as a future estate, and subject to this rule.

(1 *R. S.* 725, § 36.) Such of the trusts of the will, there-fore, as would if valid have the effect to render the estate in-alienable, for a longer period than is allowed by the article of the revised statutes relative to the creation and division of es-tates, (1 *R. S.* 721, § 15, 16,) and every remainder limited upon the trust term, which would have that effect, must be consider-ed as absolutely void and inoperative, in determining the ques-tion as to the validity of the devise of the trust term to the exec-utors and trustees, or as to the validity of the other trusts of the will. But as it is the duty of the court to carry into effect the intent of the testator, so far as it can be ascertained from an examination of the will itself in connection with the situa-tion of his property at the time of the making thereof, and so far as the intent thus ascertained is consistent with the rules of law, the invalidity of any particular trust, interest, or limita-tion created by the will, cannot have the effect to destroy the trusts and limitations which are otherwise valid; unless in-deed the latter are so mixed up with those which are illegal and void, that it is impossible to sustain the one without giv-ing effect to the other. Upon these principles, I will now proceed to determine the question as to the validity of the trust term itself, as a devise of the legal estate to the trustees and executors. And also the several questions as to the va-lidity of the various devises and bequests, for the satisfaction of which the rents and profits and income of the estate are to be received and applied; and as to the validity of the several limitations over, after the expiration of the time prescribed by the testator for the continuance of the trust term.

It is insisted, in behalf of William and Henry James and the widow of the testator, that a trust estate for a term in gross, or during the minorities of three or more persons in being at the creation of the trust, cannot legally be granted or devised to a trustee; and that to render any trust term valid, the con-tinuance of the term must be made absolutely dependant up-on the lives of persons in being at the creation of the estate, and that it must be determinable at or before the death of two such persons. This, I apprehend, will depend upon the ques-tion whether such trust estate, for a term in gross, or dur-ing minorities, can be created, for any of the purposes author-

ized by the fifty-fith section of the article of the revised stat-utes relative to uses and trusts, which will not necessarily suspend the power of alienation, of an absolute fee in posses-sion in the testator's property, for a longer period than is al-lowed by law. The effect of the construction, of the fif-teenth section of the title of the revised statutes relative to the creation and division of estates, which is thus contended for, would be to deprive a parent of the power of providing for the support and education of a numerous family, during the minorities of the younger children, by means of a trust to receive the rents and profits of the estate, and apply them to the support and education of his family, according to the necessities of each, until the children all arrived at the age of twenty-one. Such a provision for the support and education of a family, out of the income of a small estate, is frequently made by will, and does not appear to be inconsistent with any sound principle of public policy. Indeed, it may frequently be advisable to create such a trust, where the income of the property is small, for the purpose of keeping together a fami-ly of minor children, and distributing the rents and profits among them in such a manner that the greater wants of some of the children may be provided for out of such rents and profits as, upon an equal division, would go to those who might need them less. Although such a trust term might be inalienable, under the restrictions contained in the 63d and 65th sections of the title last referred to, it could in no event suspend the power of alienation for a longer time than twen-ty-one years, and the usual period of gestation if there was a posthumous child. This is much less than the probable con-tinuance of the longest of any two lives under the age of twenty-one, according to the ordinary duration of human life ; and even less than the probable duration of any one life un-der that age, in any part of this state, according to the tables of mortality. (See *Meyer on Life Ins.* 85, *Table* 17.) The principle of permitting a reasonable suspense of the power of alienation, in case of the actual minorities of persons contin-gently interested in the estate, is also recognized by the legis-lature in the recent revision. The 63d section of the articles relative to uses and trusts presents the only legal obstacle

which can render a trust term, determinable at the expiration of any number of minorities in being, inalienable. And as the 15th section of the revised statutes, before referred to, does not prohibit the creation of a trust term, which is not made absolutely determinable upon the death of any two specified persons, I conclude, although with some hesitation, that such a trust term, if it is so limited that it can in no event continue longer than the actual minority of two or more infants in being at the creation of such estate, and who have an interest therein, either vested or contingent, is not necessarily invalid. If I am right in this, some of the contingent dispositions, of the rents and profits of the estate during the trust term, which are to take effect and vest in possession in those who are entitled to the beneficial interest therein before the time appointed by the testator for the termination of the trust estate, may be sustained. But if I am wrong in the conclusion at which I have arrived on this point, then every disposition of the rents and profits or income of the estate, except those which provide for the raising of portions for persons in being at the death of the testator, or the payment of other sums in gross to creditors, annuitants, or other legatees, are absolutely void by the provisions of the 14th section of the statute; being future interests in rents and profits, in the nature of future estates. (1 *R. S.* 723, § 14. *Idem,* 725, § 36.)

An express trust may be created, under the second subdivision of the 55th section of the article relative to uses and trusts, to lease lands and receive the rents and profits for the payment of legacies, or any charge on such lands. (1 *R. S.* 728.) An annuity is a legacy; and when payable out of the rents and profits of land, it is a charge upon the land. The trust to pay the annuitants out of the rents and profits and income of the estate is, therefore, sufficient to sustain the trust term in the executors and trustees until the youngest child or grand-child arrives at the age of twenty-one, if any of the annuitants so long live. As the testator has charged the rents and profits of every portion of the estate with the payment of the legacies and annuities, and conveyed the whole legal estate to the trustees, to enable them to receive the rents and profits and make such payments, the legal and equitable

1835.

Hawley
v.
James.

title to the whole premises is vested in the trustees during the trust term, if the legitimate objects of the trust continue so long, subject only to the execution of the trust. And the court of chancery has not the power to divest the legal title, as to any portion of the estate, for the purpose of vesting it in the heirs at law. (*See* 1 *R. S.* 729, § 60.) But if there is any surplus of the rents and profits, after satisfying the annuities and other sums legally charged thereon, there is a resulting trust as to such surplus, either in favor of the persons presumptively entitled to the next eventual estate, or in favor of the heirs at law of the testator ; which question I will hereafter consider.

The estate devised to the executors and trustees, in this case, was a term of years, in the testator's real property of which he was seized at the time of his death, and in the real property into which he directed the personalty to be converted, for the term of twenty years and ten days ; the youngest grand-child who was living at the date of the will being one year old ten days after the death of the testator. In ordinary cases of a trust for the payment of debts and legacies, or other charges upon the estate, to continue until a child or grand-child shall arrive at the age of twenty-one, the trust estate will not be determined by the death of the child or grand-child under age ; but will continue until the time when he would have arrived at that age if he had lived. (*Sweet* v. *Beal, Godolphin,* 388 ; *Boraston's case,* 3 *Coke's Rep.* 21, *a ; and per Sir J. Jekyl, in Lomax* v. *Holmeden,* 3 *P. Wm.* 177 ; *Stanley* v. *Stanley,* 16 *Ves. Rep.* 506.) But in this case it is evident, from the language used by the testator, that he contemplated the possibility that his youngest children or grand-children might die under age ; and that he intended the trust estate should cease whenever the minorities of the children or grand-children should terminate, either by death or lapse of time. The language used by him does not, in terms, provide for the possible contingency of the death of the youngest child or grand-child under twenty-one, after the others have arrived at full age. But in that event the will must be carried into effect according to the manifest intention of the testator ; and the trust estate will cease at the death of the last who shall die under age, after the survivors have all

attained their majority. It is therefore not an estate for years determinable on lives, nor an absolute term ; but it is an estate for years, for twenty years and ten days, determinable sooner if the minorities shall cease before the expiration of that time. And vested remainders which are limited upon the trust term, except so far as they are to be composed of the rents and profits or income of the estate, illegally accumulated for that purpose during the term, are valid ; whether such remainders are in fee or for life only.

The 20th section, of the title of the revised statutes so often referred to, prohibits the creation of a contingent remainder upon a term of years, unless the nature of the contingency upon which it is limited is such that the remainder *must vest in interest*, during the continuance of not more than two lives in being at the creation of the remainder, or at the termination of such lives. (1 *R. S.* 724.) But this provision of the revised statutes cannot be construed to mean that no contingent remainder shall be limited on a term of years, unless it is so limited as to render it certain that the remainder must, in any event, become vested in interest. Upon such a construction of the 20th section of the statute, the next section is not only useless but absurd. The 21st section provides that no estate for life shall be limited as a remainder on a term of years, except to a person in being at the creation of such estate. (1 *R. S.* 724.) A remainder to a person not in being must always be contingent until his birth ; and until that event it cannot be known that it will ever vest in interest, in whatever form it may be limited. Even if it is to the general heirs of a person in being at the creation of the remainder, it may never become vested, as such person may die without an heir. The fair construction of these two sections of the statute taken together, therefore, is, that a contingent remainder upon a term of years must be so limited that it will necessarily vest in interest within the period required by the 20th section, if it ever becomes thus vested. And that a contingent remainder for life, to a person not in being, shall not be limited on a term of years, although it is so limited that it will become vested within that period, if ever. Neither does this 20th section of the statute render it absolutely necessary that

the term of years, on which a contingent remainder is limited, should be made determinable upon lives. But such remainder may be limited upon a term in gross, if the remainder itself is so limited that it must necessarily become *vested in interest*, if ever, during, or at the expiration of, not more than two specified or ascertained lives, in being at the creation of such remainder. Thus, upon a devise to A. for fifty years, as an absolute term, remainder to B. for life if he should marry C., and remainder in fee to the children of such marriage : The remainder to B. upon condition of his marriage with C. is contingent, but must necessarily vest in interest, if ever, during the period of his own life, although it will never vest in possession if he dies within the term. And the ultimate remainder in fee to the children of the marriage must also vest in interest, if ever, within the period of one life in being at the death of the testator. The first child of the marriage would, upon its birth, take a vested interest in the ultimate remainder in fee, subject to open and let in after-born children. And it would be no objection to the validity of the contingent remainders to the children, in the case supposed, that a child might not be born in the lifetime of the father, although begotten before his death, and that it might be brought into existence by the cæsarean operation, even after the death of the mother. For, upon a limitation of a future estate to children, or heirs, or issue, a posthumous child, if born alive, is considered as in existence, and capable of taking a vested interest for its own benefit, in the same manner as if born and living at the death of its parents. (1 *R. S.* 725, § 30. *Marsellis* v. *Thalhimer*, 2 *Paige's Rep.* 35.)

Applying these principles to the case under consideration, the life estates to Augustus James, and to his six brothers and sisters, and to Mary Ann King and Robert James, in the eight and a half shares of the estate devised to them respectively, exclusive of any accumulation of rents and profits or income, are valid as contingent remainders limited on a term of years. For the life estate in the share of each must necessarily vest in interest, and in possession also, if ever, during the continuance of one specified life in being at the death of the testator ; to wit, the life of the child or grand-child to whom the remain-

der in each share is given by the 37th clause of the will. And the $10,000 legacy to James King, which is to be carved out of his daughter's twelfth of the estate, is also valid.

If these first remainders for life, to the seven children and two grand-children, in the eight and a half shares, vest in possession at the expiration of the trust, by the execution of the trust power contained in the 40th clause of the will, the contingent remainders in fee, in the shares which become thus vested, which by the 44th clause of the will are in that event devised to the descendants or special heirs of the first takers respectively, are also valid. For it is evident that the ultimate remainders, in the respective shares of these tenants for life, must necessarily become vested in possession, as well as in interest, at the expiration of a single specified life in being at the death of the testator. To illustrate this point more clearly : If Mrs. B., the daughter of the testator, and who was in being at his death, survives until the expiration of the trust term, and becomes entitled, by the decision of the trustees, to one twelfth of the property for life, the ultimate remainder in fee in that twelfth, to her decendants, or special heirs, must necessarily become vested in possession, as well as in interest, by her death ; and of course, at the termination of a single life in being at the creation of such remainder. For, where the precedent or particular estate is given to several persons, as tenants in common, the remainders limited upon the estates of a part of the tenants in common may fail, without affecting the remainders limited upon the estates of the others. (*Corn. on Rem.* 193.)

The several contingent estates or interests, which by the 39th clause of the will are limited to the heirs and representatives of the testator's children, or grand-children, who may happen to die during the continuance of the trust, are contingent remainders created on a term of years, within the meaning and intent of the 20th section of the statute. By the common law, a remainder could not be limited on a base or determinable fee which was vested in interest. And such a limitation of a future estate could only be good as an executory devise. But where the determinable fee was contingent and

might never vest in interest, a remainder might be limited upon the precedent estate, to vest as a remainder in the event of the base fee never taking effect. (*Crump* v. *Norwood,* 7 *Taunt. Rep.* 362. *Doe, ex dem. Herbert,* v. *Selby,* 2 *Barn. & Cress. Rep.* 926.) This case, therefore, comes within that principle, if the previous devise to the children and grand-children for life are contingent and not vested remainders. The revised statutes, however, have given a much broader construction to the term remainder ; so that every future estate in lands which is dependant upon a precedent estate, whether it is limited to take effect in case of the failure of a contingent or a vested fee, or otherwise, must be deemed a remainder, in giving a construction to the several provisions of this title of the revised statutes. (*See* 1 *R. S.* 723, § 11.) To ascertain whether any of the substituted remainders thus limited by the 39th clause of the will are valid, it is necessary to inquire whether they will become vested in interest upon the death, during the continuance of the trust, of the children or grand-children upon the failure of whose estates, respectively, such substituted remainders to their heirs and representatives are limited. For if they do not then become vested, they will not necessarily become vested in interest during the continuance, or at the termination, of any two specified or ascertained lives in being at the death of the testator.

A remainder is vested in interest where the person is in being and ascertained, who will, if he lives, have an absolute and immediate right to the possession of the land upon the ceasing or failure of all the precedent estates, provided the estate limited to him by the remainder shall so long continue. In other words, where the remainder-man's right to an estate in possession cannot be defeated by third persons, or contingent events, or by the failure of a condition precedent, if he lives, and the estate limited to him by way of remainder continues, till all the precedent estates are determined, his remainder is vested in interest. The contingent remainders in the respective shares of the children and grand-children who may die during the continuance of the trust, therefore, will vest in interest in those who are their heirs or representatives at their several deaths, if the absolute right of such heirs or representa-

tives to a future estate in possession is then conclusively settled and determined. So far as relates to the contingent remainders to the heirs and distributees which, by the thirty-ninth clause of the will, are given in the several legacies of Anna M'Bride James and Lydia James, as the legatees are not to share in the final partition of the estate, but are to have their legacies raised out of the rents and profits during the term, which legacies are to vest in possession by the determination of the trust estate merely, those remainders must vest in interest, if ever, at the termination of one life in being, and therefore are valid. So also are the prior vested remainders to Anna M'Bride and Lydia, for life, if they live till the termination of the trust estate; and the contingent remainders to their descendants, or special heirs, in fee after their deaths. But the power in trust given to these and other tenants for life, by the 44th clause of the will, to devise the ultimate fee to any of their descendants who may not be in existence at the time of the deaths of such tenants for life respectively, or to appoint any other estates than absolute and unconditional fees, except in the single case of death during minority, as provided for by the 16th section of the statute, is clearly void. (*See* 1 *R. S.* 724, § 20, 21. *Idem,* 737, § 129.)

A remainder is contingent, although the remainder-man is in being and ascertained, so long as it remains uncertain whether he will be absolutely entitled to the estate limited to him in remainder, if he lives and such estate continues until all the precedent estates have ceased. But where a mere power is given to appoint a remainder among a particular number or class of persons who are known and ascertained, *with a limitation to the whole number, as tenants in common or otherwise, in default of the appointment,* the remainder is vested; subject to be divested by the execution of the power of appointment. (*See Sugden on Powers,* 5 *Lond. ed.* 151, *where all the cases on this subject are collected.*) In the case under consideration, the substituted contingent remainders in the eight and a half shares, which by the 39th clause of the will are given to the respective heirs and representatives of the seven children and two grand-children who are to share in the final partition of the estate, as well as all other remainders on such partition,

are made by the testator to depend absolutely upon the contingent event of the decision which the trustees may then make upon the question as to moral character, and upon the execution of the power of appointment consequent upon that decision. These remainders are not limited, by the will of the testator, *to take* effect in a particular way in case this power in trust is not executed by the trustees, or the condition precedent is not performed by John, Edward, Howard and Robert. But the extent of the share of the estate, if any, which is to become vested in each, is referred wholly to the decision of the trustees for the partition, upon the then state of moral character. It is not therefore a case which comes within the provision of the 100th section of the article of the revised states relative to powers. (1 *R. S.* 734.) That section is only applicable to a trust power, with an arbitrary and absolute right of selection ; such as is given to the parents, or trustees, in relation to the $50,000 legacy to the children of Augustus, by the 36th clause of the will ; not where the selection or appointment depends upon the existence or ascertainment of a fact. A court of chancery may compel the execution of the trust power, or may perhaps itself execute it by a new trustee, or one of its officers, if the trustees appointed under the will refuse to make the partition in the manner directed by the testator. But if the decision as to moral character is made in good faith, by the trustees, it cannot be controlled ; as the testator has constituted them the sole judges of the facts upon which the vesting of these contingent remainders are to depend. The remainders must therefore take effect by the execution of this trust power, or wholly fail ; as they can take effect in no other manner, in conformity with the intention of the testator. These remainders, then, must continue contingent, so far as relates to any interest in the eight and a half shares, until the termination of the trust estate. The remainders in those shares which are given to the heirs and representatives of the original remainder-men by the 39th clause of the will, are therefore void, as they are not limited in such a manner that they must necessarily vest in interest, if ever, within the time prescribed by the 20th section of the statute.

The several estates or interests in the remaining three and a half shares, with the additions of the forfeited portions of the other eight and a half shares, as directed by the 40th clause of the will, are future estates, dependant on a precedent estate, and are therefore remainders, according to the statutory definition of the term. (1 *R. S.* 723, § 11.) They are clearly contingent remainders limited on a term of years; which remainders cannot possibly vest in interest during the continuance of the trust term. And the nature of the contingencies, on which the estates or interests are limited, in these three and a half shares, with the additions, which may be denominated the testator's residuary fund, are not such that any estate, or right in such residuary fund, will necessarily vest in interest within the time required by the 20th section of the statute. The whole devise as to this residuary fund, after the termination of the trust, is therefore void. It is doubtful whether the devise is not also void on account of the uncertainty as to what persons the testator intended should be comprised in the class of legatees or devisees who were to be beneficially interested in the execution of the trust power in relation to this residuary fund.

I have before stated, in relation to the lapsed specific legacies to the widow, that the personal property as to which the testator died intestate, either by lapse or otherwise, is the primary fund for the payment of debts, except where it manifestly appears that the testator intended to exonerate the primary fund, for the benefit of a residuary legatee or of some other person ; and that where such intention is manifest, a failure of the object for which the primary fund was intended to be exempted, restores the unbequeathed fund to its primary liability. I think it will be found, upon examination, that none of the cases conflict with this principle ; which is equally applicable to the failure of a bequest of the primary fund because the bequest thereof cannot take effect according to the intention of the testator, either on account of the illegality of the bequest, or for want of legal capacity in the legatee to take. In every case of this kind the intention of the testator is to govern. And where a case occurs which it is evident was not in the contemplation of the testator in exonerating

the primary fund for the payment of debts, and by which oc-
currence the object for which the primary fund was to be ex-
onerated is wholly defeated, the exoneration itself must fail
pro tanto. The cases of *Waring* v. *Ward* and *Noel* v. *Lord
Henley* were both decided on this principle. In the case un-
der consideration it is manifest, that the sole object of the tes-
tator in exempting the capital of the personal estate included
in the bequest to the trustees, was to enable them to distribute
it according to the declared trusts of the will, at the end of the
trust term; and not for the benefit of his widow and next of
kin. And as the devise of the contingent remainders in three
and a half twelfths of the testator's personal property, after
the termination of the trust, wholly fails, that portion of the
personal estate remains a part of the primary fund for the pay-
ment of the debts. The same principle must also be applied
to so much of the personal estate as may be included in any
of the eight and a half shares which shall fail, upon the hap-
pening of the contingencies contemplated in the 39th and 40th
clauses of the will. The three and a half twelfths of the per-
sonal estate which are included in the devise in trust, with the
proceeds of the lapsed specific legacies to the widow, and the
interest or income of the whole personal estate for the first
year after the testator's death, will form an ample fund for the
payment of all his debts and funeral expenses, and all lega-
cies which became due at the end of the year; except such
debts, if any, as were secured by mortgage upon the real es-
tate. I am therefore relieved from the necessity of deciding
the question as to the legality of an indirect accumulation of
the testator's estate, by charging the income of such estate, in
anticipation, with the payment of debts. From a principle of
convenience, this court has long since adopted the rule that
the personal representatives of the testator, or intestate, shall
have one year after his death, to get in the assets, and to
liquidate and pay off the debts, and prepare for a distribution
of the estate, or to invest the same in the manner directed by
the will; except in those cases where explicit directions on
his subject are given by the testator himself. (*Sitwell* v. *Ber-
nard*, 6 *Ves. Rep.* 539.) The legislature of this state, in the
recent revision of the laws, has also recognized and to a cer-
tain extent adopted this rule of convenience. The interest or

income of the personal estate of the decedent, for the first year, may therefore unquestionably be appropriated by him to the payment of his debts, without violating either the letter or the spirit of the statutory provisions against the accumulation of rents and profits, interest or income, of real or personal estate, except for the benefit of minors. And beyond this it cannot be necessary to go in the present case.

The direction for the payment of legacies out of the rents and profits or income of the estate, by anticipation, is not a violation of the statutory provisions against accumulations. Where the testator dies possessed of a large estate over and above all his debts, he has an unquestionable right to devise or bequeath it as a future estate, undiminished in amount; provided he does not violate any of the rules of law against perpetuities. He may, therefore, carve such intermediate estates, interests, legacies, or portions, out of the income in the mean time, as he may think proper, if it can be done without an actual accumulation of the rents and profits for that purpose. And the raising of a legacy or portion by anticipation, out of the intermediate rents and profits, is in effect nothing more than charging the estate of those who would otherwise be entitled to such intermediate rents and profits, with the payment of a sum in advance, out of the rents and profits they may afterwards receive. But an accumulation of such rents and profits, for the purpose of raising a legacy or portion at a future day, cannot be permitted, except where such legacy or portion is for the sole benefit of a minor who is in existence when the accumulation is directed to commence. (1 *R. S.* 726, § 37, 38. *Idem*, 773, § 3, 4.) In the present case, if there are any directions, either express or implied, for the accumulation of the rents and profits or income of the estate, such accumulation must be considered as directed to commence at the death of the testator, although from the situation of the estate it may not actually commence at that time. And as there is no fund or portion to be raised for the sole benefit of any minor in being at the death of the testator, none of the portions or provisions for the testator's children, or their widows or descendants, can be paid out of an accumulated fund. But such portions and provisions, so far as they are valid, must be paid out of the rents and profits and income of the current

year in which the payment shall become necessary, or by anticipating the future rents and profits.

The $50,000 legacy to the children of Augustus, so far as their life estates therein are concerned, like the legacies to Anna M'Bride and Lydia, is already vested. And the contingent remainders in their several shares of the legacy, to their descendants or special heirs, must necessarily vest in interest, if ever, upon the termination of their respective life estates; and of course within the time allowed by law for the vesting of a contingent remainder limited upon a term of years. And if Augustus and his present wife should have any more children, the interests of such after-born children in the legacy, as remainder-men in fee determinable by death during the continuance of the trust, will become vested at their several births, and of course during the life of one person in being at the death of the testator. The power of appointment which is given to the parents, or trustees, in relation to this legacy, does not prevent the shares of the several children from becoming vested previous to the termination of the trust; subject, however, to be divested by death, or by the execution of the power of appointment in favor of some of them exclusively. This is a case provided for by the article of the revised statutes relative to powers. And the beneficial interest of the present children in the execution of the trust power gives them a vested interest in the remainder, which can only be divested by their death, or by the execution of the trust power in favor of others. A similar interest in the remainder will vest in each after-born child at its birth, subject to open and let in others. If those who are intrusted with the execution of the power should be living at the end of the trust term, its execution may be compelled, in equity, as its execution or non-execution is not made expressly to depend upon the will of the grantees of the power. And if they should all die, this court will decree an execution of the power in favor of all the children, of Augustus and his present wife, who may be living at the end of the trust term, equally. (1 R. S. 734, § 96, 100.) If any shares of this legacy is appointed or decreed to the children who were in being at the death of the testator, they will take life estates in such shares,

1835.

Hawley
v.
James.

with remainder in fee to their descendants or special heirs; subject to the restriction on the power of appointment, by such tenants for life, which I have before mentioned. And the shares, if any, in the $50,000 legacy, appointed to the after-born children of Augustus and his wife, will be remainders in fee.

The annuities for life to those whose portions are wholly withheld, and which by the 43d clause of the will are limited as contingent remainders upon the trust term, must, so far as concerns the question of their validity, depend upon the validity of the respective remainders to the same persons for life, in their original portions of the estate. No persons, therefore, except the seven children and two grand-children of the testator, who were in being at the time of the testator's death, and who are named in the 37th clause of the will, as being entitled to the eight and half shares on the partition of his estate, subject to the conditions, limitations and retributive purposes therein afterwards expressed, can be provided for under such 43d clause. The annuities, if any, to such persons respectively, must be raised out of or charged upon the several shares to which they would have been entitled if they had not forfeited them, by the non-performance of the condition precedent, or otherwise. And the residue of such forfeited shares must then be added to the residuary estate or fund, composed of the capital of the three and a half shares, and the capital of such of the eight and a half shares as may become lapsed by death during the existence of the trust term. If any part of this residuary fund is composed of the testator's personal estate, after the testator's debts and funeral expenses have been paid out of the proceeds of the specific legacies to the widow and the personal estate not legally and effectually bequeathed, such personal estate must be distributed to the widow and next of kin of the testator, according to the statute relative to the distribution of personal estates in cases of intestacy. And the real estate comprised in that residuary fund must be distributed to the heirs of the testator, according to the law of descents. For the purpose of ascertaining what is real and what is personal estate at the termination of the trust, it will

be necessary to keep a separate account of the investments of the proceeds of personal property in the purchase of real estate, and of the investment of the proceeds of the sale of real estate of which the testator died seized, or which he had contracted to purchase before his death. The proceeds of such as he had contracted to sell must be considered as a part of the personal estate, in keeping these accounts.

As the interest or income of the real and personal estate cannot be accumulated for the purpose of increasing the shares which are to be apportioned to the seven children and two grand-children at the termination of the trust, no investments in real estate are to be made from the rents and profits or interest, except that which is to be applied near the termination of the trusts to raise the portions for Anna M'Bride and Lydia, and for the children of Augustus. All other rents and profits and income of the trust property, which are not wanted for the immediate and legal objects of the trust, or to reimburse the capital of the trust estate where the income has been anticipated, must be distributed by the trustees, annually, among those to whom such rents and profits or income legally belong. Separate accounts must therefore be kept of the income of the real and personal estate, or of the lands in which the proceeds of each species of property has been or may be invested. And all disbursements, except the payment of debts and funeral expenses, must be apportioned rateably upon the income of each, except so much of the personal estate as is included in the three and a half shares ; so that the surplus of the rents and profits of each species of property, as it existed at the death of the testator, may be rightfully distributed. The purposes for which the personal estate included in the three and a half shares was directed to be converted into realty being wholly void, it is not to be considered as equitably converted. The interest or income thereof, therefore, is not to be considered as rents and profits in making such apportionment. The personal estate included in the other eight and a half shares must be invested in real estate, as directed by the testator. The dower of the widow in those parts of the estate in which she is entitled to dower, or such annual allowance as she may consent to receive in lieu thereof if

1835.

Hawley
v.
James.

dower is not actually assigned to her, must be deducted from the gross amount of the rents and profits of the real estate, before the apportionment of the charges upon the two funds is made.

The testator intended that the portions for Anna M'Bride and Lydia, and for the children of Augustus, should be raised near the time appointed for the termination of the trusts, so that their legacies or portions, which were to vest in possession at the end of the trust term, should be of the required value, or as nearly so as practicable, at that time. But as the time of the termination of the trust is contingent, the trustees should exercise the discretion conferred upon them by the will in such a manner, with reference to the annual income of the estate and the probable termination of the trust, that the portions may be raised during the term, and be of the required value, as near as practicable, when the trust terminates. No particular injury could result from raising the portions immediately, except as to the valuation; for the rents and profits of these portions, when raised, will, during the continuance of the trust, belong to those who are entitled to the rents and profits out of which the purchase money for these portions is to be paid. If through any inadvertence the trust estate should terminate before these portions were raised, they would not wholly fail. For as this court considers that which should have been done as done, it would direct the portions to be raised out of the rents and profits then on hand. And if the whole had been distributed, the distributees would be compelled to refund.

It is admitted by all parties, I believe, that the annuities and legacies mentioned in the ninth, tenth, eleventh, twelfth, and thirteenth clauses of the will, are valid. And if those are all legal and can be sustained, the annuities to the testator's two sons William and Henry are also valid; as the whole of these legacies and annuities are charged upon the rents and profits of the testator's estate, in the hands of the trustees, during the continuance of the trust term, and in the same manner. The legacy to G. Hawley the trustee, and the allowance to other trustees who may be appointed in the manner directed by the testator, if that mode of appointment

is legal, are also valid, and must be paid, together with the expenses of the execution of the trust, out of the rents and profits of the year in which, or at the end of which, the payments become due.

The capital stock of the testator, which was invested in the copartnership with M. D. Burnet, at the time of his death, should be left in the firm for the benefit of Augustus, so long as the lease and partnership continues, in case he continues to attend to the business of the firm as the active partner, as directed by the 21st clause of the will. But he must account to the estate of the testator for the whole of such capital, whenever he ceases to act as such partner. In other words, he must sustain the loss of any diminution of the capital during the time he is permitted to use it without interest; as he is to be considered the partner, and not the testator's estate.

The 56th section of the title of the revised statutes relative to sales of real estate by executors and administrators, (2 R. S. 109,) only applied to sales of real estate for the payment of debts and legacies. And it is very doubtful whether it was intended to embrace the case of a sale under a trust power, by an executor, for the mere purpose of re-investment or exchange, as authorized by the 27th clause of this will. But this question is put at rest as to all future sales, by the act of the last session on this subject. (*Laws of* 1835, *p.* 304.) By that act, sales of real estate by executors, except where such estate lies in the city of New-York, may be made either at public or private sale. But every sale of real estate in that city, by an executor under an authority contained in a will, whatever may be the object of such sale, must be at public auction, upon the like notice and conducted in the same manner as is directed by the revised statutes in relation to sales under the orders of surrogates. The executors and trustees, therefore, are not authorized hereafter to sell any real estate in the city of New-York at private sale, under the authority to sell or exchange, contained in the 27th clause of this will. The authority of executors to sell the Illinois lands for the purpose of re-investment, under this power in trust, and the manner of making such sales, must depend upon the local law of that state.

1835.

Hawley
v.
James.

If I am right in supposing that an inalienable trust term may be created, to continue during the actual minorities of more than two persons in being at the creation of such estate, then there can be no valid objection to the provision for the support of the testator's minor children out of the rents and profits of the estate, after the death of their mother. And if this provision is valid, that contained in the 30th clause of the will, for the support of the widows and children of the sons, and the children of the daughters of the testator, who may happen to die during the continuance of the trust, is also valid. Although this last provision includes persons who were not in esse at the testator's death, it must necessarily vest in interest, if ever, at the termination of one life in being at the creation of the estate or interest ; to wit, the life of the son or daughter whose widow or children are thus to be provided for.

The legacies of $2000, authorized to be raised out of the rents and profits, and paid to Anna M'Bride and Lydia respectively upon their marriages, are in effect but the payment of portions of their larger legacies in advance. If the $2000 is raised and paid as a marriage portion, it must, in obedience to the direction contained in the 35th clause of the will, be deducted, together with the compound interest at five per cent., from the amount of the $20,000 portion which is to be raised near the termination of the trust, and that portion will be so much less. And as these marriage portions are given to persons in being at the death of the testator, the raising of them cannot suspend the power of alienation beyond the period allowed by law. These legacies are therefore valid.

As it regards the marriage portion to Mrs. Barker, the event has not happened which was contemplated by the testator at the time of making his will. He undoubtedly intended the marriage portions to his daughters should be payable, if ever, immediately after their respective marriages. And if his widow and trustees did not think it fit and proper that the daughter should then receive a marriage portion, their power to bestow such a portion upon her would be at an end. He could not, therefore, have intended to delegate the power to his widow and trustees of bestowing marriage portions upon his

daughters who might be married in his lifetime ; of the propriety of which he undoubtedly considered himself fully competent to judge. As the testator lived more than a month after the marriage of Mrs. Barker, during which time he could in person have exercised the discretionary power of bestowing upon her a marriage portion, I could not, without making a new will for him, authorize the widow and trustees to give such a portion at this time. It is highly probable that the sudden death of Mr. James may have prevented him from giving such an outfit to his daughter, upon her marriage, as was suitable to her station and condition in life. But that cannot authorize the widow and trustees to execute a power which the testator never intended to delegate to them by his will. The provisions for the support of Mrs. Barker, as well as the other daughters and the grand-daughter who might be married before the termination of the trust, is clearly within the spirit and intent, although it is not strictly within the letter of the 33d clause of the will. The object of this provision of the will was to give a discretionary power to the widow and trustees, to advance to the married daughters and grand-daughter who were to share in the partition of the testator's estate at the end of the trust term, such sums as might be necessary for their support and the support of their children, not exceeding a certain amount in any one year. As this was a discretion to be exercised after the death of the testator, from time to time during the continuance of the trust, and which therefore could not be exercised by himself, even as to those who might happen to marry before his death, it would be doing violence to the manifest intention of the testator, to say that this provision of the will was not applicable to the case of Mrs. Barker.

The advances which the widow and trustees are authorized to make to the sons or grand-sons of the testator, by the 31st and 32d clauses of the will taken together, were not intended to exceed in the aggregate one fourth of the probable amount to which the son or grandson, to whom the advances were made, would be entitled upon the ultimate division of the estate. The testator evidently contemplated the event of some of his sons or grand-sons studying a profession or learn-

1835.

Hawley
v.
James.

ing a trade, and of others becoming merchants or engaging in some business requiring capital merely, and he intended to provide for all these cases. He could not, however, have intended a double provision to such as should think proper to engage in a multiplicity of occupations. I think he meant to limit the extent of these advances to the probable amount of the portions of the individual to whom such advances were made, at the termination of the trust, and without reference to the duration of the estate of the individual in such portion. Thus : the advances to Augustus might be to the extent of one fourth of the probable amount of his twelfth of the estate at the end of the trust term, including such advances with compound interest thereon as provided for by the 35th clause of the will ; but in case he should die during the continuance of the trust, after having received a partial or full advance, that then the amount of such advance, with compound interest, should be deducted from the twelfth of the estate which, in the event of his death during that time, is devised over to his heirs and representatives, by the 39th clause of the will. And if any of such heirs or representatives should happen to be sons or grand-sons of the testator, who had arrived at the age of manhood, they might also have advances to the extent of one fourth of the probable amount of their respective proportions of the residue of the share, after deducting from such share the advances to Augustus, together with such compound interest. The language of the testator in this part of the will, clearly shows that he did not intend to confine the advances to the sons and grand-son named in the 37th clause ; but that he also intended to embrace those sons and grand-sons who might take as heirs or distributees under the 39th clause. If by the age of manhood the testator meant the full age of twenty-one years, he has also included a class of persons who could not in any possible event become entitled to advances during the trust term ; even if the limitations of the contingent remainders to the heirs and distributees by the last mentioned clause of the will were valid. He has provided for an advance to the son of a daughter who might be dead ; but as none of the daughters were married at the date of the will, it was impossible that any such grand-

son of the testator should arrive at the age of twenty-one during the continuance of the trust. And if by attaining the age of manhood he meant any other age, under twenty-one, the provision for advances as to all but Augustus, is probably void for uncertainty as to the time at which such advances may commence.

The objection that some of these advances are directed to be made to persons whose contingent remainders are invalid, because such remainders are not so limited that they must vest in interest within the time prescribed by the 20th section of the statute, might probably be obviated by allowing advances to the sons and grandson, to whom the shares are limited in the first instance; and by disregarding the provision for such advances to those who might become presumptively entitled to those shares at a future day if the limitation of the remainders in the 39th clause of the will had been valid. But there is another and more serious difficulty in this case, which affects the validity not only of the provision for advances to sons and grand-sons, as contained in the thirty-first and thirty-second clauses of the will, but also the provision for marriage portions and advances to the daughters, and to Mary Ann King, the grand-daughter of the testator.

Taking the whole of the provisions of this will together, it is impossible to resist the conclusion that the testator contemplated and intended that there should be an accumulation of the rents and profits of the trust estate, by his executors and trustees, during the time prescribed by him for the continuance of the trust. And for this purpose he directs them to invest all monies which may come to their hands in the purchase of real estate; except such monies as may be wanted to pay debts and legacies, and to fulfil the other objects of the trust. This necessarily includes the rents and profits of the estate during the trust term. And the whole trust estate, with such accumulations, is to be partitioned among the objects of his bounty at the termination of the trust. Such an accumulation of the rents and profits of real estate, or of the income of personal property, is clearly illegal, under the provisions of the revised statutes. (1 *Rev. Stat.* 726, § 37, 38. *Idem,* 773, § 3, 4.)

Judging from the peculiar form of the clause in this will by which the trust term is devised, I am inclined to think the testator has acted upon the erroneous supposition that an accumulation of the rents and profits of his estate would be valid, if one or more infants in being at the making of the will were to be benefitted thereby, provided such accumulation was not continued beyond the minorities of all such infants; and without reference to the extent of the beneficial interests which such infants were to take in the accumulated fund. It is evident, however, that such could not have been the intention of the legislature. For if such a construction should be put upon the statute, the accumulation of an estate for twenty years could always be secured, by selecting several infants, upon whose minorities the trust term should be limited, and giving to them mere nominal limited interests in the accumulated fund. The only way to prevent this is to give that construction to the statute which, from the notes of the revisers, it is evident they intended should be given to the language employed to convey the meaning of the legislature. That is, to allow an accumulation of the rents and profits only in those cases where the accumulated fund is for the sole benefit of one or more minors, if they live until they are of age, who are in existence at the time the accumulation is directed to commence, and who will continue such minors, if they live, until the accumulation ceases. Or, in the language of the revisers' note, " during the minority of any person or persons who, under the deed or will directing the accumulation, would, if then of full age, be entitled to such rents and profits." (*Rev. note to ch.* 1, *pt.* 2, *p.* 28.)

But as the direction for the illegal accumulation and that only is made void by the statute, the devise as to the residue of the estate, to which such illegal accumulation of rents and profits was intended to be added, will not be affected by such void direction, if the devise of the original estate can be separated therefrom. It may also be proper here to remark, that the direction for an illegal accumulation is equally void, whether such direction be express, or is merely implied. (*Vail* v. *Vail,* 4 *Paige's Rep.* 317.) In the present case, the

limitation of the expectant estates to the seven children and two grand-children of the testator, is not rendered invalid as to the eight and a half twelfths of the original trust property, by the express or implied direction of the testator to add the accumulated rents and profits to any of their shares. But as the testator has directed the advances which may be made to those children and grand-children out of the rents and profits, with the compound interest thereon, to be added to their respective shares at the termination of the trust, not for the purpose of diminishing their respective shares of the original estate, a portion of which they thus receive in advance, but for the sole purpose of increasing the original shares of those to whom no such advance or a less advance, is made, it is an indirect mode of accumulating the rents and profits, at compound interest, for the purpose of increasing the shares of the original trust estate, for the benefit of those who are to take estates therein, either in possession or in remainder, at the termination of the trust. The direction to add the amount of the advances, with compound interest thereon, to the original share of the individual to whom such advances may be made, for the purpose of increasing the shares of others by means of that accumulated fund, is therefore clearly void.

Although the estate of a son, to whom such an advance should be made, and who might happen to die during the continuance of the trust, would not probaly be liable to refund the amount of such advance, yet so far as regards the accumulation for the purpose of increasing the other shares, it is equivalent to a loan of the rents and profits included in such advance, at compound interest, during the residue of the term, and the addition of a portion of this fund, thus accumulated, to the shares of the others. As this cannot be done, consistently with the restrictions in the statute against the accumulation of rents and profits or income, the intention of the testator in directing these advances to be made cannot be carried into effect, so far as relates to the seven children and two grand-children who are now presumptively entitled to the eight and a half shares of the trust estate.

It is very evident, from the different provisions of the will, that the testator intended that the marriage portions, and

other advances which might be made to his children and grand-children, under the 31st, 32d and 33d clauses, should be in the nature of mere advances out of the accruing rents and profits of the shares or portions of the estate to which they were presumptively entitled at the termination of the trust. And if they are by law entitled to the whole of the rents and profits not legally and effectually disposed of by the will, of the several shares or portions of the estate to which they are presumptively entitled on the final division, it would defeat the manifest intention of the testator to permit such advances to be made out of, or to be charged upon, the rents and profits of the trust estate generally. I will therefore proceed to inquire to whom the rents and profits and income of the estate, which are not legally and effectually disposed of by the will, belong, either by the rules of the common law, or under the provisions of the revised statutes.

By the common law, where the legal estate was devised to trustees to preserve contingent remainders, or for any other legal purpose, so much of the rents and profits as were not legally and effectually disposed of by the testator, belonged to his heirs during the continuance of the trust estate, by the operation of a resulting trust. (*Hopkins* v. *Hopkins, Cas. temp. Talbot*, 44. *Carrick* v. *Errington*, 2 *P. Wms. Rep.* 362.) The limitations over to the children and grand-children of the testator, in the present case, were not intended to take effect immediately, even if the trusts are invalid so as to be insufficient to support a legal estate in the trustees. But they are to take effect and be vested in possession, by the express words of the will, only at the expiration of the period prescribed by the testator for the continuance of the trust. The intermediate rents and profits, therefore, by the common law, would have belonged to the heirs of the testator, so far as such rents and profits were the proceeds of the real estate of which he died seized ; and so far as they were the proceeds of his personal property, they would have been distributed to the widow and next of kin. A different rule, however, has been introduced by the 40th section of the article of the revised statutes relative to the creation and division of estates. (1 *R. S.* 726.) That section provides for the case of surplus rents and profits

1835.

Hawley
v.
James.

which may accrue during the suspense of the power of alien-ation, or of ownership, by means of a valid trust of the legal estate ; by giving such rents and profits to the person who is presumptively entitled to the next eventual estate in the prem-ises.   As the estate of the trustees must continue so long as any of the children or grand-children who were living at the date of the will are minors, unless it should sooner terminate by the death of all the annuitants and others for whose ben-efit a trust to receive rents and profits could be legally creat-ed, the persons presumptively entitled to the next eventual estates in eight and a half twelfths of the trust property are the seven children and two grand-children named in the 37th clause of the will.    They are, therefore, for the present, enti-tled to that portion of the surplus rents and profits which may accrue, from time to time, from the eight and a half twelfths of the property.   But the substituted contingent remainders in the eight and a half shares, as limited by the 39th clause of the will, being invalid, if any of the children or grand-chil-dren named in the 37th clause should happen to die during the continuance of the trust term, a new rule of distribution must then be adopted.    The heirs at law of the testator have, in that case, a vested interest in the reversion of so much of the shares of such decedents as is composed of the testator's real estate, or the proceeds thereof, and the widow and next of kin have a vested interest in the reversion as to the remain-ing parts of such shares.    And the rents and profits of the shares of such decedents must, thereafter, from the time of their respective deaths, be distributed accordingly, during the residue of the time prescribed by the testator for the continu-ance of the trust estate.

The trust to receive the rents and profits, and to pay the annuities out of the same, during the period prescribed by the testator for the continuance of the trust, does not render the estate inalienable beyond that time, even if a trust for the payment of an annuity is not to be considered as a trust for the payment of several sums in gross at stated periods ; as the interests of the annuitants may then be sold, if not before. The annuities to such persons as are in existence at the expi-ration of the trust term must then be secured to them respec-

1835.

Hawley
v.
James.

tively, by a charge upon the original trust estate, or the proceeds thereof, independent of the portions raised out of the rents and profits for Anna M'Bride and Lydia, and the children of Augustus; so that every part of such original trust estate which then remains, except the $10,000 legacy to James King, shall bear and be charged with its rateable proportion of the annuities thereafter to become payable. But during the time appointed for the continuance of the trust, the annuities, and all other sums properly chargeable upon the rents and profits, must be paid out of the gross amount of the annual income, before a distribution of any part of the rents and profits for the year is made to the heirs and widow and next of kin of the testator, or to the individuals who are then presumptively entitled to the next eventual estates in the undivided shares of the premises.

The amount of the commissions to be allowed to Augustus for collecting the rents and profits of the estate, is by the 22d clause of the will submitted to the discretion of the other trustees. This discretion they may exercise from time to time, in reference to the trouble and expense of the duty to be performed. And so long as the discretionary power of the trustees is exercised in good faith, this court has no right to interfere to control its exercise. The master reports that four per cent. would be a proper and sufficient compensation for the collection of the rents; and if the trustees suppose with him that five per cent. is more than a reasonable compensation for the services to be performed, taking into consideration the safety of the fund collected and the different places at which the rents are to be received, the allowance should be reduced. But as five per cent. is the usual allowance in the city of Albany, this court is not authorized to say the trustees have abused the discretionary power confided to them by the testator, by allowing that amount as a compensation to Augustus James for his services in this respect.

The trustees are not authorized to employ a clerk, and pay him out of the income of the estate, for the performance of services which the testator intended the trustees, or any of them, should perform in person. Augustus, therefore, would not be authorized to employ a clerk or agent to collect the rents,

and to pay him out of the estate. Neither should Mr. King be allowed to employ a clerk or agent to sue for and collect the debts due to the estate, and to make a charge therefor beyond the usual allowance to himself for professional services. But the testator could not have supposed it possible that all the various and complicated accounts of this estate could be kept, and the necessary writings and papers relative thereto be drawn and prepared by Mr. Hawley in person, for the annual allowance of $500, which he has given to him for his personal services. The employment of a clerk for the purpose of making and keeping such accounts, under the direction and superintendence of Mr. Hawley, is therefore a reasonable and proper charge to be borne by the estate. Besides ; the election of the widow to take her dower in the real estate, and the failure of some of the trusts of the will, must necessarily increase the trouble and expense of keeping the accounts, far beyond what was contemplated by the testator.

As the personal property of the testator is directed to be converted into real estate for the purposes of the trust, and as such conversion is valid so far as relates to the eight and a half twelfths thereof, it must in equity be considered as already converted, pro tanto. The several legacies, portions and annuities are, therefore, properly chargeable upon the income of that portion of the personal property which is included in the eight and a half shares, as a part of the real estate, out of the rents and profits of which the testator has directed the legacies, portions and annuities to be raised and paid. But as the direction to convert the three and a half twelfths of the personal estate must wholly fail, in consequence of the illegality or invalidity of the object for which the conversion was directed, it remains personal property, and cannot be considered as producing rents and profits, within the meaning and intention of the testator. That portion of the estate, with the interest thereon, after the payment of debts and funeral expenses, may therefore be distributed, immediately, to the widow and next of kin of the testator. So much thereof as belongs to minor children, and so much of the surplus rents and profits belonging to such minors as are not wanted for their support, should be paid into court, by the trustees, or be invested by them in

1835.

Hawley
v.
James.

the name of the register, for the benefit of the minors. And Mrs. James, the testamentary guardian of the unmarried children, should have liberty to apply to the court from time to time, for such allowances, out of the property of her wards, as may be proper for their support and education.

A trustee who has only a delegated discretionary power. cannot give a general authority to another to execute the same, unless he is specially authorized so to do by the deed or will creating such power. A general authority to an agent to sell and convey lands belonging to the estate, or to contract absolutely for the sale of such lands, cannot therefore be given by the trustees. But they may entrust an agent with an authority to make conditional sales of lands lying at a distance from the place of residence of the trustees, subject to the ratification of such trustees or any two of them. And they may also empower him to make and execute valid conveyances of the land thus sold, upon a compliance with the terms of sale, after such sales have been so ratified by them. The purchaser in such a case, however, would probably be bound to show that this condition precedent had been complied with, in order to render his title perfect, where the conveyance was executed by the agent under such a power. The better course in a case of this kind therefore is, to entrust the agent with a discretionary power to contract, subject to the ratification of the trustees, upon his report of the facts; and that they should themselves execute the conveyance, when the terms of the sale have been complied with, and transmit it, properly acknowledged, to the agent, to be delivered to the purchaser.

So far as relates to the rights of the infant defendants who are interested in the rents and profits of the real estate, the court can authorize the trustees to agree upon an annuity, to be allowed to the widow during the continuance of the trust, if she shall so long live, in lieu of dower; to be paid out of the income of that part of the estate in which she is either legally or equitably entitled to dower. And if all the adult parties assent to it, a reference will be directed to a master to ascertain what is a reasonable allowance. But if such consent is not given, one third of the real estate of which the testator died seized must be assigned to her for her dower; and she must also have one

1833.

Hawley
v.
James.

third of the net amount of the rents and profits of the land in which she is entitled to equitable dower, or one third of those lands must be assigned to her for that purpose. Or, if she and the trustees prefer it, they may continue to receive the whole rents and profits of that part of the estate in which she is entitled to dower, and account to her for one third, after deducting her proportion of the expenses of collection and other incidental expenses and commissions, including repairs and a reasonable proportion of the cost of permanent improvements.

There can be no reasonable objection to the periodical settlement of the accounts of the trustees, before a master, as asked for by their bill, so long as the suit is pending and remains in full life. It may, therefore, be referred to a master to take and state the accounts of the executors and trustees with the several and respective parties to this suit, upon the principles established by the decree; and also to report the proper form of conveyances to be taken by such trustees upon the purchase of real estate. The master must also examine and report the facts in relation to the claim of Augustus James to the Syracuse property; and whether such property is in any way connected with the partnership, between the testator and Burnet, the profits of which were bequeathed to Augustus by the will.

As the case under consideration is very complicated, it is probable I may have overlooked some point which should be decided at this time; and many new questions may arise out of the decision of some of the main points in the cause. None of the collateral questions which were not fully discussed on the former argument will, therefore, be considered as fully decided until the settlement of the decree; at which time I propose to hear the counsel for all the parties who choose to attend, as to any thing contained in the drafts of the decree, or the amendments to the same which they may severally present. And I will then hear a re-argument, if necessary, as to any of these collateral points.

The executors were right in filing their bill to ask the direction of the court, as they could not safely execute the trust until a legal construction was given to the will, and to the several anomalous provisions contained therein. And the

cross bill and supplemental bill were also proper, for the pur-

pose of bringing the several questions more fully before the court, together with the new parties who had become interested subsequently to the filing of the original bill.   The costs of all parties should therefore be paid out of the personal property of the decedent as to which he died intestate.   And all further directions, and all questions not disposed of at the settlement of the decree, must be reserved until the coming in of the report of the master, or until the further order of the court. Liberty must also be reserved to any of the parties to apply to the court from time to time for such further directions as may be necessary ;  due notice of any such application being given to all parties interested in the question to be decided.